CALLIE A. BJURSTROM (STATE BAR NO. 137816)
PETER K. HAHN (STATE BAR NO. 165692)
MICHELLE A. HERRERA (STATE BAR NO. 209842)
PILLSBURY WINTHROP SHAW PITTMAN LLP
501 West Broadway, Suite 1100
San Diego, CA 92101-3575
Telephone: (619) 234-5000
Facsimile: (619) 236-1995
Email: callie.bjurstrom@pillsburylaw.com
       peter.hahn@pillsburylaw.com
       michelle.herrera@pillsburylaw.com

Attorneys for Plaintiff San Diego Comic Convention

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COMIC CONVENTION, a California non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DAN FARR PRODUCTIONS, a Utah limited liability company; NEWSPAPER AGENCY COMPANY, a Utah limited liability company; DANIEL FARR, an individual; and BRYAN BRANDENBURG, an individual.<br><br>Defendants. | No. **'14CV1865 AJB  JMA**<br><br>COMPLAINT FOR (1) FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114); AND (2) FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)); DEMAND FOR JURY TRIAL |

Plaintiff, San Diego Comic Convention, ("SDCC"), brings this action against Dan Farr Productions, LLC, Newspaper Agency Company, LLC, Daniel Farr and Bryan Brandenburg (collectively, "Defendants"), and alleges as follows:

# THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff SDCC is a non-profit corporation organized and existing under the laws of the State of California and has its principal place of business in San Diego, California.

2. Plaintiff is informed and believes and thereon alleges that Defendant Dan Farr Productions, LLC is a limited liability company organized and existing under the laws of the State of Utah, and has its principal place of business in Salt Lake City, Utah.

3. Plaintiff is informed and believes and thereon alleges that Defendant Newspaper Agency Company, LLC is a limited liability company organized and existing under the laws of the State of Utah, and has its principal place of business in Salt Lake City, Utah.

4. Plaintiff is informed and believes and thereon alleges that Defendant Daniel Farr is a co-founder of the Salt Lake Comic Con convention, is the managing member of Dan Farr Productions, LLC, and resides in Utah.

5. Plaintiff is informed and believes and thereon alleges that Defendant Bryan Brandenburg is a co-founder of the Salt Lake Comic Con convention and resides in Utah.

6. Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendant Dan Farr Productions, LLC, Defendant Newspaper Agency Company, LLC, Defendant Daniel Farr and Defendant Bryan Brandenburg have done business and continue to do business collectively under the name Salt Lake Comic Con.

7. This is a civil action for damages and injunctive relief. This Court has jurisdiction over the subject matter of this action under one or more of the following statutes: 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332(a)(2)(diversity of citizenship between citizens of different states with an

amount in controversy exceeding $75,000); 28 U.S.C. § 1338(a)(Lanham Act); and 15 U.S.C. § 1121(original jurisdiction of district courts for all actions arising under the Lanham Act).

8. This Court has personal jurisdiction over Defendants. On information and belief, Defendants advertise and transact business throughout the United States, including in the State of California, and specifically in this judicial district. Defendants have purposefully availed themselves of doing business in this district by, among other things, advertising and promoting the convention known as Salt Lake Comic Con in this district. Defendants have also engaged in continuous acts of trademark infringement and unfair competition within the State of California, including within this district, and have caused injury to SDCC in this district as a result of such conduct.

9. Venue is proper in this judicial district because Defendants are subject to personal jurisdiction in this district, because SDCC resides in this district, and because the damages suffered by SDCC were suffered, at least in part, within this district.

## GENERAL ALLEGATIONS

10. SDCC, a non-profit corporation formed in 1975, is dedicated to creating awareness of, and appreciation for, comics and related popular art forms, primarily through the presentation of conventions and events that celebrate the historic and ongoing contribution of comics to art and culture. Among other things, SDCC produces the convention known as the Comic-Con convention ("Comic-Con convention"), which is held in San Diego, California on an annual basis. The Comic-Con convention showcases and celebrates not only comics and comic books, but also various other aspects of the popular arts such as graphic arts, science fiction films, fantasy films and literature.

11. The Comic-Con convention has been held in San Diego annually since 1970. The Comic-Con convention has been held at the same location, the San Diego Convention Center, for over two decades. Based on an ever increasing number of attendees, the Comic-Con convention has expanded to include local satellite locations such as hotels and outdoor parks where special events are held during the week leading up to the convention and throughout the three-day convention itself. Over the past forty plus years, SDCC has invested an extraordinary amount of time, effort and expense developing what is now the premier comic book and popular arts convention in the world. The first convention, held on a single day in 1970, drew approximately 100 attendees. Attendance at the most recent three-day convention in July 2014 ("Comic-Con 2014") exceeded 130,000 attendees.

12. The Comic-Con convention offers attendees the complete convention experience: a giant exhibit hall that showcases an extensive schedule of several hundred events, including advance anime and film screenings, panel discussions, autograph areas, workshops, educational and academic programs, games, award shows, costume contests, art shows and portfolio reviews for aspiring artists. Thousands of special guests have appeared at the Comic-Con convention over the years, bringing comic creators, science fiction and fantasy authors, film and television actors, and directors, producers, writers and creators from all aspects of the popular arts together with their fans for a fun and oftentimes candid discussion of various art forms. In addition, an amazing array of comics and book publishers are displayed in the exhibit hall each year. SDCC has spent decades developing and refining the substance and structure of the Comic-Con convention and the events showcased at the convention, and cultivating relationships with the various actors, directors, producers, writers and artists that appear at the convention.

13. SDCC markets the Comic-Con convention nationwide and internationally under the "COMIC-CON" family of service marks, which includes the following registered marks:



| | |
|---|---|
| | U.S. Service Mark Reg. No. 3,221,808 |
| **COMIC-CON** | U.S. Service Mark Reg. No. 3,219,568 |
| **COMIC CON INTERNATIONAL** | U.S. Service Mark Reg. No. 2,218,236 |
| **ANAHEIM COMIC-CON** | U.S. Service Mark Reg. No. 4,425,806 |

(collectively the COMIC-CON marks). These registrations were issued by the United States Patent and Trademark Office, are valid and are in full effect. The '808, '568 and '236 registrations are incontestable.

14. SDCC and its predecessors in interest have been using the COMIC-CON mark since 1970. The other COMIC-CON marks were developed and used in subsequent years. SDCC owns all right, title and interest in these registered COMIC-CON marks. Attached hereto as Exhibit A is a copy of the Service Mark Registrations for these marks.

15. SDCC has been using the COMIC-CON marks extensively and continuously in interstate commerce. As a result of the extensive and continuous use of the COMIC-CON marks in connection with the advertisement and promotion of its Comic-Con convention, consumers have come to recognize and identify the COMIC-CON marks as representative of the quality events and services provided by SDCC. The COMIC-CON marks have become valuable assets of SDCC as well as a symbol of SDCC's goodwill and positive industry reputation. The COMIC-CON marks are internationally famous.

16. SDCC is informed and believes and thereon alleges that beginning in early 2013, Defendants made the decision to capitalize on SDCC's creativity, ingenuity and hard work through the unauthorized use of SDCC's trademarks to advertise and promote Defendants' own popular arts convention titled "Salt Lake Comic Con."

17. According to the website created by Defendant Farr for this event, www.saltlakecitycomiccon.com, the purpose of the Salt Lake Comic Con convention is to "bring[] comics, fan art, sci-fi, anime, fantasy, film and TV and their associated comic creator, artist, actor, performer and author celebrities to meet and interact with their fans." Defendants indisputably produce the same type of convention that SDCC produces under its COMIC-CON marks. SDCC is informed and believes and thereon alleges that Defendants Farr and Brandenburg direct, authorize and/or approve all activities of the Salt Lake Comic Con convention, including the operation of and the content appearing on the website referenced herein.

18. A review of the Salt Lake Comic Con website demonstrates Defendants' extensive, unauthorized use of "Comic Con" (which is identical to or confusingly similar to SDCC's COMIC-CON marks) to promote the Salt Lake Comic Con convention. Defendants' use of SDCC's COMIC-CON marks (or confusingly similar variants) is intended to suggest, mislead and confuse consumers into believing that the Salt Lake Comic Con convention is associated with, authorized by, endorsed by or sponsored by SDCC.

19. Additionally, on their website Defendants advertise, market and sell merchandise that incorporates SDCC's COMIC-CON mark, including t-shirts, sweatshirts, hats, blankets, bags, mugs, phone cases, flags, key chains and much more. The logos affixed by Defendants to such items prominently display and emphasize the COMIC-CON mark, while minimizing any reference to "Salt Lake."

1  Attached hereto as Exhibit B is a true and correct copy of printouts from
2  Defendants' website that depict Defendants' unauthorized use of the COMIC-CON
3  mark in logos affixed to merchandise offered for sale by Defendants.
4       20.   Defendants use SDCC's COMIC-CON mark to advertise and promote
5  the Salt Lake Comic Con convention through mediums other than the internet.  For
6  example, during the 2014 Comic-Con convention and related events that took place
7  in San Diego on July 23rd through 27th of this year, Defendants "skinned" an Audi
8  R8 with advertisements for the Salt Lake Comic Con convention which included
9  use of SDCC's COMIC-CON mark and drove the car around the Comic-Con
10 convention locale in San Diego.  SDCC's COMIC-COM mark was prominently
11 displayed all over the vehicle, including on the side panels and hood, and the words
12 "Comic Con" appeared alone where the front license plate is normally found.  True
13 and correct copies of photographs of the vehicle are attached hereto as Exhibit C.
14 Included in the photographs is an image of Defendants Farr and Brandenburg and
15 Defendants' "Comic Con" car in front of the Manchester Grand Hyatt Hotel
16 adjacent to the San Diego Convention Center where the Comic-Con convention
17 was held.
18      21.   SDCC is further informed and believes and thereon alleges that
19 Defendants used the vehicle, emblazoned with the COMIC-CON mark, to solicit
20 consumers to attend the Salt Lake Comic Con convention on September 4-6, 2014.
21 SDCC is further informed and believes and thereon alleges that Defendants had the
22 automobile delivered to a hotel near the Comic-Con convention.  Representatives
23 from the hotel, believing that the vehicle was owned by or otherwise associated
24 with SDCC and the Comic Con convention, called SDCC in an effort to determine
25 why the vehicle was at their hotel.  SDCC is informed and believes and thereon
26 alleges that these persons were actually confused as to the source and/or origin of
27 not only the vehicle, but as to the convention produced by Defendants in Salt Lake
28

City, and believed that either or both were sponsored by and/or affiliated with SDCC.

22. SDCC is informed and believes and thereon alleges that by driving the vehicle skinned with SDCC's COMIC-COM mark in and around the vicinity of the SDCC Comic-Con convention, Defendants intended to create a false association between the Salt Lake Comic Con convention and the Comic-Con convention, or to suggest that SDCC sponsored, endorsed or was otherwise affiliated with the Salt Lake Comic Con convention. Neither is true. SDCC is further informed and believes and thereon alleges that by using the COMIC-CON mark in this manner during the 2014 Comic-Con convention to promote Defendants' upcoming convention, Defendants intended to confuse and deceive Comic-Con convention attendees, exhibitors and fans into believing the Salt Lake Comic Con convention is sponsored by or otherwise affiliated with SDCC's Comic-Con convention and/or SDCC.

23. SDCC is informed and believes and thereon alleges that Defendants Farr and Brandenburg directed and authorized the use of "COMIC-CON" or confusingly similar variants in advertisements, on Defendants' website and on the Audi R8 vehicle used for advertising purposes during the Comic-Con convention.

24. SDCC is informed and believes and thereon alleges that consumers have been, and will continue to be, confused, deceived and misled by Defendants' unauthorized use of SDCC's COMIC-CON mark to advertise and promote the Salt Lake Comic Con convention which is not sponsored by or affiliated with SDCC. Moreover, SDCC is informed and believes and thereon alleges that consumers have been, and will continue to be, confused by Defendants' unauthorized use of SDCC's COMIC-CON mark in marketing and selling Defendants' goods and services. SDCC is informed and believes and thereon alleges that Defendants have capitalized on the goodwill and positive reputation of SDCC and the Comic-Con

convention that SDCC has spent decades developing, to promote and drive attendance to their fledgling convention in Salt Lake City.

25. SDCC is informed and believes and thereon alleges that Defendants intended early on to use and trade on SDCC's goodwill and reputation to promote their own convention. SDCC is informed and believes and thereon alleges that Defendants understood that SDCC's goodwill and reputation are embodied in the COMIC-CON mark and that the mark has substantial value. SDCC is informed and believes and thereon alleges that Defendants intentionally used SDCC's COMIC-CON mark in such a way that SDCC's goodwill and reputation would be transferred to Defendants' Salt Lake convention in the minds of consumers.

26. Defendants' improper intent in adopting the COMIC-CON mark is evidenced in the following excerpts from an article published in April of 2014:

> Unlike a lot of other show segments, Brandenburg and Farr knew they were starting with an advantage from a branding perspective.
>
> "We knew that the term ' comic con' is kind of like a Xerox, it's a generic brand," Brandenburg says. "All it means is comic convention, but we knew that there was brand equity associated with the phrase that we could capitalize on, being the only comic con in our market."
>
> * * *
>
> The core audience would be served by leveraging the name and experience associated with other giant comic cons, including the industry's mega show, Comic Con International, but Brandenburg wanted to cast a wider net.

*See* http://www.expoweb.com/article/0-100000-attendees-less-year/?hq_e=el&hq_m=2872958&hq_l=9&hq_v=470b5c3e6d.

The brand equity Defendants attempt to capitalize on is SDCC's goodwill and reputation embodied in the COMIC-CON marks. Defendants' improper intent is evident from Defendant Brandenburg's statements that Defendants intended to

"capitalize" on the "brand equity" of SDCC's COMIC-CON mark so they could start with "an advantage from a branding perspective."

27. Moreover, SDCC is informed and believes and thereon alleges that Defendants willfully and intentionally developed marketing campaigns designed to deceive and confuse consumers. These marketing campaigns employed deceptive themes such as "Comic-Con is coming to Utah" to further imply that the Utah convention was associated with and/or related to SDCC's Comic-Con convention.

28. Defendants' unauthorized use of SDCC's COMIC-CON mark is causing irreparable harm to SDCC by confusing and misleading consumers as to the source of the Salt Lake Comic Con convention. In undertaking the deceptive actions described herein, Defendants intentionally confuse and mislead consumers as to the source, origin, sponsorship and/or affiliation of the Salt Lake Comic Con convention.

29. Defendants' conduct including, but not limited to, their acts of trademark infringement and unfair competition have damaged SDCC in an amount to be determined at trial, and will continue to damage SDCC unless restrained and enjoined by this Court. SDCC is entitled to a preliminary and a permanent injunction, as set forth below, damages in an amount to be proven at trial and, as a consequence of Defendants' willful and intentional misconduct, an award of enhanced damages and recovery of SDCC's attorneys' fees and costs incurred in connection with this action.

30. On July 25, 2014, through a letter from SDCC's counsel, SDCC demanded that Defendants cease and desist from their unlawful use of the COMIC-COM marks. Instead of addressing the merits of the issues identified by SDCC, Defendants distributed counsel's letter to numerous news outlets to create a media frenzy and reap the publicity benefits for their Salt Lake Comic Con convention in September. Defendants have established an entire separate section on their Salt

Lake Comic Con website where they provide daily updates on their communiques about this dispute to the press, spew baseless and inaccurate legal opinions about the validity of the COMIC-CON marks and provide links to selected news articles about this dispute chosen for their bias in favor of Defendants.

31.   In a further effort to solicit interest in their convention through the unauthorized and unlawful use of SDCC's intellectual property, Defendants invite readers to propagate their skewed accounting of events, by "liking" or commenting on various publications made or driven by Defendants regarding the dispute in exchange for a chance to win a pass to Defendants' event.  Defendants have made it clear in several online publications that they do not intend to stop their unauthorized use and infringement of SDCC's COMIC-COM marks, but instead have brazenly and intentionally continued to infringe the COMIC-CON mark resulting in considerable and irreparable harm to SDCC.

## FIRST CAUSE OF ACTION
## (FEDERAL TRADEMARK INFRINGEMENT- 15 U.S.C. §1114)
## AGAINST ALL DEFENDANTS

32.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 31 as though fully set forth herein.

33.   The actions of Defendants described herein constitute infringement of SDCC's registered service marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

34.   Defendants are using the COMIC-CON mark, or a confusingly similar mark, in connection with the sale of its products and services without SDCC's consent, and with knowledge of SDCC's rights in the COMIC-CON marks.

35.   Defendants' willful, deliberate and unauthorized use of SDCC's COMIC-CON mark, or confusingly similar marks, falsely indicates to consumers

that Defendants' products and services are in some manner connected with, sponsored by, affiliated with, or related to SDCC when they are not.

36. Defendants' willful, deliberate and unauthorized use of SDCC's COMIC-CON mark, or marks confusingly similar thereto, has caused confusion and is likely to continue to cause confusion, mistake and deception in that consumers are likely to associate and believe that Defendants' Salt Lake Comic Con convention is associated with, connected to, affiliated with, authorized by, endorsed by, licensed by and/or sponsored by SDCC in violation of Section 32(l) of the Lanham Act, 15 U.S.C. § 1114(1).

37. Defendants' unauthorized use of SDCC's COMIC-CON mark, or confusingly similar marks, is also likely to cause consumers to be confused as to the source, nature and quality of the products and services Defendants are promoting and selling.

38. Defendants' unauthorized use of SDCC's COMIC-CON mark, or confusingly similar marks, in connection with the sale of products and services allows, and will continue to allow, Defendants to receive the benefit of the goodwill established at great labor and expense by SDCC and to gain acceptance of the goods and services of Defendants, not based on the merits of those goods or services, but based on SDCC's reputation and goodwill.

39. Defendants' unauthorized use of SDCC's COMIC-CON mark, or confusingly similar marks, in connection with the sale and use of goods and services deprives SDCC of the ability to control the consumer perception of the quality of the goods and services provided under the COMIC-CON marks, and places SDCC's valuable reputation and goodwill in the hands of others over which SDCC has no control.

40. As a direct and proximate result of Defendants' willful, intentional, and unauthorized use of the SDCC's COMIC-CON mark, or marks confusingly

similar thereto, SDCC has been, is now, and will be irreparably injured and damaged by Defendants' infringement, and unless Defendants are enjoined by the Court, SDCC will suffer further harm to its name, reputation and goodwill.  This harm constitutes an injury for which SDCC has no adequate remedy at law.

41.     As a further direct and proximate cause of Defendants' actions, SDCC has been damaged, and will continue to sustain damage, and is entitled to receive compensation for all efforts necessary to minimize and/or prevent consumer confusion – such as corrective advertising – in an amount to be proven at the time of trial.

42.     SDCC is also entitled to interest and to its attorneys' fees and costs in bringing this action, all in an amount to be proven at the time of trial.  SDCC is further entitled to injunctive relief as set forth above, and to all other and further forms of relief this Court deems appropriate.

43.     The damages sustained by SDCC as a result of the conduct alleged herein should be trebled in accordance with 15 U.S.C. § 1117(b).

## SECOND CAUSE OF ACTION
## (FALSE DESIGNATION OF ORIGIN - 15 U.S.C. §1125(a))
## AGAINST ALL DEFENDANTS

44.     SDCC incorporates by reference the allegations contained in paragraphs 1 through 43 as though fully set forth herein.

45.     Defendants' unauthorized use of SDCC's COMIC-CON mark, or marks confusingly similar thereto, in connection with the marketing, advertising, promotion, distribution, offering for sale and selling of Defendants' goods and services falsely suggests that Defendants' products and services are connected with, sponsored by, endorsed by, affiliated with, or related to SDCC, and constitutes a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. As a direct and proximate result of Defendants' actions, Defendants have damaged, and will continue to cause damage to SDCC's goodwill and the goodwill associated with SDCC's marks as well as SDCC's products and services associated with those marks. Moreover, Defendants' actions have caused, and will continue to cause, irreparable harm to SDCC and to the public which is deceived as to the source and sponsorship of Defendants' goods and services, and deceived as to the nature, characteristics and qualities of the products and services offered by Defendants, unless restrained and enjoined by this Court. SDCC has no adequate remedy at law to prevent Defendants from continuing their infringing, unfair and unlawful actions and from injuring SDCC.

47. As a further direct and proximate result of Defendants' actions, SDCC has been, and will continue to be, damaged and is entitled to receive compensation arising from efforts necessary to minimize and/or prevent customer confusion – such as corrective advertising – in an amount to be proven at the time of trial. SDCC is also entitled to interest and to its attorneys' fees and costs in bringing this action, all in an amount to be proven at trial.

48. The damages sustained by SDCC as a result of the conduct alleged herein should be trebled in accordance with 15 U.S.C. § 1117(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that it obtain a judgment against Defendants as follows:

1. That SDCC's COMIC-CON marks have been infringed by Defendants under 15 U.S.C. § 1114 and § 1125;

2. That Defendants have engaged in unfair competition with Plaintiff in violation of 15 U.S.C. § 1125 .

3. That SDCC is entitled to recover damages from Defendants for their acts of federal trademark infringement and unfair competition, and that these

damages be trebled under 15 U.S.C. § 1117 because Defendants' conduct is willful, and that SDCC be awarded its reasonable attorneys' fees and costs;

  4. Pre-judgment and post-judgment interest as permitted by applicable law;

  5. That Defendants and their officers, shareholders, directors, agents, servants, employees, attorneys, parent companies, and all persons acting in concert, conspiring with and/or participating with them, be preliminarily and permanently enjoined from:

    a. Using any combination, reproduction, counterfeit, copy or colorable imitation of the COMIC-CON marks in the marketing, promoting, advertising, offering for sale, or the sale of goods or services;

    b. Using any combination, reproduction, counterfeit, copy or colorable imitation of the COMIC-CON marks in any manner likely to cause confusion, to cause mistake or to deceive;

    c. Committing any acts likely to cause consumers to believe that Defendants' goods and services are approved by, licensed by, affiliated with, endorsed by or sponsored by SDCC;

    d. Otherwise competing unfairly with SDCC in any manner including, but not limited to, the infringing use of the COMIC-CON marks.

  6. Such other and further relief as this Court deems just and proper.

Dated: August 7, 2014

              PILLSBURY WINTHROP SHAW PITTMAN LLP

              By  */s/Callie A. Bjurstrom*
                 Callie A. Bjurstrom
                 Attorneys for Plaintiff
                 SAN DIEGO COMIC CONVENTION

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: August 7, 2014

                                    PILLSBURY WINTHROP SHAW PITTMAN LLP

                                    By  */s/ Callie A. Bjurstrom*
                                            Callie A. Bjurstrom
                                            Attorneys for Plaintiff
                                            SAN DIEGO COMIC CONVENTION