L. Rex Sears (CA State Bar No. 294,533)
　rsears@mabr.com
MASCHOFF BRENNAN LAYCOCK
　GILMORE ISRAELSEN & WRIGHT, PLLC
20 Pacifica, Suite 1130
Irvine, California 92618
Telephone: (949) 202-1900
Facsimile: (949) 453-1104

Charles J. Veverka (*pro hac vice*, UT State Bar No. 7,110)
　cveverka@mabr.com
Rachel Jacques (*pro hac vice*, UT State Bar No. 13,250)
　rjacques@mabr.com
Daniel R. Barber (*pro hac vice*, UT State Bar No. 15,993)
　dbarber@mabr.com
MASCHOFF BRENNAN LAYCOCK
　GILMORE ISRAELSEN & WRIGHT, PLLC
1389 Center Drive, Suite 300
Park City, Utah 84098
Telephone: (435) 252-1360
Facsimile: (435) 252-1361

Attorneys for Defendants and Counterclaimants DAN FARR PRODUCTIONS, LLC, DANIEL FARR, and BRYAN BRANDENBURG

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COMIC CONVENTION, a California nonprofit corporation,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>DAN FARR PRODUCTIONS, a Utah limited liability company; and DANIEL FARR and BRYAN BRANDENBURG, individuals,<br><br>　　　Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 14-cv-1865-AJB-JMA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF MATTHEW G. EZELL**<br><br>Date: September 21, 2017<br>Time: 2:00 PM<br>Courtroom: 4A<br>Judge: Hon. Anthony Battaglia |

**TABLE OF CONTENTS**

TABLE OF SOURCES AND EXHIBITS ................................................................... 3

I.   INTRODUCTION ............................................................................................. 4

II.  ARGUMENT ..................................................................................................... 4

    1.   Legal Standard ............................................................................................ 4

    2.   SDCC's Survey is Irrelevant because this is not a Genericide Case ......... 4

III. CONCLUSION .................................................................................................. 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bayer Co. v. United Drug Co.*,
 272 F. 505 (S.D.N.Y.1921) .......................................................................................... 6

*Daubert v. Merrell Dow Pharm., Inc.*,
 509 U.S. 579 (1993) ..................................................................................................... 4

*E. I. Du Pont de Nemours & Co. v. Yoshida International, Inc.*,
 393 F. Supp. 502 (E.D.N.Y. 1975) .............................................................................. 4

*Elliott v. Google, Inc.*,
 No. 15-15809, 2017 U.S. App. LEXIS 8583 (9th Cir. May 16, 2017) ....................... 5

*Expoconsul Int'l Inc. v. A/E Sys.*,
 755 F.Supp. 1237 (S.D.N.Y. 1991) .............................................................................. 6

*Gimix, Inc. v. JS & A Group*,
 699 F.2d 901 (7th Cir.1983) ........................................................................................ 6

*Horizon Mills Corp. v. QVC, Inc.*,
 161 F. Supp. 2d 208 (S.D.N.Y. 2001) ..................................................................... 5, 6

*Hunt Masters, Inc. v. Landry's Seafood Rest., Inc.*,
 240 F.3d 251 (4th Cir. 2001) .................................................................................... 6, 7

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999) ..................................................................................................... 4

*Miller Brewing Co. v. Jos. Schlitz Brewing Co.*,
 605 F.2d 990 (7th Cir. 1979) ....................................................................................... 6

*Schwan's IP, LLC v. Kraft Pizza Co.*,
 460 F.3d 971 (8th Cir. 2006) ....................................................................................... 6

**Statutes**

15 U.S.C. § 1064(3) .......................................................................................................... 6

**Other Authorities**

Federal Rule of Evidence 702 ..................................................................................... 0, 4

Case No. 14-cv-1865-AJB-JMA

2

**TABLE OF SOURCES AND EXHIBITS**

| Title or other description | Short citation form | Location |
|---|---|---|
| Declaration of Daniel R. Barber in Support | Barber decl. | Filed herewith |
| Declaration of Jessica D. Garcia in Support | Garcia decl. | Filed herewith |

Case No. 14-cv-1865-AJB-JMA

3

## I. Introduction

Defendants and counterclaimants Dan Farr Productions, LLC, Daniel Farr, and Bryan Brandenburg (collectively, "DFP") offer the following points and authorities in support of their Motion to Exclude the Report and Testimony of Matthew G. Ezell.

## II. Argument

### 1. Legal Standard

Federal Rule of Evidence 702 states a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."[1] Federal Rule of Evidence 702 "imposes a special obligation upon a trial judge to ensure that any and all scientific testimony ... is not only relevant, but reliable."[2] "Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'"[3]

### 2. SDCC's Survey is Irrelevant because this is not a Genericide Case

To resist the mountain of evidence uniformly compelling the conclusion that "comic con" is generic, SDCC offers a so-called "Teflon" survey conducted by its purported survey expert, Matthew G. Ezell ("Ezell"). [4] A Teflon survey begins with a

---

[1] Fed. R. of Evid. 702.
[2] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).
[3] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993).
[4] I.e., a survey modeled after that approved by *E. I. Du Pont de Nemours & Co. v. Yoshida International, Inc.,* 393 F. Supp. 502, 518–20 (E.D.N.Y. 1975); Ezell's expert report is provided at Barber decl. Ex. 10.

brief lesson explaining the difference between brand names and common names. It then asks respondents to classify a series of words, including the trademark at issue, as either brand names or common names."[5] SDCC's survey is inapposite—as is *any* evidence measuring consumer perceptions—because this is not a genericide case.

### a) Surveys Measuring Consumer Perception Matter Only in Genericide Cases

Courts have determined terms to be generic, and hence unprotectible, under two principal circumstances. The first case is where a seller appropriates an existing generic term and claims exclusive rights in it as a "trademark" of that term. In such a case, because the term was generic before the seller used it, the seller never had trademark rights in the term. An individual challenging the mark need only establish that the term is generic through an examination of the term itself. Notable examples include "flor-tile" as a mark for wooden flooring, "The Computer Store" for computer sales services, "cola" for a type of soft drink, "fontina" for a type of cheese, "baby oil" for mineral oil, and "hog" for large motorcycles.[6]

The second case in which courts have determined a mark to be generic involves matters where a seller establishes trademark rights in a term which a majority of the relevant public then appropriates as the name of a product. In such a case, the mark is said to be a victim of "genericide" and trademark rights may cease. The public's appropriation is set in motion by two, often concurrent processes, namely, (i) the trademark owner's failure to police the mark, resulting in widespread usage by competitors, and (ii) the public's inability to call the product by any other name than the trademarked term. Notable examples include "aspirin" for acetyl salicylic acid, "cellophane" for transparent cellulose sheets and films, "escalator" for a moving

---

[5] *Elliott v. Google, Inc.*, No. 15-15809, 2017 U.S. App. LEXIS 8583, at *18 n.7 (9th Cir. May 16, 2017).

[6] *Horizon Mills Corp. v. QVC, Inc.*, 161 F. Supp. 2d 208, 213 (S.D.N.Y. 2001) (citing cases).

stairway, "Murphy Bed" for a bed that folds into a closet; and "Thermos" for vacuum-insulated bottles.[7]

By statute, the test for genericide is "primary significance … to the relevant public."[8] Thus in a genericide case, consumer surveys can be "particularly helpful in divining what the principal significance … to the consuming public."[9] But surveys are not needed to determine "whether a term was generic before it was applied as a trademark to the products in question"[10]—i.e., in a non-genericide case.[11]

---

[7] *Horizon Mills*, 161 F. Supp. 2d at 213–14 (citing cases).

[8] *See* 15 U.S.C. § 1064(3) ("The primary significance of the registered mark to the relevant public … shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used.").

[9] *Horizon Mills*, 161 F. Supp. 2d at 220.

[10] *See Horizon Mills*, 161 F. Supp. 2d at 220 n. 16 (distinguishing *Gimix, Inc. v. JS & A Group,* 699 F.2d 901, 905 (7th Cir.1983) and *Expoconsul Int'l Inc. v. A/E Sys.,* 755 F.Supp. 1237, 1247 (S.D.N.Y. 1991)).

[11] *See Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F.3d 971, 976 (8th Cir. 2006) (although "consumer perception was relevant to determine whether a coined term for a commercial product (i.e. aspirin, teflon, thermos) had become generic," because "Brick Oven was commonly used before either party began labeling their frozen pizzas with the term … it was not error for the district court to omit the survey evidence from its genericness analysis"); *Hunt Masters, Inc. v. Landry's Seafood Rest., Inc.*, 240 F.3d 251, 255 (4th Cir. 2001) ("The notion that whether a word is generic depends upon consumers' understanding of the word is based upon a scenario involving a coined word for a commercial product (such as 'aspirin,' 'teflon,' or 'thermos') that is alleged to have become generic through common usage."); *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 995 (7th Cir. 1979) ("The survey evidence could have only two purposes: to prove the meaning of the word 'light' or to prove that consumers have come to associate that word with Miller's product. As for the first purpose, the meaning of a familiar English word of Anglo-Saxon heritage can hardly be established by a survey of 988 beer drinkers who had endured long exposure to Miller's advertising of the word in connection with the Miller name. When Judge Learned Hand said that whether a word is generic depends on what 'buyers understand by the word,' *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N.Y.1921), he was referring to a coined word for a commercial product that was alleged to have become generic through common usage. He was not suggesting that the meaning of a familiar, basic word in the English vocabulary can depend on associations the word brings to consumers as a result of advertising. [¶] This

### b) This Is Not a Genericide Case because SDCC Did Not Coin "Comic Con"

Historical evidence and SDCC's own unequivocal concessions establish that this is not a genericide case, where the public has appropriated a term coined by SDCC. Simply stated, SDCC was not the first to call its event a comic con. By August 21, 1965, for example, *The New Yorker* could report: "[a] group of collectors of old comic books held a convention the other weekend … officially known as the *second annual* ComiCon, or Con."[12] SDCC admitted in deposition that SDCC did not coin "comic con":

Q  So the term "Comic-Con" is not a term that SDCC made up itself?

A  That's correct.

Q  It didn't coin that term?

A  That's correct.[13]

Because SDCC "does not claim to have first coined the term" "comic con," "it is not necessary to determine whether the term has become generic through common use," and that "render[s] [SDCC's] consumer survey irrelevant."[14]

### III. Conclusion

For the foregoing reasons, Mr. Ezell's report and any testimony based upon or related to his efforts to conduct a Teflon survey are, as a legal matter, irrelevant to this case. As such, they should be excluded.

---

brings us to the second possible purpose of Miller's new survey evidence, to prove that consumers have come to associate the word with Miller's product. Proof of that fact would not advance Miller's trademark claim, because … if a word is generic it 'can never become a trademark.'").

[12] Garcia Decl. Ex. 18, at DANFARR008743 (italics added).
[13] Glanzer dep. 58:12–16.
[14] *See Hunt Masters*, 240 F.3d at 255.

| | | |
|---|---|---|
| 1 | DATED:  June 23, 2017 | Charles J. Veverka |
| 2 | | L. Rex Sears |
| | | Rachel Jacques |
| 3 | | Daniel R. Barber |
| 4 | | MASCHOFF BRENNAN LAYCOCK |
| | |    GILMORE ISRAELSEN & WRIGHT, PLLC |

By:  /s/ *Daniel R. Barber*

Attorneys for Defendants and Counterclaimants DAN FARR PRODUCTIONS, DANIEL FARR, AND BRYAN BRANDENBURG

Case No. 14-cv-1865-AJB-JMA

8