UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COMIC CONVENTION, a California non-profit corporation,<br><br>         Plaintiff,<br><br>v.<br><br>DAN FARR PRODUCTIONS, a Utah limited liability company; DANIEL FARR, an individual; and BRYAN BRANDENBURG, an individual,<br><br>         Defendants. | Case No.: 14-cv-1865 AJB (JMA)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**<br><br>(Doc. No. 126) |

  Presently before the Court is Plaintiff San Diego Comic Convention's ("SDCC") motion for a protective order. (Doc. No. 126.) Defendants Dan Farr Productions, Daniel Farr, and Bryan Brandenburg (collectively referred to as "Defendants") oppose the motion. (Doc. No. 146.) Based on the arguments presented at the hearing held on July 14, 2017, and the evidence proffered by both parties, the Court **GRANTS IN PART and DENIES IN PART** SDCC's motion for a protective order.

## BACKGROUND

  The contours of the instant case are straightforward. SDCC, a non-profit corporation formed in 1975 that is dedicated to the appreciation of comics through presentations and

events, asserts that Defendants infringed on its family of service marks. (Doc. No. 1 ¶¶ 10, 13, 16.) Specifically, SDCC argues that Defendants' Salt Lake Comic Con produces the same type of convention that SDCC produces under its allegedly protected "COMIC-CON" marks. (*Id.* ¶ 17.) Based upon this, it is SDCC's allegation that Defendants purportedly unauthorized use of SDCC's family of marks is meant to capitalize on the goodwill and positive reputation of SDCC and to confuse and deceive consumers into believing that Salt Lake Comic Con is affiliated with SDCC. (*Id.* ¶ 24.)

SDCC filed its complaint on August 7, 2014. (Doc. No. 1.) SDCC asserts two causes of action: (1) federal trademark infringement; and (2) false designation of origin. (*Id.* ¶¶ 32–48.) On June 23, 2017, both parties filed separate motions to exclude and motions for summary judgment. (Doc. Nos. 91, 95, 99, 106.)[1] The instant motion, SDCC's motion for a protective order, was filed on July 6, 2017, (Doc. No. 126), and on July 14, 2017, the Court heard argument for and against the motion. (Doc. No. 119 at 3.)

## **LEGAL STANDARD**

A district court's order restraining extrajudicial comment about a pending case constitutes a prior restraint on those parties' first amendment right to free speech. *Levine v. U.S. Dist. Court for Cent. Dist. of Cal.*, 764 F.2d 590, 594 (9th Cir. 1985). A court's entry of a prior restraint on speech is "one of the most extraordinary remedies known to our jurisprudence" and is thus subject to a strict scrutiny type analysis. *Nebraska Press Ass'n. v. Stuart*, 427 U.S. 539, 562 (1976). Despite this high standard to overcome, it is important to highlight that the "right to a fair trial, both in civil and criminal cases, is of the utmost importance to the administration of justice, and many courts have held that a trial judge has the authority to adopt reasonable measures to avoid injury to the parties by reason of prejudicial or inflammatory publicity." *Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, Nos. 09-CV-2324 JLS (CAB), 2011 WL 6182423, at *18 (S.D. Cal. Dec.

---

[1] The Court notes that these motions were filed on the dispositive motion cut-off date deadline. (Doc. No. 83 at 2.)

13, 2011). Specifically, "[t]he Supreme Court has recognized that conflict between freedom of speech and the right to a fair trial is no less troubling in the non-criminal context." *Bailey v. Sys. Innovation, Inc.*, 852 F.2d 93, 97 (3d Cir. 1988); *see also Nebraska Press Ass'n*, 427 U.S. at 586 ("So basic to our jurisprudence is the right to a fair trial that it has been called 'the most fundamental of all freedoms.'") (Brennan, J., concurring) (quoting *Estes v. Texas*, 381 U.S. 532, 540 (1965)).

## DISCUSSION

### A. The Parties' Joint Motion for a Protective Order

As an initial matter, the Court first turns to its order granting the parties' joint motion for entry of a protective order. (Doc. No. 46.) This order recognized that some of the documents and information being sought through discovery in the instant action, for competitive reasons, are normally kept confidential by both parties. (*Id.* at 2.) Thus, the Court found it appropriate to grant both parties' request that they refrain from posting, sharing, or disseminating documents that were deemed confidential by counsel. (*Id.* at 2–11.)

The Supreme Court has held that the "continued court control over [] discovered information does not raise the same spectre of government censorship that such control might suggest in other situations." *Seattle Times Co. v. Rhinehart*, 104 S. Ct. 2199, 2207 (1984). Moreover, "it is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Id.* at 2208. Based upon this, the Court finds it appropriate to continue to enforce the protective order and its terms stated in Doc. No. 46.

### B. SDCC's Motion for a Protective Order

The Court now turns to the merits of SDCC's motion for a protective order. First, based upon the nature of SDCC's requests, the Court finds that its protective order is a prior restraint. *Compare Alexander v. United States*, 509 U.S. 544, 550 (1993) ("The term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to

occur.'"), *with Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (holding that a protective order pursuant to Federal Rule of Civil Procedure 26(c) states that for good cause the court may issue a protective order to "protect a party or person from annoyance" including orders that limit the scope of disclosure to certain matters). Thus, for the remainder of this Order, the Court will refer to SDCC's request for a prior restraint as a suppression order.[2]

SDCC asks that the Court proscribe Defendants from making any of the following statements prior to and during trial (1) any false or misleading statement about SDCC or any of its board members; (2) any false or misleading statement about the merits of this dispute; (3) any statement that accuses, suggests, implies, or states that SDCC lied and/or committed fraud (other than in documents to be filed with the Court); (4) any statement about the genericness of the term comic con (other than in documents to be filed with the Court); (5) any statement about whether the term comic con is descriptive; and (6) any statement about whether SDCC abandoned any trademark rights (other than in documents to be filed with the Court). (Doc. No. 126-1 at 12–13.) SDCC asserts that the suppression of these six statements is justified as Defendants have engaged in a willful and consistent strategy to win this case in the court of public opinion. (*Id.* at 6.) Specifically, SDCC contends that Defendants have circulated numerous press releases and articles and have employed social media to tarnish the reputation of SDCC and thereby influence the public including the jury pool. (*Id.* at 7.)

Defendants retort that SDCC has not shown that any of its statements are false or that there is a clear and present danger to a fair trial. (Doc. No. 146 at 7–10.) Moreover,

---

[2] A protective order pursuant to Federal Rule of Civil Procedure 26 states that for "good cause" a court may issue an order to protect a party from one or more of the following including (1) forbidding the disclosure or discovery; (2) specifying terms for the disclosure or discovery; (3) prescribing a discovery method; (4) forbidding inquiry into certain matters; and (5) designating the persons who may be present while the discovery is conducted. Fed. R. Civ. P. 26(c).

Defendants assert that SDCC has failed to provide evidence that the jury pool has been or will be tainted. (*Id*. at 11.) Thus, concluding that voir dire could cure any incidental exposure to Defendants' statements, Defendants argue that the Court should have no part in SDCC's motion. (*Id*. at 14.)

As to SDCC's first two requests, the Court finds that they constitute an unconstitutional prior restraint. SDCC petitions the Court to demand that Defendants refrain from making any false or misleading statements. However, "prior restraints are not permitted to stop the publication of a defamatory statement." *Gilbert v. Nat. Enquirer, Inc.*, 43 Cal. App. 4th 1135, 1144 (1996); *see also Wilson v. Superior Court of Los Angeles Cty.*, 13 Cal. 3d 652, 658–59 (1975) (stating that "leave no doubt that the truth or falsity of a statement on a public issue is irrelevant to the question whether it should be repressed in advance of publication" and that "[t]he concept that a statement on a public issue may be suppressed because it is believed by a court to be untrue is entirely inconsistent with constitutional guarantees and raises the spectre of censorship in a most pernicious form."). Thus, finding that an order prohibiting Defendants from publishing any "false statements" on their websites or social media platforms constitutes an unconstitutional prior restraint, the Court **DENIES** SDCC's request as to statements one and two listed *supra* p. 4. *See Evans v. Evans*, 162 Cal. App. 4th 1157, 1167 (2008) ("An order prohibiting a party from making or publishing false statements is a classic type of an unconstitutional prior restraint.").

Turning towards the four remaining requests made by SDCC, the Court finds that the circumstances surrounding the instant matter warrant the issuance of a suppression order. *See Gilbert*, 43 Cal. App. 4th at 1145 ("[N]ot all prior restraints are invalid; prior restraints may be imposed under some extraordinary circumstances.").

A party seeking to overcome the heavy presumption against prior restraints must establish that (1) the activity it seeks to restrain poses either a clear and present danger or a serious and imminent threat to a protected competing interest; (2) the restraint is narrowly

drawn; and (3) less restrictive alternatives are not available.[3] *Hurvitz v. Hoefflin*, 84 Cal. App. 4th 1232, 1241 (2000). The Court will take each factor in turn.

      i.      <u>A Clear and Present Danger or Serious and Imminent Threat</u>

"The sixth amendment, by its terms, is applicable only to criminal actions, but 'the right to trial by jury [is] preserved,' [] in civil cases by the seventh amendment." *Bailey*, 852 F.2d at 97. Moreover, several cases make abundantly clear that fairness in a jury trial, whether criminal or civil in nature, is a vital constitutional right. *Nebraska Press Ass'n*, 427 U.S. at 586 (Brennan, J., concurring).

Here, SDCC contends that its constitutional right to a fair trial is being threatened by the comments, posts, and actions of Defendants. (*See generally* Doc. No. 126-1.) Based on the record and the arguments presented by both parties, the Court agrees with SDCC.

The Court first notes that Defendant Brandenburg's Twitter feed has more than 5,200 followers, the Salt Lake Comic Con Twitter feed has more than 30,000 followers, there have been more than 200,000 media articles reporting on the instant case, and in 2014 Salt Lake Comic Con had more than 120,000 attendees. (Doc. No. 126-1 at 8; Edge Decl. Ex. 2, Doc. No. 126-4 at 4; *id.* Ex. 3, Doc. No. 126-5 at 4.) Consequently, it is clear to the Court that any posting, sharing, liking, or dissemination of information by Defendants through their range of online networks would reach an extensive amount of people.

Next, the Court highlights that Defendants, specifically Defendant Brandenburg, use their various websites and social media pages to voice their opinions on the merits of this case. To be clear, the Court is entirely cognizant to the fact that Defendant Brandenburg is within his First Amendment rights to express his opinions and beliefs. However, the Court also recognizes the evidence that demonstrates that the venire is being influenced through

---

[3] The Court in *Nebraska Press Ass'n.*, 427 U.S. at 562, used three varying factors to determine whether a prior restraint is valid. These were (1) the nature and extent of pretrial news and coverage; (2) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (3) how effectively a restraining order would operate to prevent the threatened danger.

1  social media dialogue. For instance, Defendant Brandenburg hosts several discussions on
2  his Facebook by stating comments such as "[t]he trademark office rejected [SDCC's]
3  trademark application for 'comic-con". [sic] This is the fraudulent statement they used to
4  obtain their trademarks when they knew there were many comic cons out there." (Edge
5  Decl. Ex. 6, Doc. No. 126-8 at 4.) To which a Facebook user replied "So they lied?" (*Id*.)
6  In addition, the Court highlights several other Facebook user responses to Defendant
7  Brandenburg's Facebook posts regarding the instant case:
8      a.   "[SDCC's] entire lawsuit was predicated on a falsehood. LOL"
9      b.   "@Bryan Brandenburg Sorry to hear that. There is no excuse for this suit, the
10          law is clear."
11     c.   "as more and more information becomes public, you will hopefully see that
12          Bryan and Dan are doing the right thing by fighting SDCC."
13     d.   "These documents are fascinating, and show a clear falsehood (holy crap
14          someone is in big trouble) . . . ."
15     e.   "Sooooooo. They lied? Isn't there like a fine for falsifying stuffs?"
16          To which Defendant Brandenburg responded: "It's a Felony."
17     f.   "Sounds like perjury to me and they should be held accountable for the
18          felonies committed on the state and federal level . . . ."
19     g.   "I'm not a lawyer so I hope I'm translating this correctly. Does this mean that
20          SDCC doesn't have a legal leg to stand on?"
21     e.   "The entire case for sdcc was based on a lie. It's what bullies do."
22  (*Id*. at 5–13.) Moreover, the Court notes that Defendants' websites and social media
23  applications are packed with comments such as "'Comic Con' is generic," "SDCC declared
24  false information to obtain the 'Comic Con' trademark," and the Salt Lake Comic Con
25  website has an entire section devoted to the instant matter with subheadings titled "Comic
26  Con is generic." (*Id*. at 2–7; Edge Decl. Ex. 9, Doc. No. 126-11 at 3.)
27      In view of the comments, postings, and discussions initiated by Defendants on their
28  various social media platforms, it is plain to the Court that a serious and imminent threat

to a fair trial outweighs the First Amendment rights at stake. Defendants claim that under the constitutional malice standard that the evidence demonstrates that the San Diego jury pool is "essentially untouched." (Doc. No. 146 at 12.) Specifically, Defendants assert that most of the channels through which they communicate target "Comic Fandom" and not San Diego. (*Id*. at 13.) First, the Court disagrees that a constitutional malice standard applies to the present action where case law is clear that the suppression order is a prior restraint that is analyzed under strict scrutiny. *See Steiner v. Superior Court*, 220 Cal. App. 4th 1479, 1487 (2013) ("As a general rule, gag orders on trial participants are subject to strict judicial scrutiny . . . ."). Second, to argue that Defendants' posts are meant to target the community of comic fans instead of the San Diego citizenry completely flouts the fact that the "Comic Fandom" community is logically inclusive of San Diego comic fans.

Additionally, the Court highlights that "[w]ith the nearness of trial, the potential for prejudice becomes particularly acute." *Levine*, 764 F.2d at 597. Here, trial is set for the end of November. (Doc. No. 124 at 1.) Notably, in addition to this, as of the date of this Order, San Diego Comic Con is currently occurring, and Salt Lake Comic Con is set to begin in two months.

Based upon the foregoing, the Court finds that there is a serious and imminent threat to SDCC's right to a fair trial. Accordingly, this factor weighs in favor of SDCC.

    ii.    <u>The Restraint is Narrowly Drawn</u>

A restraining order is unconstitutionally vague if it fails to give clear guidance regarding the types of speech for which an individual may be punished. *See Smith v. Goguen*, 415 U.S. 566, 572–73 (1974). Statements three through six listed above are neither vague nor overbroad. Instead, the Court finds that each statement clearly isolates and identifies the specific type of language wished to be suppressed in the narrowest terms possible. *See Carroll v. Princess Anne*, 393 U.S. 175, 183 (1968) (holding that any permissible order "must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public

order . . . ."). Thus, Defendants are on notice of what future actions may violate this suppression order. Accordingly, this second factor also weighs in favor of SDCC.

### iii. Less Restrictive Alternatives are Not Available

Defendants argue that any incidental exposure to their statements should be cured through voir dire. (Doc. No. 146 at 14.) However, the Court rejects this contention as "[i]t is not in the parties' interest or in the interest of justice to exclude from the jury all citizens" who have read or heard about the case or remove those potential jurors who "keep abreast of current events." *Levine*, 764 F.2d at 600. Additionally, "voir dire cannot alleviate the harm to the integrity of the judicial process caused by the extrajudicial statements of trial participants." *Id*.

Furthermore, the Court finds it inadequate to simply instruct the jurors to base their decisions only on the evidence presented at trial as the Court cannot run the risk of thinking the jury will do as the Court says. This is especially significant in light of the vast amount of publicity already generated in the instant matter. Furthermore, though Defendants do not argue this point, the Court highlights that sequestration of the jury during this case would not be appropriate as jurors should not have to endure the burden of Defendants' transgressions. *See id*. Based upon the foregoing, the Court finds that there are no practicable less restrictive alternatives available at this time. Thus, this final factor weighs in favor of granting the suppression order.

The Court is fully cognizant that "[t]he right to free speech is . . . one of the cornerstones of our society," and "is protected under the First Amendment of the United States Constitution . . . ." *Evans*, 162 Cal. App. 4th at 1166 (internal quotation marks omitted). However, the unique circumstances surrounding this litigation in combination with the multitude of alarming responses from Facebook users who have viewed Defendant Brandenburg's posts warrants the issuance of a suppression order. Thus, at this juncture, the Court will not permit Defendants to continue to argue the merits of the present case before the prospective jury has seen the evidence within the sanctity of the courtroom and according to the Federal Rules of Civil Procedure. *See Patterson v. Colorado*, 205 U.S.

454, 462 (1907) ("The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."). Based on the foregoing and finding that the strict scrutiny factors weigh in favor of SDCC, the Court issues a suppression order on statements three through six listed above.

## CONCLUSION

As discussed more thoroughly above, the Court **ORDERS** as follows:

(1) The Court's Order in Docket No. 46 remains in full force and effect. Both parties are to keep documents labeled "confidential" private and refrain from posting or disseminating these documents;

(2) SDCC's request for a suppression order as to statements one and two listed *supra* p. 4 are **DENIED**; and

(3) SDCC's request for a suppression order as to statements three through six listed *supra* p. 4 are **GRANTED**. The Court's variations and adjustments to SDCC's suppression order as written in Doc. No. 147 are to be implemented and followed as written.

**IT IS SO ORDERED**.

Dated: July 21, 2017

Hon. Anthony J. Battaglia
United States District Judge