UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COMIC CONVENTION, a California non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAN FARR PRODUCTIONS, a Utah limited liability company; DANIEL FARR, an individual; and BRYAN BRANDENBURG, an individual,<br><br>Defendants. | Case No.: 14-cv-1865 AJB (JMA)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' EX PARTE APPLICATION FOR RECONSIDERATION OF THE COURT'S ORDER EXCLUDING THE TESTIMONY OF CLARKE NELSON**<br><br>(Doc. No. 277) |

Presently before the Court is Defendants Dan Farr Productions, Daniel Farr, and Bryan Brandenburg's (collectively referred to as "Defendants") ex parte application for a motion for reconsideration of the Court's order excluding the testimony of Clarke Nelson. (Doc. No. 277.) Plaintiff San Diego Comic Convention ("Plaintiff") opposes the motion. (Doc. No. 293.) As explained more fully below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' ex parte motion.

## BACKGROUND

On August 7, 2014, Plaintiff filed a complaint against Defendants asserting causes of action for (1) federal trademark infringement and (2) false designation of origin. (Doc.

No. 1.) The heart of the instant lawsuit revolves around Defendants' production of Salt Lake Comic Con, which Plaintiff asserts infringes on their trademark "Comic-Con" registered with the United States Patent and Trademark Office ("USPTO"). (*Id*. ¶¶ 13, 17.)

On June 23, 2017, both parties filed various motions. Relevant to the purposes of the instant matter is Plaintiff's motion to exclude Defendants' expert Clarke B. Nelson. (Doc. No. 91.) On September 12, 2017, the Court granted Plaintiff's motion to exclude. (Doc. No. 252.) On October 11, 2017, Defendants filed the present matter, their ex parte motion for reconsideration. (Doc. No. 277.) This Order follows.

## **LEGAL STANDARD**

A motion to alter judgment is brought under Federal Rule of Civil Procedure 59(e). *See Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983). An amendment to a judgment is appropriate under Fed. R. Civ. P. 59(e) if: "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *Zimmerman v. City of Oakland,* 255 F.3d 734, 740 (9th Cir. 2001) (citing *School Dist. No. 1J, Multnomah Cty., v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). The Ninth Circuit has recognized that in the interests of finality and conservation of judicial resources, Rule 59(e) is an "extraordinary remedy to be used sparingly." *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

## **DISCUSSION**

A.  Procedural Issues

As a threshold matter, the Court first notes that Defendants failed to follow the local rules. Per the local rules, any application for reconsideration must be filed with a "certified statement of an attorney setting forth . . . (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." CivLR 7.1.i.1.

Next, the Court highlights that the present motion represents Defendants' second

2

1  attempt at filing their ex parte application. Defendants filed their initial ex parte motion on
2  October 9, 2017, a day before the twenty-eight day deadline to file motions for
3  reconsideration was to expire. (Doc. No. 270 (*See* Fed. R. Civ. P. 59(e)). However,
4  Defendants' failure to follow Judge Battaglia's Civil Case Procedures resulted in this initial
5  ex parte motion being struck from the docket. Defendants then filed their amended ex parte
6  motion on October 11, 2017. (Doc. No. 277.) Thus, the present motion is untimely, as a
7  result of Defendants' own actions. However, the Court declines to deny the motion based
8  on procedural grounds in light of the Court's desire to decide matters on the merits.

B.   Motion for Reconsideration

Defendants seek reconsideration of three categories of rebuttal opinions provided by their expert Mr. Nelson: (1) identification of costs and expenses incurred by Defendants to generate the $22.8 million of gross revenue accused of infringement by Plaintiff's financial expert, Dr. Patrick Kennedy, and deduction of the same; (2) a rebuttal to Plaintiff's financial expert's opinion of up to $9.8 million in potential corrective advertising damages; and (3) various economic data points in rebuttal to Plaintiff's financial expert's failure to provide any meaningful analysis of the potential contribution of the asserted marks to Defendants' profits. (Doc. No. 292 at 2–3.) Defendants make clear that they are not seeking reconsideration of the exclusion of Mr. Nelson's 5-10% conclusion.[1] (*Id*. at 3.)

Plaintiff states in opposition that Defendants' motion (1) fails to address the proper legal standard; (2) is attempting to reargue issues already briefed by the parties and ruled upon by the Court; (3) incorrectly argues that Plaintiff failed to address certain opinions in its motion to exclude Mr. Nelson; and (4) allowing Mr. Nelson to testify to Defendants' aforementioned topics would render the gatekeeping function of the Court meaningless. (*See generally* Doc. No. 293.)

---

[1] After analyzing over fifteen various qualitative and quantitative considerations in his expert report, Mr. Nelson concluded that "it [was] his opinion that not more than 5% to 10% of [Defendants'] operating profits could be attributed to the accused marks." (Doc. No. 234-2 at 58.)

3

14-cv-1865 AJB (JMA)

The Court will take each of Defendants' reconsideration requests in turn.

### i. Identification of Costs and Expenses

Under this first category, Defendants ask the Court to reconsider its order excluding Mr. Nelson's cost opinions. (Doc. No. 292 at 4.) Specifically, Defendants seek to have Mr. Nelson opine as to his financial analysis of Defendants' accounting records to determine which of Defendants' costs should be applied to accused revenues to then calculate their total profits—as reflected in Schedule 3. (*Id*.) Plaintiff retorts that Mr. Nelson's cost opinions fail to engage in any discussion or analysis of any methodology for calculating deductions from their expert's $22,099,489 revenue figure. (Doc. No. 293 at 7.)

The Court notes that it was not its intention to exclude the data represented in Schedule 3. The Court clarifies that it found Schedule 3 inextricably intertwined with the various considerations the Court finds unsupported and unreliable as discussed *infra* pp. 6–7. However, having reviewed Schedule 3 on its own, the Court finds that the data fits within the definition of expenses under 17 U.S.C. § 504(b)—"Expenses are all operating costs] [overhead costs][and] production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of evidence." Accordingly, upon reconsideration, and if authenticated, the Court would allow a summary of the data from Defendants' accounting records, (FRE 1006) (presumably Schedule 3), to be offered. Thus, Defendants' motion is **GRANTED** in part, and in this regard.

On a side note, the Court makes clear that the data within Schedule 3, if otherwise admissible as matters of fact, is simply monetary amounts associated with advertising, sales, and costs of goods, etc. (Doc. No. 234-2 at 75–78.) Thus, an expert is not required to testify to these data points. However, if Defendants wish to call upon Mr. Nelson to testify to the creation of Schedule 3, he is to only testify to the numbers presented in the schedule and their source. He is precluded from giving any opinions about or drawn from the data. Of course, any defense witness with personal knowledge could do the same. From the data itself, the jury, consistent with Ninth Circuit Model Jury Instruction 15.29, could

deduct relevant sums in considering profits.

One further note, the Court finds the litigation fees and costs associated with this data fall outside of "operating, overhead, and production costs incurred in producing the gross revenue," (See Model Instruction 15.29), and would need to be redacted from the data presented.

### ii. Corrective Advertising Damages

Next, Defendants ask the Court to reconsider exclusion of Mr. Nelson's rebuttal corrective advertising opinions as they are vital to demonstrating how Plaintiff's expert Dr. Kennedy's corrective advertising claim is unsupported. (Doc. No. 292 at 6–7.) Plaintiff retorts that Mr. Nelson's corrective advertising claim does nothing more than criticize the advertising methodology employed by Dr. Kennedy, which Plaintiff's argue Mr. Nelson is not qualified to do. (Doc. No. 293 at 8.) Moreover, Plaintiff claims that Mr. Nelson failed to address Dr. Kennedy's $2,832,363 alternative damages figure. (*Id*.)

Defendants' motion for reconsideration as to this factor does not meet any of the specified criteria for a motion for reconsideration. Rather, the motion addresses the contention that Mr. Nelson's rebuttal opinions are "reliable and important considerations for the trier of fact to properly assess damages and evaluate deficiencies in Dr. Kennedy's opinions." (Doc. No. 292 at 6.) However, the Court disagrees. In contrast, the Court finds Mr. Nelson's corrective advertising arguments unreliable and unsupported.

First, the Court notes that Mr. Nelson's report is lacking in any substantive financial analysis as to how Dr. Kennedy's corrective advertising figure is erroneous. Instead, Mr. Nelson states that Dr. Kennedy's opinion is "speculative and unreliable" and that Dr. Kennedy's estimate "appears to be nothing more than a loosely constructed memo proposing a 'campaign' having two key targets." (Doc. No. 234-2 at 59–60.) Moreover, the various rebuttal opinions he makes against Dr. Kennedy are so heavily entrenched in unsupported arguments that the Court is concerned that these opinions would not be reasonably accurate so as to help the trier of fact make an appropriate determination regarding corrective advertising. *See In re Silicone Gel Breasts Implants Prods. Liab.*

*Litig.*, 318 F. Supp. 2d 879, 893–94 (C.D. Cal. 2004) (holding that a court under Rule 702 must make an inquiry into whether an expert's opinion would be useful or helpful to the trier of fact).

Second, the Court finds Mr. Nelson unqualified to provide an opinion on the various conclusions he made within this portion of his report. Mr. Nelson's opinion jumps from public confusion, license agreements as related to corrective advertising, the value of the trademarks in question, to the survey commissioned by Plaintiff. (Doc. No. 234-2 at 60–62.) As Defendants repeatedly declare in their motion, Mr. Nelson is a certified public accountant, a member of the American Institute of Certified Public Accountants, is certified in Financial Forensics, and Accredited in Business Valuation. (Doc. No. 292 at 4.) Taking a closer look at Mr. Nelson's curriculum vitae reveals that he states that he has "experience" in intellectual property matters, has assisted intellectual property holders with "licensing negotiations," and engaged in various trademark "business disputes." (Doc. No. 234-2 at 70.) However, the majority of his experience is centered on accounting and his publications mainly revolve around patent infringement. (*Id.* at 70, 72.) Consequently, the Court finds that Mr. Nelson goes beyond his expertise and formulates unreliable opinions regarding trademark law. *See* Fed. R. Civ. P. 702 (holding that a person is qualified to testify as an expert if he or she has the "knowledge, skill, experience, training, or education" sufficient to qualify them as an expert on the subject to which their testimony relates).[2] Thus, the Court **DENIES** Defendants' motion in this aspect.

The Court clarifies that testimony as to the amount of money either party has spent

---

[2] Defendants broadly mischaracterize Mr. Nelson's intellectual property experience. Defendants' motion states that Mr. Nelson "is a highly experienced intellectual property damages expert . . . given his education, training, experience . . . [and] recognition." (Doc. No. 292 at 9.) However, experience in intellectual property damages does not render Mr. Nelson an expert on trademark law in general. Moreover, Mr. Nelson's education and training, as reflected in his resume, are centered in accounting, financial forensics, and business valuation. (Doc. No. 234-2 at 70.) Mr. Nelson does not hold a degree or certification in intellectual property, nor does he have any legal training in trademark law.

on advertising or corrective advertising are simply data points that can be testified to by a fact witness with appropriate personal knowledge. However, the various opinions detailed above are improper and are thus appropriately excluded.

### iii. Contribution Rates

Under this final category, Defendants seek reconsideration of Mr. Nelson's contribution opinions, "which represent the types of information considered and analyses commonly applied by other courts to assess the contribution of the asserted trademarks to Defendants' profits." (Doc. No. 292 at 9.) Specifically, Defendants point to various license and proposed license agreements for the asserted trademarks. (*Id.*) Plaintiff argues that reconsideration as to this factor is not warranted as these various considerations, detailed in around fifty-seven pages, are not tied to a particular methodology or reliable damages opinion. (Doc. No. 293 at 9.)

First, the Court disagrees with Defendants' assertion that the Court offered no criticism of any of the specific economic data points discussed by Mr. Nelson—geographic characteristics of the parties' customers, revenue by various geographies, the parties advertising and promotional expenditures, national attendance figures, and competition between the parties. (Doc. No. 292 at 10.) The Court's previous order clearly stated that the various considerations presented by Mr. Nelson were produced for the Court without any background as to why "Mr. Nelson chose to focus on the considerations he did" nor "why the factors he chose were important." (Doc. No. 263 at 15.)

Next, Defendants have not set forth any basis that warrants reconsideration. Rather, in their motion to reconsider, Defendants appear to be re-litigating issues the Court considered when ruling on Plaintiff's motion to exclude. (*See generally* Doc. No. 263.) This is improper. *See, e.g.*, *Costello v. U.S. Gov't*, 765 F. Supp. 1003, 1009 (C.D. Cal. 1991) (holding that in general, "courts avoid considering Rule 59(e) motions where the grounds for amendment are restricted to either repetitive contentions of matters which were before the court on its prior consideration or contentions which might have been raised prior to the challenged judgment."); *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*,

99 F.R.D. 99, 101 (E.D.Va. 1983) (holding that "Plaintiff improperly used the motion to reconsider to ask the Court to rethink what the Court had already thought through—rightly or wrongly.").

The Court reiterates that it finds that Mr. Nelson's various contribution opinions are essentially pure argument without any methodology to support his conclusions. *See Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (holding that expert testimony is "unreliable and inadmissible" when an expert fails to "satisfactorily [] explain the reasoning behind his opinions," rendering his opinions "unsubstantiated and subjective"). Moreover, the Court is puzzled as to how these considerations are relevant as they are directly connected to Mr. Nelson's 5-10% conclusion. (*See* Doc. No. 234-2 at 58 ("Based on the above qualitative and quantitative considerations . . . it is my opinion that not more than 5% to 10% of [Defendants'] operating profits could be attributed to the accused marks.")). Defendants assert that the various contribution opinions will help the trier of fact assess the contribution of the trademarks to Defendants' profits. (Doc. No. 292 at 9.) In direct opposition, the Court finds that these various qualitative and quantitative considerations would be wholly unconstructive and impractical as the trier of fact would be left with a smattering of opinions without any direction as to how much each consideration weighed in its analysis or how to put these considerations together to come to a percentage.

Based on the foregoing, Defendants' motion as to this factor is **DENIED**.

//
//
//
//
//
//
//
//

## CONCLUSION

As explained more thoroughly above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' ex parte motion for reconsideration. *See Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, (9th Cir. 2003) ("Whether or not to grant reconsideration is committed to the sound discretion of the court.").

**IT IS SO ORDERED**.

Dated: October 27, 2017

Hon. Anthony J. Battaglia
United States District Judge