Michael I. Katz (SBN 181728)
 mkatz@mabr.com
L. Rex Sears (SBN 294,533)
 rsears@mabr.com
MASCHOFF BRENNAN LAYCOCK
 GILMORE ISRAELSEN & WRIGHT, PLLC
20 Pacifica, Suite 1130
Irvine, California 92618
Telephone:  (949) 202-1900
Facsimile:   (949) 453-1104

Charles J. Veverka (*pro hac vice*, UT State Bar No. 7,110)
 cveverka@mabr.com
MASCHOFF BRENNAN LAYCOCK
 GILMORE ISRAELSEN & WRIGHT, PLLC
1389 Center Drive, Suite 300
Park City, Utah 84098
Telephone: (435) 252-1360
Facsimile:  (435) 252-1361

Attorneys for Defendants and Counterclaimants DAN FARR PRODUCTIONS, LLC, DANIEL FARR, and BRYAN BRANDENBURG

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAN DIEGO COMIC CONVENTION, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAN FARR PRODUCTIONS, a Utah limited liability company; and DANIEL FARR and BRYAN BRANDENBURG, individuals,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 14-cv-1865-AJB-JMA<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(A) ON GENERICNESS**<br><br>Date: December 7, 2017<br>Time: 1:00 p.m.<br>Courtroom: 4A (4th Floor Schwartz)<br>Judge: Hon. Anthony Battaglia |

## I.   INTRODUCTION

Plaintiff and counterdefendant San Diego Comic Convention ("SDCC") has alleged that defendants and counterclaimants Dan Farr Productions, LLC, Daniel Farr, and Bryan Brandenburg's (collectively, "DFP") use of the mark SALT LAKE COMIC CON in connection with a comic and popular arts convention infringes SDCC's trademark rights in the following three registered trademarks:

**COMIC-CON**

**COMIC CON INTERNATIONAL**



DFP disputes that the marks as asserted by SDCC are subject to any trademark protection because the term "comic con" is generic.

## II.   LEGAL STANDARD

Rule 50(a) authorizes a court to resolve an issue against a party and grant a motion for judgment as a matter of law if the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on an issue.[1]  A court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor."[2]  Neither a "mere scintilla" of evidence nor pure speculation is sufficient to sustain a verdict for the non-moving party.[3]

---

[1] FED. R. CIV. P. 50(a).
[2] *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).
[3] *See Lakeside–Scott v. Multnomah Cty.*, 556 F.3d 797, 802–03 (9th Cir. 2009).

# III. THERE IS NO LEGALLY SUFFICIENT EVIDENCE TO SHOW SDCC'S MARKS ARE ANYTHING BUT GENERIC

Generic terms are not valid marks and are not subject to trademark protection under any circumstance.[4] A generic term is one that fails to identify the source of a product or service because it refers to the product or service itself.[5] A registered trademark is generic when the "primary significance of the registered mark to the relevant public" is as the name for a particular type of good or service irrespective of its source."[6] To find whether the primary significance of a mark is generic, courts consider several factors: how the media uses the term, whether the plaintiff uses the term generically, widespread use by competitors, and consumer surveys.[7] Whether a mark is generic is a question of fact.[8]

"Comic con" is a generic term for comic conventions because it describes *what it is* (e.g. a comic convention) rather than *who it is* (e.g. the comic con producer).

### 1. The Widespread Use of "Comic Con" by SDCC's Competitors is Strong Evidence of Genericide

Genericness has been found to exist where a trademark owner has failed to police its marks, resulting in widespread use by competitors.[9] Federal courts view use of a mark by competitors in the industry as strong and compelling evidence of how the public perceives

---

[4] *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns Inc.,* 198 F.3d 1143, 1146 (9th Cir. 1999); *Elliot v. Google, Inc.*, 860 F.3d 1151, 1155 (9th Cir. 2017).
[5] *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns Inc.,* 198 F.3d 1143, 1147 (9th Cir. 1999)(*citing Surgicenters of America, Inc. v. Medical Dental Surgeries Co.,* 601 F.2d 1011, 1014 (9th Cir. 1979)(affirming summary judgment that "surgicenters" is generic.)).
[6] *Id.* (*citing Ty Inc. v. Softbelly's Inc.,* 353 F.3d 528, 531 (7th Cir. 2003).
[7] *Premier Nutrition, Inc. v. Organic Food Bar, Inc*., 327 Fed. Appx. 723, 724 (9th Cir. 2009) (dictionary definitions, generic media usage of the term, competitors' usage, plaintiff's generic usage, and a consumer survey reinforced genericness conclusion); *Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1027 (N.D. Cal. 2008) ("Courts view a mark's use by competitors as strong evidence of how the public perceives the term.").
[8] *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,* 419 F.3d 925, 929 (9th Cir. 2005).
[9] *Freecycle Network, Inc. v. Oey,* 505 F.3d 898, 905 (9th Cir. 2007).

the term.[10] Terms that are more frequently seen in a particular field by members of the public are less likely to be identified with one particular producer, and, as such, support a finding of the genericness of a mark.[11]

The term "comic con" is and has been used generically by many third party comic cons for years, and in some cases, decades.[12] DFP introduced into evidence a list of 103 different comic cons using "comic con", and similar variations, as part of their convention names between 2011 and 2017.[13] These third parties use "comic con" in their names to generically refer to the type of event being hosted—a comic convention. Examples of third party comic cons include, but are in no way limited to: New York Comic Con; Emerald City Comic Con; and Denver Comic Con.[14] One of the largest producers of comic cons in the U.S., Wizard World, produces nearly two dozen different comic cons in various U.S. states—each of which use "comic con" in the title of the convention name.[15] SDCC's representative Mr. Glanzer admitted that at least as early as 2010 SDCC was aware that there were third parties naming themselves comic con throughout the country.[16] SDCC's Executive Director, Ms. Desmond, testified about Chicago Comic Con operating in the

---

[10] *Classic Foods Int'l Corp. v. Kettle Foods, Inc.,* 468 F. Supp. 2d 1181, 1190 (C.D. Cal. 2007); *CG Roxane LLC v. Fiji Water Co. LLC,* 569 F. Supp. 2d 1019, 1027 (N.D. Cal. 2008)(holding that a competitors use of a mark is compelling evidence of genericness as it reflects how the public identifies the term).

[11] *Id.*

[12] Trial Ex. Nos. 728, 1296, 1299, 1302, 1303, 1373; *see also* November 29, 2017 p.m. transcript 23:23-24:22 ("Q. Are you familiar with Motor City Comic Con? A. Yes. Q. Are they one of the more well-established comic conventions in the country? A. They've been around for years."); November 29, 2017 p.m. transcript 44:16-19 ("Okay. With respect to New York . . . There's been the – New York Comic Con has been there for over a decade correct? A. Yes. "); December 4, 2017 p.m. transcript 118:23-120:10.

[13] Trial Ex. No. 1351.

[14] Trial Ex. Nos. 728, 1296, 1299, 1302, 1303.

[15] *See* Trial Ex. Nos. 728, 1291, 1378; December 4, 2017 a.m. transcript 6:23-7:20, 11:25-12:25.

[16] November 29, 2017 p.m. transcript 48:19-50:7; Trial Ex. No. 708.

1970's.[17] Moreover, SDCC allows other third party comic cons to promote their unaffiliated conventions at SDCC's event.[18]

The extensive use of "comic con" by SDCC's competitors is overwhelming evidence that the term has become generic.

### 2. Media Usage of "Comic Con" Strongly Supports a Finding of the Genericness of the Term

Generic use of a term by the media is a "strong indication of the general public's perception."[19] Courts have found that the media usage of a term can show how the public perceives the term as the media "is often considered to have its finger on the pulse of the general public. . ."[20] The press can shape public interpretations – if consumers "repeatedly encounter a term used generically in the media, they will be much more likely to use the term generically themselves."[21]

DFP has provided substantial evidence of the media's use of the term "comic con" to generically describe or refer to comic conventions. For example, DFP presented numerous articles reporting on the various comic cons taking place throughout the United States.[22] These articles consistently used "comic con" to refer to the type of event being offered, and not to denote a specific producer. DFP provided evidence of media

---

[17] November 30, 2017 a.m. transcript 82:3-10.

[18] Trial Ex Nos. 751, 752, 868; November 30, 2017 a.m. transcript 77:10-80:16; December 4, 2017 a.m. transcript 85:23-86:23.

[19] McCarthy, *Trademarks and Unfair Competition* § 12:13 (5th ed.)(*citing Murphy Door Bed Co v. Interior Sleep Sys., Inc.,* 874 F.2d 95, 101 (2d Cir. 1989)).

[20] *Classic Foods Int'l Corp. v. Kettle Foods, Inc.,* 468 F. Supp. 2d 1181, 1190 (C.D. Cal. 2007).

[21] *Id.* at 1189; *see also Krav Maga Ass'n of Amer., Inc. v. Yanilov,* 464 F. Supp. 2d 981, 987 (noting that defendant's use of "advertisements, trade journals, magazine articles and various publications" including a definition from Wikipedia, has been "deemed sufficient to demonstrate the genericness of a term.")

[22] Trial Ex. Nos. 722, 1293, 1305, 1364, 1365, 1367, 1368, 1370, 1371, 1372; November 29, 2017 p.m. transcript 89:3-23.

publications or reports with titles such as: "Comic-Con Arrives in Central Texas,"[23] "Comic Con brand brings show to Tulsa for first time ever"[24] and "Comic Con Comes to Atlanta."[25]  Each of these references speak to comic cons generically to mean a comic convention and not to identify SDCC's convention.  SDCC's representative Ms. Desmond testified that she was aware the press used comic con to refer to unaffiliated third party comic cons; namely, New York Comic Con.[26]

In response to DFP's evidence of generic use in the media, SDCC provided scant evidence of the media using "comic con" to refer specifically to SDCC's event.[27]  This evidence consisted of a handful of media publications or articles that referenced "comic con."  Notably, after the introduction into evidence of each media publication or article, SDCC's representative, Mr. Glanzer, had to clarify that the evidence at hand referred to SDCC's comic con and not other third party comic cons; otherwise, the jury would be left guessing exactly which of the over 100 comic cons was being referenced.[28]  In addition, SDCC introduced two magazine covers from the TV Guide Magazine and Entertainment Weekly as non-generic media usage of COMIC-CON. Yet, both TV Guide and Entertainment Weekly have business connections with SDCC and Entertainment Weekly sponsors events occurring during SDCC's convention.[29]  The scant evidence of non-

---

[23] Trial Ex. No. 1296; *see also* November 29, 2017 p.m. transcript 22:9-19.

[24] Trial Ex. No. 1299; *see also* November 29, 2017 p.m. transcript 26:13-20.

[25] Trail Ex. No. 1302; *see also* November 29, 2017 p.m. transcript 27:3-8.

[26] November 30, 2017 a.m. transcript 87:17-20.

[27] *Classic Foods Intern. Corp. v. Kettle Foods, Inc*., Civ. No. 4-cv-725, 2006 WL 5187497, at *12 (S.D. Cal. March 2, 2006) ("Although KFI submits roughly the same number of articles referring to "Kettle" as a brand name for its chips, the fact remains that "Kettle" is widely used in a descriptive sense in the media and the industry.")

[28] *See* November 28, 2017 p.m. transcript 102:8-104:1; November 29, 2017 a.m. transcript at 4:1-13:5.

[29] Trial Ex. No. 1353; November 30, 2017 p.m. transcript 103:19-106:1, 106:8-107:6, 107:21-108:5.

generic media usage provided by SDCC does almost nothing to discount DFP's overwhelming evidence of generic use by the media.

### 3. The Generic Use of "Comic Con" by SDCC Itself Favors Genericness

Evidence that a plaintiff has used a term in a generic manner has been found by courts to be strong evidence that the term is generic.[30]

As presented at trial, SDCC's executives and employees use "comic con" generically to describe other comic cons around the country.[31] Particularly, DFP introduced into evidence an email between SDCC executives stating: "I think it's really important that we state, as we did at WonderCon, how we are different from other shows … especially other Comic Con's. Comikaze, Salt Lake and Wizard."[32] Even at trial, SDCC's representative Mr. Glanzer used "comic con" generically.[33]

SDCC's own generic usage of "comic con" strongly favors a finding of genericide.

### 4. Consumer Surveys Do Not Conclusively Establish Comic Con is Not Generic

Consumer surveys are not necessarily required to prove genericness of a term and a survey may be given little weight if flawed.[34]

---

[30] *Self-Realization Fellowship Church v. Ananda Church of Self-Realization,* 59 F.3d 902, 909 (9th Cir. 1995)(*citing McCarthy, Trademarks and Unfair Competition* § 12.02[7][b](2)).

[31] Trial Ex. Nos. 721, 715, 1320 ("When I moved to San Diego, decided the west coast needed a good comic con"); November 29, 2017 p.m. transcript at 72:24-73:17, 75:23-76:18, 95: 3-22.

[32] Trial Ex. No. 724; November 29, 2017 p.m. transcript at 71:5-72:15.

[33] November 29, 2917 p.m. transcript at 81:15-21. ("Q. Aren't you a local comic con? A. Excuse me? Q. Are you a regional comic convention? A. We're a comic con in San Diego. Q. Aren't you are an international comic con? A. We are.") *see also* Trial Ex. No. 205-24, CC 417124.

[34] *Denver Urban Homesteading, LLC v. Dervaes Institute,* 2015 WL 12552043 (C.D. Cal. Nov. 5, 2015)(*citing Suh v. Yang,* 987 F. Supp. 783, 791 n.4 (N.D. Cal. 1997) (noting that, although consumer survey evidence has become de rigueur in litigation over genericness, such evidence is not required)*; Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.,* 240 F.3d 832, 840 (9th Cir. 2001).

At trial, SDCC offered testimony from its retained expert Matthew Ezell ("Ezell") to discuss a "Teflon" survey that SDCC commissioned to address the issue of genericness. Based on this survey, Ezell opined that approximately 83% of survey respondents (which totaled only 406 individuals[35]) believed "Comic Con" was a brand name and not a generic name.[36] However, SDCC's Teflon survey shows a number of deficiencies and should be afforded little, if any weight. Specifically, DFP's expert, Andrew Baker, Ph.D., testified that Mr. Ezell's survey suffered from critical and invalidating design flaws that rendered Mr. Ezell's findings both unreliable and inflated.[37]

## IV.  CONCLUSION

The evidence presented at trial—even when viewed in the light most favorable to SDCC—leads to the unavoidable conclusion that "comic con" is generic. DFP respectfully request this Court enter judgment as a matter of law in favor of DFP and find that "comic con" is generic.

DATED:  December 7, 2017

Michael I. Katz
Charles J. Veverka
L. Rex Sears
MASCHOFF BRENNAN LAYCOCK
   GILMORE ISRAELSEN & WRIGHT, PLLC

By:  /s/ *C.J. Veverka*

Attorneys for Defendants and Counterclaimants DAN FARR PRODUCTIONS, DANIEL FARR, AND BRYAN BRANDENBURG

---

[35] December 1, 2017 a.m. transcript 27:3-5.

[36] Trial Ex. No. 645; December 1, 2017 a.m. transcript 31:25-32:17.

[37] The transcript of Mr. Baker's testimony is not yet available as of this filing.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 7, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

By: /s/ *C.J. Veverka*