CALLIE A. BJURSTROM  (State Bar No. 137816)
PETER K. HAHN  (State Bar No. 165692)
MICHELLE A. HERRERA  (State Bar No. 209842)
PILLSBURY WINTHROP SHAW PITTMAN LLP
501 West Broadway, Suite 1100
San Diego, CA 92101-3575
Telephone:  619.234.5000
Facsimile:   619.236.1995
Email:        callie.bjurstrom@pillsburylaw.com
                  peter.hahn@pillsburylaw.com
                  michelle.herrera@pillsburylaw.com

Attorneys for Plaintiff
SAN DIEGO COMIC CONVENTION,
a California non-profit corporation

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COMIC CONVENTION, a California non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAN FARR PRODUCTIONS, a Utah limited liability company; NEWSPAPER AGENCY COMPANY, a Utah limited liability company; DANIEL FARR, an individual; and BRYAN BRANDENBURG, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. 3:14-cv-01865 AJB (JMA)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SAN DIEGO COMIC CONVENTION'S MOTION FOR PERMANENT INJUNCTION AFTER JURY VERDICT**<br><br>Date:          May 3, 2018<br>Time:         2:00 p.m.<br>Courtroom: 4A<br>Judge:        Hon. Anthony J. Battaglia |

## I. INTRODUCTION

On August 7, 2014, San Diego Comic Convention ("SDCC") sued Dan Farr Productions, LLC ("DFP"), Daniel Farr and Bryan Brandenburg (collectively, "Defendants") for claims arising under the Lanham Act. On December 8, 2017, the jury returned a unanimous verdict finding that: (1) each of the three trademarks SDCC asserted in this case is valid, and (2) each of the three named Defendants infringed each asserted trademark. For over three years, Defendants continued unabated and undeterred in their blatant infringement of SDCC's trademarks while this lawsuit proceeded to a decidedly unfavorable verdict for them. Defendants continue to infringe SDCC's trademarks to this day. An order permanently enjoining Defendants from using SDCC's trademarks or any mark confusingly similar thereto is warranted and necessary.

## II. LEGAL STANDARD

Under the Lanham Act, district courts "have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of the trademark owner. 15 U.S.C. §1116(a). In the Ninth Circuit, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

In *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), the Supreme Court confirmed that district courts should apply "traditional equitable principles" in deciding whether to grant a permanent injunction. *Id*. at 393. According to principles of equity, a permanent injunction is appropriate upon a showing that (1) the plaintiff has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) the public interest would not be disserved by a

permanent injunction. *Id*. at 391. *Accord, Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1138 n. 11 (9th Cir. 2006) (applying *eBay* in Lanham Act case).

Each factor weighs in favor of the entry of permanent injunctive relief. Defendants' recalcitrant behavior since the inception of their convention through the present mandates the entry of a strong and meaningful permanent injunction.

## III. A PERMANENT INJUNCTION IS WARRANTED

### A. SDCC Has Been and Will Continue to be Irreparably Harmed

The absence of an adequate legal remedy constitutes irreparable harm. *Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991). "Because intangible injuries generally lack an adequate legal remedy, 'intangible injuries [may] qualify as irreparable harm.'" *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014), quoting *Rent–A–Ctr.,* 944 F.2d at 603. The jury's verdict overwhelmingly supports a finding that SDCC has been and will continue to be irreparably harmed without an order enjoining further acts of infringement by Defendants. The jury found that all three defendants used all three of SDCC's asserted trademarks, or a confusingly similar mark, in a manner that is likely to cause confusion as to the source, sponsorship, affiliation or approval of DFP's goods and services. (Dkt. 395.) In other words, the jury found that the public is likely to be confused that SDCC is the source of DFP's goods and services or approves of the same, or that there is a sponsorship or affiliation between the parties.

Harm to the good will and reputation of the trademark's owner, and a loss of control over the owner's commercial reputation, have been found sufficient to constitute irreparable harm. *See, e.g.*, *Wetzel's Pretzels, LLC v. Johnson*, 797 F.Supp.2d 1020, 1028 (C.D. Cal. 2011); *Anhing Corp. v. Thuan Phong Co. Ltd.*, 2015 WL 4517846, at *23 (C.D. Cal. July 24, 2015); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063 (N.D. Cal. 2012) (quotation omitted). As Professor McCarthy has explained:

-2-

> "Irreparable harm" for a final injunction in a trademark infringement cases usually flows from the fact that the trademark owner has already proven a likelihood of confusion. The likelihood of confusion will continue and deprive the consuming public of a truthful marketplace. This also means the trademark owner's business reputation and goodwill are in jeopardy. If it is likely that confused persons will mistakenly attribute to plaintiff defects or negative impressions they have of defendant's goods or services, then the plaintiff's reputation (and its signifying trademark) is at risk because it is in the hands of a stranger. This stranger has obtained control over the trademark owner's reputation by illegal means.
>
> ***
>
> Injury to the trademark owner's reputation and good will as well as to consumer expectations is difficult, if not impossible, to adequately compensate for after the fact. If a defendant has been found to be committing acts which constitute trademark infringement, there seems little doubt that the continuing injury to good will and reputation is "irreparable" and that money damages are "inadequate" to compensate plaintiff for continuing acts of infringement.

5 *McCarthy on Trademarks and Unfair Competition* § 30:2 (5th ed.)

Here, SDCC did much more than prove a *potential* loss of good will or a *potential* inability to control its reputation. Both David Glanzer and John Rogers testified that Defendants *have* harmed SDCC's reputation and good will by their conduct, as did SDCC's damages expert, Patrick Kennedy. (Dkt. 372, Vol. 2 A.M. Tr. Trans., 61:14-16, 98:25-99:7; Dkt. 374, Vol. 4 A.M. Tr. Trans., 92:13-19, 94:11-14, 95:15-21; Dkt. 376, Vol. 4B Tr. Trans., 33:10-38:14.) Further, consumers contacted SDCC about Defendants' convention (oftentimes voicing complaints about Defendants' convention), believing that Defendants' event was associated with SDCC. (Tr. Exs. 3, 64, 65, 73A, 73B, 73C.) Mr. Brandenburg testified that he was aware of at least 30 to 50 instances of confusion appearing on Defendants' website or social media sites. (Dkt. 383, Vol. 7 P.M. Tr. Trans., 118:9-119:1.) Defendants admitted that their intent was to hijack and leverage SDCC's brand, and otherwise associate their event with SDCC to reap the commercial benefit of SDCC's trademarks. (Tr. Exs. 24, 25, 26, 52, 54, 109, 113, 116, 137, 138, 1375.) The irreparable harm here is palpable.

### B.     Legal Remedies are Inadequate

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law…." *Century 21 Real Estate*, 846 F.2d 1175 at 1180. *See also Nike, Inc. v. Nikepal Int'l, Inc.*, 05-CV-1468, 2007 U.S. Dist. LEXIS 66686, at *26 (E.D. Cal., Sept. 7, 2007). As Professor McCarthy notes: "Where trademark infringement is proven, any doubts as to the adequacy of the relief are usually resolved against the infringer. The attractiveness of injunctive relief is that it can be shaped and conditioned so as to balance the conflicting rights of the litigants in a way that money damages can never do." 5 *McCarthy on Trademarks and Unfair Competition* § 30:2 (5th ed.)

Where, as here, a defendant has shown that he or she will not be deterred from infringement, the plaintiff should not be forced to file sequential lawsuits for continuing or future acts of infringement. *Continental Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104-05 (9th Cir. 1994) ("the multiplicity of suits necessary to be engendered if redress was sought at law" help establish the inadequacy of a legal remedy) (quoting *Bitterman v. Louisville & Nashville R.R. Co.*, 207 U.S. 205, 225 (1907)). A plaintiff is not required to prove likely repetition of infringing actions in order to obtain a permanent injunction, especially where a defendant refused to stop its infringing conduct after suit was brought and continues after a jury verdict finding infringement. *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986) (district court "failed to recognize that the reform of the defendant must be irrefutably demonstrated and total") (citations omitted). Here, as the Court is well aware, Defendants did not cease their infringing use of SDCC's trademarks after this lawsuit was filed but instead continued full bore. In fact, after receiving SDCC's pre-lawsuit cease and desist letter, Defendants issued many defiant press releases and rushed to register the mark "Salt Lake Comic Con" with the USPTO. (*See* Dkt. 304-2 [application to register "Salt Lake Comic Con" filed on July 31, 2014].) And nearly three years

into this lawsuit, on June 27, 2017, Defendants filed a petition to cancel SDCC's "Comic-Con" trademark with the Trademark Trial and Appeals Board in an effort to obtain a ruling that they could use the mark. (*See* http://ttabvue.uspto.gov/ttabvue/v?pno=92066389&pty=CAN.)

Following the jury verdict, Defendants have been equivocal about whether or not they will change the name of their convention and/or appeal the jury's verdict. (*See* Ex. 1 to Herrera Decl.) Even if they do change the official name of their convention to Salt Lake Comic Convention or FanX Salt Lake Comic Convention, as some of their websites and social media sites seem to suggest (*see* http://www.saltlakecomicconvention.com/ and https://www.facebook.com/SaltLakeComicConvention/), SDCC has no assurance that Defendants will not revert back to using the name Salt Lake Comic Con at some point in the future.

SDCC also has no assurance that Defendants will not continue to use "Salt Lake Comic Con" in the shorthand to refer to their events. In fact, Mr. Farr testified at trial: "If we called ourselves comic convention, people will still call us 'Comic Con.' I don't think there is a way to change that." (Dkt. 377, Vol. 5B Tr. Trans., 87:20-22.) Mr. Brandenburg offered similar testimony. (*See* Dkt. 383, Vol. 7 P.M. Tr. Trans., 58:13-16 [acknowledging that Defendants could call their event comic convention, "[b]ut comic con is short for comic convention, and it's easier to say[.]]) Although they have now created a second website, www.saltlakecomicconvention.com, Defendants still maintain their www.saltlakecomiccon.com website. Mr. Brandenburg has taken the position that Defendants are not required to change this domain name despite the jury's verdict.[1] (Ex. 2 to Herrera Decl.) On both websites, Defendants continue to use the infringing "Salt Lake Comic Con" mark to market and sell tickets to their

---

[1] Not surprisingly, Mr. Brandenburg's position is not supported by law. *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1035 (9th Cir. 2011).

-5-

convention planned for August 2018.  (Ex. 3 to Herrera Decl.)  The section of the website devoted to this lawsuit is still up for all to see, and Mr. Brandenburg has stated that Defendants intend to pursue the cancellation of SDCC's "Comic-Con" trademark before the Trademark Trial and Appeals Board on grounds rejected by the jury (genericness) and by this Court (fraud).  (Ex. 1 to Herrera Decl.)

Lastly, and despite his efforts to come across as genteel and contrite at trial, Mr. Farr's post-trial communications with SDCC after trial paint a much different story.  After purporting to extend an apology and olive branch to SDCC's David Glanzer, Mr. Farr's tone quickly changed as he commended Mr. Brandenburg for the passion that drove Defendants' "quick success," boasting that Defendants' event now has a "Google Trend" ranking superior to that of SDCC for the search term "Comic Con," Mr. Farr concluded:

> We do feel that the Judge's approach in keeping a lot of evidence out of the trial has opened up a really prime opportunity for appeal.  Our attorneys feel so strong about how things were handled that they have even agreed to not charge us for the appeal unless we prevail.  That obviously really lowers a huge financial barrier for us at this point.  ***  If your legal team asks the Judge to change some of the Jury decisions (like increasing the damages fees) and if the Judge grants any of those then we may have no choice but to appeal.

(Ex. 4 to Herrera Decl.)

Mr. Farr then had the audacity to send a second email to Mr. Glanzer asking SDCC to "release" its "Comic-Con" trademark so that everyone could use it, suggesting that a public relations nightmare would otherwise ensue for SDCC.  Mr. Farr opined that SDCC would end up in many additional lawsuits if it did not give up the trademark, and warned that if Reed challenged the mark "they could put up a much stronger fight than we were able to and ultimately you may end up loosing [sic] the mark in the end of it all anyway." (*Id*.)  Mr. Farr's communications with SDCC are outrageous and cast a strong doubt as to Defendants' intentions.

-6-

Here, legal remedies are clearly inadequate and an injunction is necessary. *See City of Carlsbad v. Shah*, 850 F. Supp. 2d. 1087, 1113 (S.D. Cal. 2012).

### C.  The Balance of Hardships Favors SDCC

"If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [the trademark owner] substantial protection of its trademark." *Dick Bruhn, Inc.*, 793 F.2d at 1135-36.  The balance of hardships overwhelmingly favors SDCC, whose trademarks have been infringed, and Defendants would suffer no harm separate from their legal obligation arising by virtue of the jury's verdict to stop infringing SDCC's marks.  *City of Carlsbad*, 850 F.Supp.2d at 1113 ("There is no harm to [Defendant] since an injunction would merely require [Defendant] to comply with the law"); *Hokto Kinoko Co. v. Concord Farms, Inc*, 810 F. Supp. 2d 1013, 1033 ("If the injunction does not issue, Defendant Concord would be more likely to continue violating Hokto Kinoko's rights, imposing a hardship on Plaintiff").

### D.  The Public Interest Favors a Permanent Injunction

The public interest is well-served by permanently enjoining a defendant who has been found liable for trademark infringement.  In the simplest of terms, the public has an interest in not being confused because "the Lanham Act is at heart a consumer protection statute." *Trafficschool.com v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011).  As the Third Circuit has held, in the context of trademark litigation, public interest is just "a synonym for the right of the public not to be deceived or confused." *Optician's Association of America v. Independent Opticians of America*, 920 F.2d 187, 197 (3d Cir. 1990).  A permanent injunction is warranted here to protect the public interest from continued confusion and mistake.  *See Reno Air Racing Ass'n*, 452 F.3d at 1137; *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (the Lanham Act is "designed to protect consumers who have formed particular associations with a mark from buying a competing product using the same or substantially similar mark").

1    The public interest would naturally be served by an injunction issued where, as here, a jury has determined that Defendants infringed the asserted trademarks and consumers are likely to be confused by Defendants' use of those marks or marks that are confusingly similar. *See Resource Lenders, Inc. v. Source Solutions, Inc.*, 404 F.Supp.2d 1232, 1250 (E.D Cal. 2005) ("Here, because a likelihood of confusion was demonstrated, the public interest would be served by issuance of an injunction").

### IV. THE COURT SHOULD ENTER A PERMANENT INJUNCTION THAT PREVENTS DEFENDANTS FROM USING SDCC'S TRADEMARKS AND CONFUSINGLY SIMILAR VARIATIONS

Federal Rule of Civil Procedure 65(d) requires that an injunction be specific in terms and describe in reasonable detail the prohibited and required conduct. A defendant found liable for trademark infringement should be enjoined from engaging in any conduct that constitutes or even approaches infringement. Under Ninth Circuit law, an infringing defendant should be required to keep a "safe distance from the margin line" of plaintiffs' registered marks (the "safe distance" rule). *See Plough, Inc. v. Kreis Labs.*, 314 F.2d 635, 639 (9th Cir. 1963); *Sinhdarella, Inc. v. Vu*, No. C07-04353 WHA, 2008 WL 410246, at *8 (N.D. Cal. Feb. 12, 2008); *Virgin Enters., Ltd. v. Virgin Petroleum, Inc.*, CV99-12826, 2000 U.S. Dist. LEXIS 8100, at *20 (C.D. Cal., January 19, 2000). The margin line often goes beyond the asserted marks and confusingly similar marks, and extends to combinations thereof. In *AAA, Inc. v. Triple A Auto Glass, LLC*, No. 11-CV-2464-PHX-PGR, 2012 WL 1107737, at *3 (D. Ariz. Apr. 2, 2012), the court enjoined use of AAA's marks, including "AAA" or "TRIPLE A" and confusingly or deceptively similar marks, and additionally prohibited "[u]sing the letter 'A' or any multiple combination of letters 'A' in any form or manner that would tend to identify or associate Defendants or their business or services with AAA . . .").

Defendants could have used a myriad of names for their convention that did not incorporate SDCC's marks (or confusingly similar marks). At trial, SDCC

-8-

introduced evidence of hundreds of other comics and popular arts conventions that did not use the mark "Comic Con" in the name of their event. (Tr. Ex. 650.) Defendants capitalized on the brand recognition, good will and reputation associated with SDCC's asserted trademarks when selecting a name for their convention for the sole purpose or reaping the associated benefits.

Where the infringing use is for a similar service or good—here, comics and popular arts conventions—a broad injunction "is especially appropriate." *Perfumebay v. eBay*, 506 F.3d 1165, 1177 (9th Cir. 2007). *See also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000). An injunction should be fashioned so as to "restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *MGM Studios, Inc. v. Grokster*, 518 F. Supp. 2d 1197, 1226-27 (C.D. Cal. 2007).

A trademark plaintiff who is "entitled to relief, is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [defendant], which has shown by its conduct that it is not to be trusted." *Reno Air Racing Ass'n*, 452 F.3d at 1137-38 (quoting *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 532 (1924). SDCC respectfully requests the Court to provide the following equitable relief:[2]

> 1. An Order enjoining Defendants from any use of SDCC's three trademarks asserted in this case, or any marks confusingly similar thereto including, but not limited to, any mark that consists of or incorporates the specific word combinations "Comic Con," "Comic-Con," "Comicon," or "Comic Convention" or the phonetic equivalents of such specific word combinations, in the name of any comic or popular arts convention or in connection with the promotion or for the purposes of promoting, advertising or marketing any comic or popular arts convention;[3]

---

[2] SDCC requests that the injunction include an express provision that this Court shall retain jurisdiction to enforce its terms and compliance with the same.
[3] Defendants' ostensible change of the name of their convention to "Salt Lake Comic Convention" or "FanX Salt Lake Comic Convention" is simply too close to

    2. An Order directing Defendants to immediately destroy all merchandise and all marketing materials bearing the specific word combinations "Comic Con," "Comic-Con," "Comicon," or "Comic Convention" or the phonetic equivalents of such specific word combinations in the name of any comic or popular arts convention;

    3. An Order enjoining Defendants from the use or operation of any website domain name or URL that consists of or incorporates the specific word combinations "Comic Con," "Comic-Con," "Comicon," or "Comic Convention" or the phonetic equivalents of such specific word combinations; and

    4. An Order enjoining Defendants from the use or operation of any social media site that consists of or incorporates the specific word combinations "Comic Con," "Comic-Con," "Comicon," or "Comic Convention" or the phonetic equivalents of such specific word combinations in the name of any comic or popular arts convention.

## V. THE COURT SHOULD ORDER DEFENDANTS TO SUBMIT A REPORT OF COMPLIANCE WITH THE INJUNCTION

An injunction issued under the Lanham Act "may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction." 15 U.S.C. § 1116(a).  The Court should require a compliance report here.

Dated:  January 16, 2018      PILLSBURY WINTHROP SHAW PITTMAN LLP

            By: */s/ Michelle A. Herrera*
              CALLIE A. BJURSTROM
              PETER K. HAHN
              MICHELLE A. HERRERA
              Attorneys for Plaintiff
              SAN DIEGO COMIC CONVENTION,
              a California non-profit corporation

---

SDCC's trademarks.  "Although the terms of such an injunction impose a heavier burden on an infringing party with a redesigned mark than is imposed on a newcomer with a similar mark, 'a party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party.'" *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322-23 (9th Cir. 1997).

-10-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing documents has been served on January 16, 2018, to all counsel of record deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile, and/or overnight delivery.

*/s/ Michelle A. Herrera*
MICHELLE A. HERRERA