Michael I. Katz (CA State Bar No. 181,728)
    mkatz@mabr.com
L. Rex Sears (CA State Bar No. 294,533)
    rsears@mabr.com
MASCHOFF BRENNAN LAYCOCK
    GILMORE ISRAELSEN & WRIGHT, PLLC
20 Pacifica, Suite 1130
Irvine, California 92618
Telephone:  (949) 202-1900
Facsimile:   (949) 453-1104

Charles J. Veverka (*pro hac vice*, UT State Bar No. 7,110)
    cveverka@mabr.com
MASCHOFF BRENNAN LAYCOCK
    GILMORE ISRAELSEN & WRIGHT, PLLC
1389 Center Drive, Suite 300
Park City, Utah 84098
Telephone:  (435) 252-1360
Facsimile:   (435) 252-1361

Attorneys for Defendants and Counterclaimants DAN FARR PRODUCTIONS, LLC,
DANIEL FARR, and BRYAN BRANDENBURG

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COMIC CONVENTION, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAN FARR PRODUCTIONS, a Utah limited liability company; and DANIEL FARR and BRYAN BRANDENBURG, individuals,<br><br>Defendants.<br><br>**AND RELATED COUNTERCLAIMS** | Case No. 14-cv-1865-AJB-JMA<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL**<br><br>Date:  May 31, 2018<br>Time:  2:00 p.m.<br>Courtroom: 4A (4th Floor Schwartz)<br>Judge: Hon. Anthony Battaglia |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 1

    A. SDCC's *Post*-Verdict Motion Fails for Lack of a *Pre*-Verdict Motion on the Same Grounds ........................................................................................ 1

    B. The Jury's Finding of No Willfulness Is Sound ........................................... 3

        1. DFP's Hyphenation Evidence, Alone, Is Enough to Defeat SDCC's Motion ................................................................................................ 3

        2. SDCC Completely Ignores the Third-Party and Media Usage Evidence—and That Evidence, Alone, Fully Justifies the Jury's Verdict ................................................................................................ 5

        3. The Evidence that SDCC Says "Points Only to Willfulness" Fits Easily into the No-Willfulness Narrative that DFP Presented at Trial ...... 6

            a. DFP's Awareness of the *Full Range* of SDCC's Applications and Registrations Reinforced its Belief in the Hyphenation Distinction .. 7

            b. DFP Did Conduct Extensive Due Diligence, Even Though It Did Not Consult an Attorney or Ask Permission ............................... 8

            c. SDCC's Reliance on DFP's Statements about the "Brand" Is Question-Begging ................................................................................ 8

            d. "Leveraging" an *Event* Is Not Infringement .................................. 10

            e. Advertising, Link Building, and Wrapping a Car Do Not Indicate Willfulness ..................................................................................... 11

            f. DFP Never Admitted "Comic Con" Is Not Generic ........................ 11

        4. SDCC's Legal Arguments Fail ............................................................. 12

            a. Under the Anti-Dissection Rule, the Designation that DFP Chose Is Not an SDCC Trademark ............................................................. 12

            b. Hyphenation Is Relevant to Willfulness .......................................... 13

            c. DFP Was Not Required to Consult Counsel or Acquiesce in SDCC's Demands in Order to Avoid Willfulness ........................... 13

            d. Whether SDCC's Evidence Is Circumstantial or Direct Is Beside the Point ......................................................................................... 14

            e. Objective Reasonableness Is Not Required—but DFP *Was* Objectively Reasonable ................................................................... 14

5.     SDCC's "Misconduct" Arguments Fail, Too ............................................ 16

     a.    SDCC Should Not Be Granted *Post*-Trial Relief for Alleged Misconduct Because SDCC Did Not Seek a Mistrial *During* Trial ............................................................................................... 16

     b.    SDCC Argues Contrary to Jury Instructions that it Proposed and Agreed To, and Without Regard to the Purposes Served by the Principles it Cites ................................................................................ 18

     c.    SDCC Fails to Connect DFP's Supposed "Misconduct" to the Jury's Finding of No Willfulness ....................................................... 20

C.    SDCC's Motion Fails as to Disgorgement Because it Fails as to Willfulness ............................................................................................................. 23

D.    If the Verdict Is Inconsistent then Infringement and False Designation Should Both Be Retried ........................................................................................ 23

III.   CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of the South v. Fort Lauderdale Technical College, Inc.*,
   48 F.R.D. 136 (E.D. La. 1969) ...............................................................................17

*BDO Remit (USA), Inc. v. Stichting BDO*,
   No. CV1104054, 2012 WL 12895658 (C.D. Cal. Sept. 19, 2012) .............................16

*Brookfield Commons v. West Coast Entertainment*,
   174 F.3d 1036 (9th Cir. 1999) ................................................................................12

*Cooper v. Firestone Tire & Rubber Co.*,
   945 F.2d 1103 (9th Cir. 1991) ................................................................................17

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
   762 F.3d 829 (9th Cir. 2014) ....................................................................................4

*Gulf States Utilities Co. v. Ecodyne Corp.*,
   635 F.2d 517 (5th Cir. 1981) ....................................................................................4

*Home Indemnity Co. v. Lane Powell Moss & Miller*,
   43 F.3d 1322 (9th Cir. 1995) ..................................................................................23

*Jones & Laughlin Steel Corp. v. Matherne*,
   348 F.2d 394 (5th Cir. 1965) ..................................................................................24

*Kehr v. Smith Barney, Harris Upham & Co.*,
   736 F.2d 1283 (9th Cir. 1984) ................................................................................17

*Kellogg Co. v. National Biscuit Co.*,
   305 U.S. 111, (1938).................................................................................................11

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
   383 F.3d 1337 (Fed. Cir. 2004) ..............................................................................13

*Lindy Pen Co. Inc. v. Bic Pen Corp.*,
   982 F. 2d 1400 (9th Cir. 1993) ..........................................................................14, 15

*McIntyre v. Everest & Jennings, Inc.*,
   575 F.2d 155 (8th Cir. 1978) ..................................................................................24

*Moose Creek v. Abercrombie & Fitch*,
    331 F. Supp. 2d 1214 (C.D. Cal. 2004) ...................................................... 12

*North Face Apparel Corp. v. Dahan*,
    No. 13-04821, 2014 WL 12558010 (C.D. Cal. Oct. 6, 2014) ..................................... 15

*Peer International Corp. v. Pausa Records, Inc.*,
    909 F.2d 1332 (9th Cir. 1990) ................................................................ 15

*Posternack v. American Insurance Co.*,
    230 F. Supp. 220 (E.D. Pa. 1964) ............................................................. 17

*Saleh v. City of Buffalo*,
    No. 97–CV–0872, 2002 WL 31655002 (W.D.N.Y. Nov. 13, 2002) ............................ 17

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
    978 F.2d 947 (7th Cir. 1992) ................................................................. 14

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
    875 F.3d 426 (9th Cir. 2017) ........................................................ 1, 14, 23

*Tolbert v. Queens College*,
    242 F.3d 58 (2d Cir. 2001) ................................................................ 2, 24

*Tortu v. Las Vegas Metro. Police Department*,
    556 F.3d 1075 (9th Cir. 2009) ................................................................. 2

**Statutes**

15 U.S.C. § 1114 ............................................................................. 10, 24

15 U.S.C. § 1117 ............................................................................... 15

15 U.S.C. § 1125 ............................................................................. 2, 24

17 U.S.C. § 504 ................................................................................ 15

**Rules**

Federal Rule of Civil Procedure 11 ................................................................ 1

Federal Rule of Civil Procedure 50 .......................................................... 1, 2, 16

Federal Rule of Civil Procedure 59 ................................................................ 4

Federal Rule of Civil Procedure 403 ............................................................... 4

Case No. 14-cv-1865-AJB-JMA

Defendants and counterclaimants (collectively "DFP") submit the following in *opposition* to San Diego Comic Convention's ("SDCC's") "… Motion … for Judgment as a Matter of Law … or, Alternatively, … for New Trial …" ("Motion," ECF Doc. 433).

# I. INTRODUCTION

SDCC moves for judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure ("Rule") 50(b) on (1) willfulness, (2) disgorgement of profits, and (3) false designation of origin; alternatively, SDCC seeks a new trial on willfulness and disgorgement but *not* false designation. SDCC's Motion fails, first, because SDCC never moved for a directed verdict under Rule 50(a) on the relevant grounds. This defect is the subject of a served, yet-to-be-filed Rule 11 motion.

If entertained, SDCC's Motion would fail on the merits. SDCC simply ignores entire bodies of evidence that amply support the jury's finding of no willfulness; and SDCC's treatment of the limited evidence that it selectively considers is question-begging because it interprets that evidence in a way that only makes sense if willfulness is already assumed. Because willfulness is "a prerequisite for awarding a defendant's profits,"[1] and SDCC's Motion fails as to willfulness, the Motion must also fail as to disgorgement.

Finally, DFP hopes that SDCC convinces the Court that the jury made inconsistent findings on infringement and false designation of origin. Mindful of their obligations as officers of the Court, DFP's counsel explain below why they think the findings are consistent. But if SDCC convinces the Court otherwise then *both* issues should be retried.

# II. ARGUMENT

## A. SDCC's *Post*-Verdict Motion Fails for Lack of a *Pre*-Verdict Motion on the Same Grounds

The only permissible *post*-verdict JMOL motion is one that *renews* a motion made "*before* the case is submitted to the jury."[2] The Ninth Circuit "strictly construe[s] the

---

[1] *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 441 (9th Cir. 2017).

[2] *See* Rule 50(a)(2) (italics added); *see also* Rule 50(b) ("the movant may file a *renewed* motion for judgment as a matter of law [italics added]").

procedural requirement of filing a Rule 50(a) motion before filing a Rule 50(b) motion."[3] And simply making *a* pre-verdict JMOL motion is not enough: a "post-trial motion … can be granted only on grounds advanced in [a] pre-verdict motion."[4]

Here, SDCC did make *a* pre-verdict motion—but on different grounds. SDCC's pre-verdict motion was for (1) "judgment as a matter of law, on likelihood of confusion" and (2) "failure to establish genericness."[5] SDCC's present Motion, by contrast, is for judgment (a) "that Defendants willfully infringed SDCC's trademarks," (b) "that SDCC is entitled to damages in the form of the disgorgement of Defendants' profits in an amount to be determined by the Court," and (c) "in SDCC's favor on its claim for false designation of origin."[6]

JMOL could not now be granted on willfulness and disgorgement because those are entirely new grounds. False designation of origin, in turn, is not the same as likelihood of confusion. Likelihood of confusion is required for both trademark infringement, which the jury found, and false designation of origin, which the jury did not find—but false designation of origin further requires "us[ing] in commerce … [a] false designation of origin," from which likelihood of confusion results.[7] Because false designation of origin has other elements, SDCC's pre-verdict motion on general likelihood of confusion is insufficient to support its post-verdict motion on false designation of origin.[8]

Because SDCC did not make a pre-verdict motion for JMOL on the grounds now advanced, its Motion should be denied.

---

[3] *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1082 (9th Cir. 2009).

[4] *See* Rule 50 Notes of Advisory Committee on Rules—1991 Amendment.

[5] *See* Dec. 7, 2017 Tr. at 101:2–4, 115:4–6; *see also id.* at 108:7–9.

[6] *See* "Memorandum … in Support of … Motion for Judgment as a Matter of Law … or Alternatively … for New Trial …" ("Mem.," ECF Doc. 431) at 1:24; 2:9–10, 16–17.

[7] *See* 15 U.S.C. 1125(a)(1)

[8] *Cf. Tolbert v. Queens College*, 242 F.3d 58, 77 (2d Cir. 2001) ("A motion that identifies one element of a claim is insufficient to permit the district court to grant JMOL for lack of proof of some other, unspecified, element …").

## B.    The Jury's Finding of No Willfulness Is Sound

DFP and SDCC gave the jury competing explanations for why DFP named its convention "Salt Lake Comic Con." SDCC told the jury that DFP chose a name that includes "comic con" in order to trade on goodwill that SDCC enjoys as a producer of comic conventions. DFP told the jury it chose "Salt Lake Comic Con" because "comic con is short for comic convention, and it's easier to say," and "the most notable comic conventions were called comic con, and we wanted to be notable."[9] DFP elaborated on its desire to be in "notable" company: "there was a national comic con circuit," comprised of events whose names "also use the term comic con," "and we wanted to be a part of it."[10] DFP also explained that it thought by steering clear of the hyphenated form "comic-con," it would not violate any rights claimed by SDCC. The jury found no willfulness because it credited DFP's explanation over SDCC's. SDCC's Motion should be denied because DFP's explanation has ample evidentiary support.

### 1.    DFP's Hyphenation Evidence, Alone, Is Enough to Defeat SDCC's Motion

When DFP selected the name for its convention, it *thought* that by using the unhyphenated form "comic con" it would avoid infringement on any rights SDCC claimed in the hyphenated form "comic-con." During trial, DFP presented both testimonial and contemporaneous documentary evidence of its belief in this distinction.[11]

SDCC insists, "a hyphen does not obviate infringement";[12] but that is beside the point: if DFP *thought* it was avoiding infringement by not using a hyphen then it did not willfully infringe. On cross, SDCC elicited testimony that the "comic con" portion of its logo and word mark COMIC CON INTERNATIONAL is unhyphenated;[13] but that

---

[9] *See* Dec. 7, 2017 p.m. Tr. at 57:4–16.

[10] *See* Dec. 7, 2017 p.m. Tr. at 59:10–20.

[11] *See, e.g.*, Trial Exs. 138, 1228; Dec. 4, 2017 p.m. Tr. at 86:9–23; Dec. 6, 2017 p.m. Tr. at 55:19–56:14.

[12] *See* Mem. at 12:13–14.

[13] *See* Dec. 4, 2017 p.m. Tr. at 107:8–108:20.

distinction just makes the hyphen in the standalone form COMIC-CON stand out more.

Moreover the Court barred DFP from presenting several key pieces of evidence on the hyphenation distinction because it found their probative value on the willfulness inquiry outweighed by the risk of prejudice to SDCC on liability issues. But Rule 403 balancing has no place in this non-jury context.[14] SDCC's new trial motion invites the Court to assess DFP's credibility.[15] To make that assessment, the Court should consider *all* the evidence DFP offered, even evidence it did not allow the jury to see.

In 1995, SDCC filed but then later "abandoned" an application to register the unhyphenated form "comic con;"[16] a decade later, SDCC made its successful application to register the hyphenated form "comic-con."[17] This evidence is significant in its own right—what layperson, seeing what happened with both applications, *wouldn't* think SDCC limited its claims to the hyphenated form?—and so is the Court's treatment of it. The Court "recogniz[ed] the relevance" but excluded the 1995 application under Rule 403.[18] However, the Court also explained: "[i]f this were the only evidence, this '95 thing … we would have to balance it differently, probably."[19] That is, the Court excluded *this* evidence because there was already so much *other* evidence of no willfulness.

Another piece of evidence known to the Court but not the jury is that DFP was told by a Wizard World executive that SDCC was sensitive about the hyphenated form but not

---

[14] *Cf. Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) ("in a bench trial, excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure").

[15] *See Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014) ("the district court, in considering a Rule 59 motion for new trial … can … assess the credibility of the witnesses").

[16] *See* ECF Doc. 156-1 Ex. 4, at 28–30. Whatever quarrel SDCC might have with it, the word "abandoned" is what showed in the PTO records that DFP reviewed before selecting "Salt Lake Comic Con."

[17] *See* ECF Doc. 1-1 at 3.

[18] *See* Nov. 14, 2017 Tr. at 97:25–98:4.

[19] *See* Nov. 14, 2017 Tr. at 103:13–15.

the unhyphenated form.[20] And a third piece of evidence known to the Court, which the jury was instructed to disregard, is that DFP saw a disambiguation page on Wikipedia that associated the hyphenated form, but not the unhyphenated form, with SDCC.[21]

The jury had plenty of evidence to sustain its finding DFP thought hyphenation mattered; the Court has even more. That alone defeats SDCC's Motion as to willfulness.

**2. SDCC Completely Ignores the Third-Party and Media Usage Evidence—and That Evidence, Alone, Fully Justifies the Jury's Verdict**

Commenting further on its decision to exclude some of DFP's state-of-mind evidence, the Court explained: "it has relevance, I give you that. But I balance it out in favor of a 403 bar on it, because it's marginal. Because you have a lot of other evidence. He looked around and he saw hundreds of other comic cons or whatever."[22] That hearkened back to the Court's observation, on summary judgment, that "evidence of over 100 competitors using the unhyphenated form of Plaintiff's trademark strongly suggests that the mark is generic" and "is persuasive evidence of genericide."[23] As Daniel Farr testified at trial, that strong, compelling evidence informed DFP's decision-making: "Because I had seen so many other people using it … I didn't think there was any need to talk to them if we did it as Comic space Con."[24]

Also, as the Court recognized when it denied SDCC's motion for directed verdict on genericness, DFP presented a "wealth of media uses and competitor uses"; the Court later characterized DFP's evidence as "compelling."[25] Those media uses informed DFP's decision-making, too.[26] DFP's awareness of strong, compelling, persuasive evidence of

---

[20] *See* ECF Doc. 428 ¶¶ 7–10.

[21] *See* Dec. 6, 2017 a.m. Tr. at 134:4–135:1.

[22] *See* Nov. 14, 2017 Tr. at 97:6–9.

[23] *See* ECF Doc. 260 at 19:22–24; *see also* Trial Exhibits 1351, 1373.

[24] *See* Dec. 4, 2017 p.m. Tr. at 86:16–18.

[25] *See* Dec. 7, 2017 Tr. at 104:14–15, 106:25–107:1; *see also* Trial Exhibits 1364, 1365, 1367, 1368, 1371, 1372.

[26] *See* Dec. 6, 2017 p.m. Tr. at 68:14–69:24.

genericness, in the form of third-party and media usages, is more than enough to defeat SDCC's Motion. But SDCC ignores it entirely.

### 3. The Evidence that SDCC Says "Points Only to Willfulness" Fits Easily into the No-Willfulness Narrative that DFP Presented at Trial

SDCC and DFP presented competing theories regarding DFP's state of mind to the jury. The jury accepted DFP's theory and rejected SDCC's by finding no willfulness. SDCC now argues the jury's verdict should be set aside because, supposedly, "The Evidence at Trial Points Only to Willfulness."[27] But that simply is not true. First, as shown above, SDCC simply ignores the evidence that points decisively *away* from willfulness. Second, as shown below, the evidence that SDCC does marshal fits at least as easily into DFP's no-willfulness narrative as into SDCC's darker, conspiratorial tale.

Stripped of its sensationalizing invective, SDCC's overdone and belabored (but still only selective) rehearsal of the evidence supports, at most, the following contentions:

- DFP chose the name "Salt Lake Comic Con" sometime in early 2013[28]—by which time DFP "was aware of all of SDCC's trademarks asserted in this case."[29] Starting in the fall of 2013, DFP held a convention called "Salt Lake Comic Con" every fall and a convention called "Salt Lake Comic Con FanX" every spring.[30]

- "Defendants did not consult an attorney … before selecting their … name,"[31] nor did they "ask [SDCC] for permission … or inquire about a potential license."[32]

- Defendants "hijacked" and "leveraged" what they called "the Comic Con brand," and "capitalized" on "'brand equity' associated with 'comic con,'" in order to "boost" DFP's events.[33]

---

[27] *See* Mem. at 5:19.

[28] *See* Mem. at 5:25–26, 6:21–27.

[29] *See* Mem. at 6:4–6; *see generally* Mem. at 5:27–6:12.

[30] *See* Mem. at 7:4–9.

[31] *See* Mem. at 6:14–15; *see generally* Mem. at 6:12–15.

[32] *See* Mem. at 6:16–18.

[33] *See* Mem. at 7:13–19, 8:27–28, 9:10–12.

Case No. 14-cv-1865-AJB-JMA

- DFP "leveraged" SDCC's Comic Con International ("CCI") to "boost" its own events by pursuing press coverage that would lead "the fan base in Salt Lake City to associate Defendants' event with San Diego's event."[34]
- "Defendants ran a marketing campaign stating 'Comic Con is coming to Utah'"[35] and they hired "a link building company" to get their domain higher rankings in searches for "comic-con" and "comic con."[36]
- DFP purchased and wrapped an Audi R8, then drove and parked the car around San Diego during the 2014 CCI.[37]
- Bryan Brandenburg testified that "[c]omic con is a brand."[38]

All those facts are entirely consistent with the jury's finding of no willfulness.

### a. DFP's Awareness of the *Full Range* of SDCC's Applications and Registrations Reinforced its Belief in the Hyphenation Distinction

DFP's awareness of SDCC's marks only "points to willfulness" if it is falsely and artificially limited to SDCC's registration for the hyphenated, standalone form "comic-con." But in addition to that registration, DFP was also aware of registrations for unhyphenated *composite* marks and an "abandoned" application for the unhyphenated standalone "comic con."[39] DFP discerned a pattern: SDCC used the unhyphenated form "comic con" in composite marks such as "Comic Con International" and its eye logo, and the hyphenated form "comic-con" as a standalone. The conclusion DFP drew was that SDCC limited its proprietary claims to the hyphenated form, "comic-con." The defendants are not attorneys, and they were unfamiliar with hyphenation caselaw. That DFP drew this conclusion is shown by contemporaneous internal communications.[40]

---

[34] *See* Mem. at 8:8–9; *see generally* Mem. at 7:20–8:26.

[35] *See* Mem. at 9:6–8.

[36] *See* Mem. at 9:1–6.

[37] *See* Mem. at 9:16–11:20.

[38] *See* Mem. at 13:13–15; Dec. 6, 2017 p.m. Tr. at 91:25.

[39] *See* Dec. 4, 2017 p.m. Tr. at 104:24–105:1; ECF Doc. 218-13 at 3–4.

[40] *See, e.g.*, Trial Exhibits 138, 1228.

### b. DFP Did Conduct Extensive Due Diligence, Even Though It Did Not Consult an Attorney or Ask Permission

Although DFP did not consult an attorney, it did run its conclusion about the unhyphenated form "comic con" past others in the industry—including an executive with Wizard World, which produces comic conventions around the country with names that include the unhyphenated form "comic con"—and learned that they shared DFP's understanding.[41] DFP did not seek SDCC's permission because it thought permission to use the unhyphenated form was not required.[42]

### c. SDCC's Reliance on DFP's Statements about the "Brand" Is Question-Begging

When it comes to willfulness, SDCC's most repetitive mantra—before, during, and now after trial—has been about DFP statements that it was "hijacking" or "leveraging" "brand equity" or "the comic con brand." But SDCC jumps straight from those statements to willfulness without first addressing the essential questions: what did the defendants mean by "comic con brand"; what "brand equity" were they talking about? Did they mean proprietary goodwill associated with SDCC as a source of comic conventions, as SDCC *assumes*—or did they mean the vibe associated with comic conventions, especially those "notable" conventions in the "comic con circuit," as a type of event? If DFP meant the latter then DFP's statements, however bad SDCC tries to make them sound, simply are not evidence of willfulness. DFP told the jury that when it made the statements SDCC relies on, it meant the vibe associated with the comic con circuit.[43] The jury accepted DFP's explanation. SDCC's Motion fails because SDCC has presented *no* evidence that DFP meant anything different.

Instead of addressing what DFP meant, SDCC pretends that inquiry is foreclosed by some of the Court's evidentiary rulings. As DFP used the term "brand," phrases like "generic brand" and "national comic con brand" make sense. But the Court banned the

---

[41] *See* ECF Doc. 428 ¶¶ 7–10.

[42] *See* Dec. 4, 2017 p.m. Tr. at 86:9–23.

[43] *See* Dec. 6, 2017 p.m. Tr. at 123:23–125:9.

Case No. 14-cv-1865-AJB-JMA

use of those phrases at trial. According to SDCC, the Court thereby prohibited DFP from challenging SDCC's *assumption* about what DFP meant, when it made statements about hijacking or leveraging brand equity or the comic con brand. But that is a distortion.

Throughout trial, the Court tried to balance three interests. First, the Court prohibited DFP's witnesses from using words like "generic" because it thought that would be expert testimony.[44] Second, the Court banned phrases like "national comic con brand" because it thought they might play on the jury's passions by setting up, in opposition to the rights claimed by SDCC in the term "comic-con," the rights of the public at large (rather than DFP's own private rights) in the term "comic con."[45] But third, the Court also recognized the defendants' right to explain and justify their state of mind.

Those considerations often pulled in different directions—as, for example, with the phrase "generic brand" in this paragraph from an online article:

> "We knew that the term 'comic con' is kind of like a Xerox, *it's a generic brand," Brandenburg says. "All it means is comic convention,* but we knew that there was brand equity associated with the phrase that we could capitalize on*, being the only comic con in our market*."[46]

SDCC's damages expert quoted only the non-italicized language in one of his demonstratives, to suggest that DFP had intentionally exploited SDCC's goodwill. On cross, DFP wanted to show the jury what the expert had left out, and especially "it's a generic brand," because it showed that Mr. Brandenburg was not using the term "brand" to refer to a proprietary trademark but was instead using "brand" to refer to the goodwill associated with comic conventions as a class. The Court required the word "generic" to be redacted, because it thought that embodied a prejudicial legal conclusion that "comic con" is generic—but allowed DFP to show the jury the further statement from the email that "[a]ll it means is comic convention,"[47] to elucidate DFP's state of mind.

---

[44] *See* Dec. 6, 2017 p.m. Tr. at 58:15–59:5
[45] *See* Dec. 6, 2017 p.m. Tr. at 124:2–13.
[46] *See* Dec. 6, 2017 p.m. Tr. at 61:1–62:19. .
[47] *See* Dec. 1, 2017 p.m. Tr. at 61:19–23; see also ECF Doc. 1, at paragraph 16.

The point was not to stop DFP from defending itself by explaining that when it spoke of "brand equity" it was not referring to SDCC's proprietary brand. The Court did not rule, as a matter of law, that the jury must accept and DFP may not dispute that DFP used "brand" in its trademark sense. Rather, the Court took issue with a particular way of making the point. The Court suppressed what it perceived as a legal opinion embodied in the phrase "generic brand" in order to insulate the jury's decision *about the validity* of SDCC's marks from what the Court feared would be improper influence—at the risk that the jury's decision *about willfulness* would be improperly influenced by information deprivation, because the jury was not allowed to see additional evidence that when DFP spoke of "brand equity," DFP was not using the term "brand" in the standard trademark sense, as SDCC's expert had implied.

The Court, however, knows that as DFP used the word "brand," it made sense to speak of a "generic brand." That is further evidence undermining SDCC's attempt to make it appear that DFP expressed an intent to infringe.

### d.   "Leveraging" an *Event* Is Not Infringement

According to SDCC, DFP pursued publicity that would lead people to "associate" DFP's event with SDCC's event. But this is both the wrong sort of conduct and the wrong sort of association for trademark infringement.

Considering first the *conduct*, trademark infringement consists in the use of a "colorable imitation of a registered mark" (in a way that "is likely to cause confusion")[48]—not in "obtain[ing] news coverage" of the defendants attending CCI, or "promot[ing] Defendants' Salt Lake Comic Con event at SDCC's event."[49] SDCC might think the latter is bad manners, or in poor taste—but that does not make it infringement.

As for the *association*, trademark law targets confusion about the association between a product (here, a comic convention) and a source (here, SDCC). But the evidence SDCC quotes shows that DFP wanted people to "associate" its event with

---

[48] *See* 15 U.S.C. § 1114(a)(1).
[49] *See* Mem. at 7:27–8:2.

SDCC's event in a different sense; namely, DFP wanted people to look to SDCC's event to understand what a comic convention "is all about" and to get "a glimpse of what is coming."[50] SDCC may dislike any comparison between its event and DFP's; but *that* type of association—grouping them together as the same *kind* of event—is not infringement.[51]

### e. Advertising, Link Building, and Wrapping a Car Do Not Indicate Willfulness

Because DFP understood the *unhyphenated* form "comic con" as shorthand for a comic convention, its advertisement "Comic Con is coming to Utah" is not indicative of willfulness: it indicates only that Utah would soon have its own comic convention.

DFP's effort to improve its ranking in search results, in turn, is the digital equivalent of buying a yellow-pages ad, or the billboard next to a competitor's. It proves only that DFP wanted to make it easy for those not already in the know to learn there is a comic convention in Utah, and for those who already knew that to get to DFP's website; it does not show that DFP was trying to confuse anyone.

Finally, wrapping and driving an Audi R8 around San Diego shows only that DFP wanted to promote its event during CCI, which as pointed out above does not indicate willfulness.

### f. DFP Never Admitted "Comic Con" Is Not Generic

According to SDCC, "Mr. Brandenburg … conceded … that 'Comic Con' is, in fact, a brand"[52] in this exchange:

Q. Okay. So comic convention is a brand, according to your testimony, sir?
A. Yes.
Q. Okay. You've just stated in an e-mail—let's pull it back up again—you've just stated, comic con is just the abbreviation for comic convention?

---

[50] *See* Mem. at 7:23, 8:5.

[51] *Cf. Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 122 (1938) ("sharing in a market which was created by the skill and judgment of plaintiff's predecessor and has been widely extended by vast expenditures in advertising persistently made. … is not," of itself, "unfair").

[52] *See* Mem. at 13:13–15.

A. Yes.

Q. So if comic convention is a brand, Mr. Brandenburg, comic con is a brand; true?

A. Comic con is a brand, yes.[53]

Whether that "concession" goes to willfulness depends on whether Mr. Brandenburg used "brand" in its trademark sense, to denote goodwill associated with a source. But it is apparent that he is not using "brand" that way because the premise of the last question is that "comic convention is a brand," and not even SDCC claims "comic convention" is a brand in the trademark sense. Mr. Brandenburg's only "admission" is that "comic con" is a brand in the same sense as "comic convention."

### 4. SDCC's Legal Arguments Fail

SDCC follows up its unpersuasive rehearsal of evidence that does not really prove willfulness with a series of legal arguments. Those fail, too.

### a. Under the Anti-Dissection Rule, the Designation that DFP Chose Is Not an SDCC Trademark

SDCC first argues: "[c]hoosing a designation with knowledge that it is another's trademark permits a presumption of intent to deceive."[54] SDCC's invocation of that principle in *this* case violates the anti-dissection rule. The designation that DFP chose is "Salt Lake Comic Con," which is not one of SDCC's trademarks. DFP's chosen designation might *contain* "Comic Con," but "courts may not dissect marks to examine and compare their component parts."[55] "Salt Lake Comic Con" is not the legal equivalent of SDCC's registered form "Comic-Con," or even of the unhyphenated form "Comic Con."[56] So DFP did not choose a designation it knew to be another's mark, and SDCC's first legal argument is inapposite.

---

[53] Dec. 6, 2017 p.m. Tr. at 91:16–25.

[54] *See* Mem. at 12:1–2 (quoting *Stone Creek*, 875 F.3d at 434).

[55] *Moose Creek v. Abercrombie & Fitch*, 331 F. Supp. 2d 1214, 1226 (C.D. Cal. 2004).

[56] *See Brookfield Comms. v. West Coast Entertainment*, 174 F.3d 1036, 1048 (9th Cir. 1999) (reprising prior rulings that "ALTER EGO" is not legally equivalent to "EGO" and "Marco Polo" is not legally equivalent to "Polo").

### b. Hyphenation Is Relevant to Willfulness

SDCC next cites legal authority for the proposition that "a hyphen does not obviate infringement."[57] But willfulness goes to state of mind, not legal doctrine; and SDCC's authority sheds no light on what DFP *thought* about hyphenation. Indeed during trial, the Court instructed the jury that although hyphenation does not affect similarity, "the presence of the hyphen or not may reflect on that state of mind."[58] When the Court asked, "[i]s the plaintiff satisfied with the explanation given?" SDCC's counsel replied, "[y]es, your Honor."[59] SDCC, having endorsed during trial the instruction that hyphenation may be relevant to state of mind, cannot now be heard to argue against the verdict that hyphenation must be disregarded, in determining willfulness.

### c. DFP Was Not Required to Consult Counsel or Acquiesce in SDCC's Demands in Order to Avoid Willfulness

SDCC next argues, "failure to consult trademark counsel prior to engaging in infringing conduct … supports a finding of willful infringement."[60] But DFP did conduct a robust investigation[61]—even if that investigation did not include consulting with counsel. Instructively, in the patent infringement context, the Federal Circuit has reversed its earlier rule that allowed willfulness to be inferred from failure to obtain legal advice.[62]

According to SDCC, DFP's continued use of "Salt Lake Comic Con," after receiving SDCC's cease-and-desist letter, "is further indicia of willfulness."[63] But "refusal to cease using the mark upon demand is not necessarily indicative of bad faith.

---

[57] *See* Mem. at 12:13–14.

[58] *See* Dec. 4, 2017 p.m. Tr. at 60:22–23.

[59] *See* Dec. 4, 2017 p.m. Tr. at 61:11–12.

[60] *See* Mem. at 12:19–22 (quoting *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 472, 476 (N.D. Cal. 1992)).

[61] *See* Dec. 6, 2017 p.m. Tr. at 127:20–23.

[62] *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (en banc).

[63] *See* Mem. at 12:26–27.

Absent more, courts should 'not make an inference of bad faith from evidence of conduct that is compatible with a good faith business judgment.'"[64]

### d. Whether SDCC's Evidence Is Circumstantial or Direct Is Beside the Point

SDCC points out that willfulness may be "inferred from circumstantial evidence of … conduct."[65] But DFP's defense of the verdict does not depend on whether SDCC's evidence is circumstantial. DFP's point is that *all* the evidence, both circumstantial and direct, either points *away* from willfulness or is at least compatible with good faith—which means it does not even support, let alone compel, an inference of willfulness.

### e. Objective Reasonableness Is Not Required—but DFP *Was* Objectively Reasonable

Finally, SDCC argues that DFP must show that it *reasonably* held a "good faith belief in the innocence of its conduct."[66] That both misallocates and misdescribes the relevant burden of proof. Starting with allocation: "[Ninth Circuit] precedent requir[es] that a plaintiff prove willfulness"[67]—not that a defendant prove no willfulness. As for *what* must be proven, SDCC never sought and the Court never gave an instruction that includes the objective reasonableness requirement that SDCC now proposes. Instead SDCC proposed, "[w]illfulness means action undertaken with a deliberate intent to deceive";[68] and the Court accordingly instructed, "[w]illfully means that the defendant acted with a deliberate intent to deceive."[69] The Court drew its instruction from *Lindy Pen*, in which the Ninth Circuit explained: "Willful infringement carries a connotation of

---

[64] *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 962 (7th Cir. 1992) (quoting *Munters Corp. v. Matsui Am., Inc.,* 730 F. Supp. 790, 799–800 (N.D.Ill.1989)).

[65] *See* Mem. at 13:4 (quoting *North Face Apparel Corp. v. Dahan*, No. 13-04821, 2014 WL 12558010, at *18 (C.D. Cal. Oct. 6, 2014)).

[66] *See* Mem. at 13:22–14:1.

[67] *See Stone Creek*, 875 F.3d at 429.

[68] *See* ECF Doc. 351 at 24.

[69] *See* ECF Doc. 395 at 37:6–7.

Case No. 14-cv-1865-AJB-JMA

deliberate intent to deceive."[70] *Lindy Pen* said nothing about the reasonableness of a defendant's beliefs.

SDCC's primary authority is a copyright case, *Peer International Corp. v. Pausa Records, Inc.*,[71] which applied a provision of the Copyright Act that expressly provides for reduced statutory damages "where *the infringer sustains the burden of proving*, and the court finds, that such infringer was not aware and *had no reason to believe* that his or her acts constituted an infringement of copyright."[72] But no such language appears in the Lanham Act's damages statute, 15 U.S.C. § 1117. SDCC also cites an unpublished district court decision, *North Face*, which quotes a sentence from *Peer*. But far from "applying [the] same standard in trademark context," as SDCC claims, *North Face* *denied* summary judgment of willfulness—based in part on evidence that it characterized, with italics in original, as "probative of Dahan's *subjective* state of mind."[73]

In any event, objective reasonableness is easily shown. First, as pointed out above, DFP had evidence of genericness that the Court recognized is "compelling" and "persuasive."[74] So DFP had an objectively reasonable basis for believing SDCC's marks invalid. Second, on JMOL, the Court determined that the evidence on likelihood of confusion "would allow a finding either way."[75] So DFP had an objectively reasonable basis for believing SDCC's marks not infringed. Third, as more fully rehearsed in earlier filings, a trademark examiner of the U.S. Patent and Trademark Office allowed SALT LAKE COMIC CON for the supplemental register and published SDCC's logo for opposition, even after being instructed to consider SDCC's registrations.[76] Although the

---

[70] *Lindy Pen Co. Inc. v. Bic Pen Corp.*, 982 F. 2d 1400, 1406 (9th Cir. 1993).

[71] 909 F.2d 1332, 1336 (9th Cir. 1990).

[72] *See* 17 U.S.C. § 504(c)(2) (italics added).

[73] *See North Face*, 2014 WL 12558010, at *19.

[74] *See* Dec. 7, 2017 Tr. at 104:14–15, 106:25–107:1; ECF Doc. 260 at 19:22–24.

[75] *See* Dec. 7, 2017 Tr. at 107:22–23.

[76] *See* ECF Doc. 334 at 2:8–18.

Court did not allow DFP to present this evidence to the jury, it is subject to judicial notice.[77] And it is yet another independently sufficient proof that DFP was reasonable because "[a] good faith belief that no confusion exists when the USPTO grants a trademark registration or publishes a trademark application for opposition after finding no likelihood of confusion exists with other marks."[78]

### 5. SDCC's "Misconduct" Arguments Fail, Too

SDCC also tries to support its Motion by citing what it calls "trial misconduct by Defendants and their attorneys."[79] SDCC urges supposed trial misconduct as a basis for both a new trial *and* JMOL. Trial misconduct can, in circumstances not presented here, justify a new trial. But SDCC cites *no* authority, and DFP is aware of none, that trial misconduct can justify JMOL under Rule 50. SDCC's request for a new trial based on misconduct also fails because the supposed misconduct (1) never elicited a motion for mistrial and (2) would not warrant a new trial.

### a. SDCC Should Not Be Granted *Post*-Trial Relief for Alleged Misconduct Because SDCC Did Not Seek a Mistrial *During* Trial

According to SDCC, "Defendants' trial misconduct began at the very outset of the case"[80]—when DFP's counsel, in his opening statement, spoke of SDCC's wealth, on the one hand, and the threat to DFP's solvency that a large verdict would present, on the other.[81] SDCC's counsel asked for and was given a sidebar, during which she objected: "I

---

[77] *See* ECF Doc. 260 at pp. 2, 5–6.

[78] *See BDO Remit (USA), Inc. v. Stichting BDO*, No. CV1104054, 2012 WL 12895658, at *25 (C.D. Cal. Sept. 19, 2012).

[79] *See* Mem. at 14:8.

[80] *See* Mem. at 14:23–24.

[81] *See generally* Mem. at 14:24–15:12, 24:22–24; *see also* Nov. 28, 2017 p.m. Tr. at 52:19–21, 53:20–23 ("They [i.e., SDCC] also have $15 million in cash sitting in their bank. They own a downtown office building they paid $5 million cash for. They're not for-profit, but they're the deep pocket."; "Defendants, if they have to pay even a fraction of what CCI asks would be put out of business … So they would be pushing them to bankruptcy.").

think it's entirely inappropriate. I think we need a corrective instruction to the jury." The Court obliged with a serious and lengthy instruction that included the following:

> I sustained an objection to the references to … going out of business, bankruptcy, inability to afford, all of that you should disregard. It's inappropriate to bring forward issues of personal wealth or ability to pay or any of these things. … [T]he references to the bankruptcy, going out of business, were inappropriate, and you need to disregard it. Can each of you do that?

After the Court polled the jury, counsel were asked, "[e]veryone satisfied with the admonition to the jury?"; SDCC's counsel answered, "I am, your honor. Thank you."[82]

Now that the jury has returned a verdict of no willfulness, SDCC has changed its mind; its counsel is no longer satisfied. Now SDCC thinks nothing less than a new trial will suffice. But if SDCC really thinks that conduct irretrievably tainted the proceedings, it should have moved for a mistrial *then* instead of waiting to see how things played out.

"A mistrial, however, was not sought. This is of particular significance here because the matter objected to first occurred during the opening statement to the jury. A mistrial then would have been relatively harmless."[83] Because SDCC "failed to seek a mistrial," it should be "precluded from seeking a second bite at the apple after [it] had consciously decided to 'roll the dice.'"[84] Because "Plaintiff specifically chose not to ask for a mistrial, but rather to rely on the requested instructions and the presumed strength of [its] own case," its "motion for a new trial [should be] denied."[85]

So too for the rest of what SDCC only now, after the fact, calls "rampant trial

---

[82] *See* Nov. 28, 2017 p.m. Tr. at 54:16–18, 56:2–13, 56:18–19.

[83] *Posternack v. American Ins. Co.*, 230 F. Supp. 220, 225 (E.D. Pa. 1964).

[84] *See Saleh v. City of Buffalo*, No. 97–CV–0872, 2002 WL 31655002, at *4 (W.D.N.Y. Nov. 13, 2002).

[85] *Bank of the South v. Fort Lauderdale Technical College, Inc.*, 48 F.R.D. 136, 137, 138 (E.D. La. 1969); *see also Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991) (affirming denial of new trial where, *inter alia*, "appellants did not move for a mistrial at the end of the argument"); *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (affirming denial of new trial where, *inter alia*, "opposing counsel … never … moved for a mistrial").

misconduct."[86] To the extent that SDCC sought, obtained, and accepted curative instructions, without seeking a mistrial, it should be held to the cure it accepted; to the extent SDCC's objections were overruled, its Motion should be denied because SDCC has not even alleged any error in the Court's rulings; to the extent SDCC failed to object to misconduct during trial, it waived. The bottom line is that without a timely motion for mistrial, SDCC should not now be heard to demand a new trial based on misconduct.

> **b.** **SDCC Argues Contrary to Jury Instructions that it Proposed and Agreed To, and Without Regard to the Purposes Served by the Principles it Cites**

SDCC's misconduct arguments also fail on their merits. SDCC accuses DFP of "manufactur[ing] a 'substantial confusion' standard for the jury that is unsupported by the law";[87] but "substantial confusion" comes right out of the infringement instruction that SDCC requested and the Court gave:

> If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.[88]

SDCC complains that DFP's "suggest[ion] to the jury that SDCC had to prove harm in order to prevail on its claim under the Lanham Act … is clearly contrary to the law";[89] but the Court's stipulated damages instruction explains: "your award of such future costs should not exceed the actual damage to the value of the plaintiff's marks"[90]—which necessarily assumes some "actual damage." SDCC calls "defense counsel's attempt to place emphasis on the existence or absence of a hyphen" "egregious";[91] but as pointed out above, during trial SDCC declared itself satisfied with the Court's instruction that

---

[86] *See* Mem. at 24:17.

[87] *See* Mem. at 16:24–25.

[88] ECF Doc. 394 at 24:10–14.

[89] *See* Mem. at 16:26–28.

[90] *See* ECF Doc. 394 at 34:1–2.

[91] *See* Mem. at 16:28–17:1.

"the presence of the hyphen or not may reflect on that state of mind."[92] SDCC cites page 42 of the December 7, 2017 transcript in support of its allegation that DFP's counsel "'testified' to the jury as to Defendants' 'intent' behind their selection of 'Salt Lake Comic Con'";[93] but nothing of the sort appears on that page.

SDCC's criticism of DFP for "incredulously [sic.] invok[ing] the 'Golden Rule,'"[94] in turn, rests on a misapprehension. The relevant exchange is:

> [MR. KATZ:] … So we are just asking you to think critically about the evidence. Think about what it means. And what it would mean to you if you were personally involved in this.
>
> THE COURT: Golden rule. Jury is not—you are not to put the jury in the place of either party. The jury will disregard the last comment.
>
> MR. KATZ: I apologize for that. I will state it differently. …[95]

As counsel acknowledged, he should have expressed his point differently; but all he was trying to get across was encouragement for the jury to use their common sense, "to think critically about the evidence"—as when he had earlier said:

> And, frankly, if we were having this conversation in a park or over dinner, I don't think it would take you very long to say okay, you know, there is 140 comic cons out there, with all these people who think their comic con is comic con. … And I think the same holds true in this courtroom.[96]

The invitation to "[t]hink about … what it would mean to you if you were personally involved in this" was not even given in the context of willfulness. But if it had any bearing on willfulness, its bearing would be to invite this train of thought: *What would you, the jury, have thought in these circumstances? Would you have thought it ok to call your event "Salt Lake Comic Con"? If so then you should find the defendants were not willful.* That is different than playing on the jury's sympathies, which is the evil targeted

---

[92] *See* Dec. 4, 2017 p.m. Tr. at 60:22–23, 61:11–12.

[93] *See* Mem. at 16:22–24.

[94] *See* Mem. at 17:4.

[95] *See* Dec. 7, 2017 Tr. at 71:6–13.

[96] *See* Dec. 7, 2017 Tr. at 71:6–13; 51:21–52:1.

Case No. 14-cv-1865-AJB-JMA

by the No-Golden-Rule rule.

### c. SDCC Fails to Connect DFP's Supposed "Misconduct" to the Jury's Finding of No Willfulness

SDCC also alleges misconduct in "suggest[ing] to the jury that a decrease of Utah attendees at SDCC's convention was likely an adverse reaction to SDCC's efforts to enforce its trademark rights against Defendants in this case."[97] SDCC had implied that trademark infringement by DFP had caused a drop in the number of Utahns attending CCI; identifying another possible cause for the dropoff is not misconduct. The Court, however, thought DFP's counsel was suggesting something broader, "offense of the public at large," and so instructed counsel to "refrain from those comments."[98] But none of this has any bearing on DFP's Motion because the cause of the dropoff in Utah attendees at CCI has nothing to do with willfulness.

SDCC devotes the most space to two categories of "misconduct" allegations: (1) the comments about wealth and bankruptcy discussed above and (2) various forms of reference to what SDCC characterizes as "the nebulous concepts that 'Comic Con' is a 'generic brand' and a 'national brand.'"[99] Any prejudicial effect flowing from comments about wealth and bankruptcy would have been reflected in the jury's damages number, not willfulness—but SDCC is not asking for a new trial on damages.[100] That leaves supposed "misconduct" relating to what SDCC calls "the nebulous concepts" of "generic brand" and "national brand."

As more fully discussed above, the Court banned phrases like "generic brand" and "national brand" in order to insulate the jury's decision *about the validity of SDCC's*

---

[97] *See* Mem. at 16:18–20.

[98] *See* Dec. 7, 2017 Tr. at 37:23–38:1.

[99] *See* Mem. at 15:13–16:18.

[100] Nor could it, with any credibility. The jury awarded $20,000 because Mr. Glanzer testified that SDCC had already paid $20,000 to PMK, *see* Nov. 29, 2017 a.m. Tr. at 99:5–13; the jury did not award more than SDCC had already spent because the jury found Dr. Kennedy's $9.62 million projection not credible.

Case No. 14-cv-1865-AJB-JMA

*marks* from what the Court feared would be improper influence, in the form of either expert opinion that it thought is embodied in the phrase "generic brand" or an appeal to the public weal that it thought is implicit in phrases like "national comic con brand." The Court was not trying to protect the jury's decision *about willfulness* from improper influence. To the contrary, the Court's redaction of those phrases from documents increased the risk that the jury's decision on willfulness would be improperly influenced by information *deprivation* because DFP was not allowed to show the jury key evidence about how DFP used the phrase "brand"—evidence that would have corroborated DFP's claim that when it spoke of "brand equity" and "hijacking the brand," DFP was not using the term "brand" in the standard trademark sense.

The Court's in-trial rulings followed the path marked by its rulings on motions *in limine*, which generally excluded exculpatory state-of-mind evidence whenever the Court perceived a conflict with other considerations.[101] The Court justified this weighting by pointing out that the defendants' awareness of third-party use, by itself, already gave them a strong case on willfulness—a rationale that would be undone if the Court were now to find the jury's finding of no willfulness is *not* adequately supported.[102]

Because the Court protected SDCC's validity case by suppressing "generic brand," "national brand," and other evidence that supported DFP's willfulness case, that suppression would have given DFP grounds for seeking a new trial had the jury found

---

[101] *See, e.g.*, Nov. 14, 2017 Hr. Tr. at 52:19–22, 94:19–21, 97:6–8 ("I grant you that it has some relevance to your client's state of mind but, on balance, the time consumption, the prejudice, and the confusion of the issues way overwhelms it."; "I see the relevance but ultimately, on balance, I find the prejudice, the consumption of time and confusion of the issues problematic."; "And it has relevance, I give you that. But I balance it out in favor of a 403 bar on it, because it's marginal. Because you have a lot of other evidence.").

[102] *See, e.g.*, Nov. 14, 2017 Hr. Tr. at 97:7–9, 103:13–15 ("I balance it out in favor of a 403 bar on it, because it's marginal. Because you have a lot of other evidence. He looked around and he saw hundreds of other comic cons or whatever."; "If this were the only evidence, this '95 thing that Brandenburg had, we would have to balance it differently, probably, but it's not.").

willful infringement. Likewise, if the jury had found genericness, SDCC could have argued that transgressions of the Court's rulings on "generic brand" and "national brand" had tainted the jury's determination. But SDCC already obtained a favorable validity verdict, notwithstanding DFP's supposed misconduct; and because the Court's "generic brand" and "national brand" rulings reflected a balancing that protected SDCC's validity case at the cost of weakening DFP's willfulness case, no amount of conduct in violation of those rulings could warrant setting aside the jury's finding of no willfulness.

Moreover, the record simply does not support SDCC's hysterical accusation of "rampant misconduct." There were occasional uses of phrases like "generic brand" and "national brand," as the defendants tried to make the point that their use of "brand" did not track what SDCC imputed to them. But those were sharply and decisively repudiated by the Court—sometimes leaving DFP scrambling to find other ways to get its indisputably legitimate point across.[103] Indeed the admonitions the Court delivered in front of the jury—e.g., "Be careful. Be very careful."[104]—backed by threats delivered out of the jury's presence, were so effective that Mr. Brandenburg was left with the flustered response "[i]t's a tricky question" when asked if his testimony had been truthful: the Court's rulings had prevented him from telling the whole truth, as he saw and had experienced it, and from providing context he thought necessary to properly understand the testimony he did give; but he feared what might happen to himself, his friend, and

---

[103] *See, e.g.*, Dec. 6, 2017 p.m. Tr. at 123:23–124:25 ("Q. And when you said, but we are hijacking the brand, were you referring to San Diego's brand? A. No, I was not. Q. Whose brand were you referring to? A. As you can see in the next sentence, I clarify what I was referring to was the national comic con brand. MS. BJURSTROM: Objection, your honor. THE COURT: Sustained. Jury will disregard the last comment. MR. KATZ: I'm not sure why. THE COURT: There is no evidence of a national comic brand, sir. MR. KATZ: That's his understanding. Can I have what he means by that? THE COURT: No, we're done with this. … Q. "Comic con is just the abbreviation for comic convention"? A. That's one of the things it is, yes. Q. And what else is it? THE COURT: Be careful. Be very careful. Q. Let me roll that question back …").
[104] Dec. 6, 2017 p.m. Tr. at 124:23.

their company if he explained or filled in the gaps.

SDCC's attempt to twist that answer into something at variance with "the natural response from a person telling the truth"[105] is shameful because SDCC knows of the constraints and threat that Mr. Brandenburg testified under. If Mr. Brandenburg were the accomplished liar SDCC implies, he would have delivered a reassuringly glib response. Instead he gave *exactly* the kind of response to be expected from a truthful person made uncomfortable by the fact that restraints he does not fully grasp, imposed under dire threat, prevent him from being as forthcoming as he would like.

## C.   SDCC's Motion Fails as to Disgorgement Because it Fails as to Willfulness

Because (1) SDCC "must show … willful infringement before disgorgement of [DFP's] profits could be awarded,"[106] (2) the jury found no willfulness, and (3) SDCC's Motion fails as to willfulness, SDCC's Motion also fails as to disgorgement.

## D.   If the Verdict Is Inconsistent then Infringement and False Designation Should Both Be Retried

SDCC seeks JMOL on false designation of origin, based on what SDCC calls an inconsistency between the jury's findings that DFP (1) infringed but (2) did not engage in false designation of origin.[107] SDCC claims that is inconsistent because the jury was instructed "that one test is applied to determine liability for both trademark infringement … and … false designation of origin";[108] but the instruction SDCC cites says no such thing. SDCC cites several cases for the proposition that the two claims—infringement and false designation—are identical; but aside from one unpublished district court decision, what those cases actually say is that the elements for trademark infringement

---

[105] *See* Mem. at 23:19–20.

[106] *See Stone Creek*, 875 F.3d at 442.

[107] "When counsel is invited to consider whether or not to discharge the jury, counsel risks waiver of objections to any inconsistencies in the jury's findings if counsel does not raise the issue before the jury is excused." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1331 (9th Cir. 1995). Here, SDCC might not have waived because the jury was discharged without consulting counsel. *See* Dec. 8, 2017 Tr. at 15:19–17:3.

[108] *See* Mem. at 20:18–22.

and *unfair competition* are the same.

SDCC has not shown the claims are the same and the statutory text suggests at least one distinction. The trademark infringement statute covers "use in commerce of *any* reproduction, counterfeit, copy, or colorable imitation of a registered mark" that "is likely to cause confusion";[109] the statute under which the false designation claim is brought targets the use of "any word, term, name, symbol, or device, or any combination thereof, or any *false designation of origin* … which—(A) is likely to cause confusion …"[110] Any "colorable imitation of a registered mark" covered by the trademark infringement statute will also be a "word, term, name, symbol, or device, or … combination thereof" covered by the false designation statute—but it might or might not also qualify as a "false designation of origin." The jury may have decided "Salt Lake Comic Con" colorably imitates SDCC's marks but does not falsely designate the origin of DFP's services.[111]

If the Court finds an inconsistency then it must decide what to do about it. SDCC asks the Court to conform the jury's false designation finding to the infringement finding; DFP would rather the Court conform infringement to false designation; but neither is the correct result. "Special answers or findings by the jury must be consistent with each other. If they are irreconcilably inconsistent, they destroy each other."[112]

> When such an inconsistency occurs, proper deference to the parties' Seventh Amendment rights to trial by jury precludes entry of a judgment that disregards any material jury finding. The correct course, if the answers were ineluctably inconsistent, would not be to enter judgment as a matter of law but rather to order a new trial.[113]

If the jury's findings of infringement and no false designation of origin are inconsistent

---

[109] *See* 15 U.S.C. § 1114(1)(a) (italics added).

[110] *See* 15 U.S.C. § 1125(a)(1) (italics added).

[111] *Cf. Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394, 399 (5th Cir. 1965) ("the Seventh Amendment requires this Court to search for a view of the case that makes the jury's answers to special interrogatories consistent").

[112] *McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155, 157 (8th Cir. 1978).

[113] *Tolbert*, 242 F.3d at 74 (citations omitted).

then "they destroy each other" and the Court may not enter judgment on the verdict *at all* but should, instead, order a new trial on both infringement and false designation of origin.

## III. CONCLUSION

SDCC's Motion fails and should be denied, across the board. First, SDCC cannot obtain post-verdict JMOL because it did not move, pre-verdict, on the same grounds. Second, there is no just cause for ordering a new trial on willfulness (or, thus, disgorgement of profits): the jury was presented with ample evidence to support its finding of no willfulness, the Court has before it even *more* evidence negating willfulness, and SDCC failed to seek a mistrial based on any alleged misconduct. Finally, if there is an inconsistency in the jury's findings then instead of conforming the verdict to the finding SDCC likes best the Court may not enter judgment *at all* but should instead order a new trial on both infringement and false designation of origin.

DATED: February 20, 2018

Michael I. Katz
Charles J. Veverka
L. Rex Sears
MASCHOFF BRENNAN LAYCOCK
   GILMORE ISRAELSEN & WRIGHT, PLLC

By: _/s/ L. Rex Sears_

Attorneys for Defendants and Counterclaimants
DAN FARR PRODUCTIONS, DANIEL FARR, AND
BRYAN BRANDENBURG

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 20, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

By: /s/ L. Rex Sears