UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO COMIC CONVENTION, a
California non-profit corporation,

Plaintiff,

v.

DAN FARR PRODUCTIONS, a Utah
limited liability company, DANIEL
FARR, an individual, BRYAN
BRANDENBURG, an individual,

Defendants.

Case No.: 14-cv-1865-AJB-JMA

**ORDER DENYING PLAINTIFF'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW AND ITS
MOTION FOR NEW TRIAL**

(Doc. Nos. 433, 509)

The issue before the Court is one that is both repeatedly encountered and analyzed by courts in this district—the renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. Plaintiff San Diego Comic Convention ("SDCC") moves for judgment as a matter of law on three matters: (1) that Defendants Dan Farr Productions, Daniel Farr, and Bryan Brandenburg (collectively referred to as "DFP") willfully infringed SDCC's trademarks; (2) that DFP's profits should be disgorged; and (3)

false designation of origin. (Doc. Nos. 433, 509.)[1] In the alternative, SDCC requests a new trial on willful infringement and disgorgement of DFP's profits. (*Id.*) DFP opposes SDCC's motion for judgment as a matter of law on mainly procedural grounds. (Doc. No. 455.) On May 31, 2018, the Court held a hearing on the motion and then submitted the matter. (Doc. No. 504.) As will be explained in great detail below, the Court **DENIES** SDCC's motion for judgment as a matter of law and motion for new trial.

## BACKGROUND

The Court is already well-versed as to the events leading up to the institution of this action. Thus, for the purposes of this Order, the Court will only provide a narrow review of this lawsuit's factual and procedural background.

On August 7, 2014, SDCC filed a lawsuit against DFP alleging two causes of action: (1) Federal Trademark Infringement, 15 U.S.C. § 1114; and (2) False Designation of Origin, 15 U.S.C. § 1125(a). (*See generally* Doc. No. 1.) SDCC is a non-profit corporation, formed in 1975, that is dedicated to the awareness and appreciation of comics and related popular art forms. (Doc. No. 1 ¶ 10.) Every year since 1970, SDCC has produced and held its "Comic-Con convention" in San Diego, California. (*Id.* ¶ 11; Doc. No. 97 at 9.)[2] The convention spans several days in length and showcases several hundred events, workshops, educational and academic programs, games, award shows, costume contests, as well as hosts panels of special guests that include science fiction and fantasy authors, film and television actors, directors, producers, and writers. (Doc. No. 1 ¶ 12; Doc. No. 97 at 9.) In 2016, attendance to San Diego Comic-Con exceeded over 135,000 attendees over the course of three-plus days. (Doc. No. 97 at 9.)

SDCC's family of trademarks at issue in this case are:

---

[1] The notice for SDCC's motion for judgment as a matter of law is docketed as CM/ECF document number 433. However, SDCC's correlating memorandum of points and authorities on the issue is docketed as CM/ECF document number 509.

[2] Page numbers refer to the CM/ECF number and not the number listed on the original document.

1.  Comic-Con;

2.  Comic Con International;

3.  Anaheim Comic-Con; and



4.

(Doc. No. 1 ¶ 13; Doc. No. 244 at 11.) All three of these registered trademarks are incontestable. (Doc. No. 381 at 25:15–25; Doc. No. 394 at 21.) Additionally, SDCC states that it has used these Comic-Con marks extensively and continuously in interstate commerce and thus the marks have become valuable assets as well as symbols of its goodwill and positive industry reputation. (Doc. No. 1 ¶ 15.)

In early 2013, Defendant Dan Farr Productions, a limited liability company, began to advertise and promote its own popular arts convention named "Salt Lake Comic Con" ("SLCC"). (Doc. No. 234-2 at 7; Herrera Decl. Ex. 5 ("Farr Depo." 11:4–9, Doc. No. 95-7).) Similar to SDCC's convention, SLCC is a three-day fan event featuring the best in movies, television shows, gaming, sci-fi, fantasy, and comic books. (Doc. No. 244 at 12.) Since 2013, SLCC has been held every year and in the beginning of 2014, Dan Farr Productions created its Salt Lake Comic Con FanXperience event, which has also been held every year since its inception. (Farr Depo. at 11:10–15; Doc. No. 97 at 11.)

Thus, the marrow of this case is whether DFP's comic arts and popular fiction event named "Salt Lake Comic Con" infringed on SDCC's three incontestable trademarks.[3] On December 8, 2017, after an eight-day jury trial, the jury found that DFP had indeed infringed on SDCC's family of trademarks. (Doc. No. 395 at 2–5.) As to unfair competition and false designation of origin however, the jury found in favor of DFP. (*Id.* at 6.) In total,

---

[3] The Court notes that after the trial, DFP changed the name of their event to "FanX Salt Lake Comic Convention." (Doc. No. 513 at 7–8.)

the jury awarded corrective advertising damages to SDCC in the amount of $20,000.00. (*Id*. at 8.)

Post-trial, SDCC filed three motions: (1) its motion for permanent injunction, (Doc. No. 419); (2) motion for attorney's fees and costs pursuant to 15 U.S.C. § 1117(a), (Doc. No. 425); and (3) the present motion, its motion for judgment as a matter of law, (Doc. No. 433).

## **LEGAL STANDARD**

A.    Motion for Judgment as Matter of Law

"[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). In doing so, a court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id*.

"Under the Federal Rules of Civil Procedure, a Rule 50(b) motion for judgment as a matter of law is not a freestanding motion, but rather is a renewed Rule 50(a) motion." *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 941 (C.D. Cal. 2015). The proper procedure by which to move for a Rule 50(a) motion is as follows:

> a party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury. If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b).

*E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). Consequently, a party cannot properly "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (citing Fed. R. Civ. P. 50 advisory committee's notes to 1991 amendment). This "rule is a harsh one." *Nat'l Indus., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1549 (11th Cir. 1986).

4

Additionally, the Ninth Circuit has explained that the purpose of this rule is twofold. "First it preserves the sufficiency of the evidence as a question of law, allowing the district court to review its initial denial of judgment as a matter of law instead of forcing it to 'engage in an impermissible reexamination of facts found by the jury.'" *Freund*, 347 F.3d at 761 (citing *Lifshitz v. Walter Drake & Sons*, 806 F.2d 1426, 1428–29 (9th Cir. 1986)). "Second, it calls to the court's and the parties' attention any alleged deficiencies in the evidence at a time when the opposing party still has an opportunity to correct them." *Freund*, 347 F.3d at 761.

B.    Motion for New Trial

Pursuant to Federal Rule of Civil Procedure 59:

> The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows: **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or **(B)** after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

Fed. R. Civ. P. 59(a). Thus, under the Federal Rules, a court may grant a new trial for any reason which suggests that the jury's verdict was clearly wrong or was a miscarriage of justice. *See id*. The primary basis for granting a new trial is that the jury's verdict was against the clear weight of the evidence. *See Landes Constr. Co., Inc. v. Royal Bk. Of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

## DISCUSSION

SDCC requests judgment as a matter of law ("JMOL") on three matters: (1) that DFP willfully infringed its trademarks; (2) that DFP's profits should be disgorged; and (3) on its claim for false designation of origin. (*See generally* Doc. No. 509.) In the alternative, SDCC requests that the Court grant it a new trial on the limited issues of willfulness and disgorgement of profits. (*Id*.)

In opposition,[4] DFP argues that SDCC never moved for a directed verdict under Rule 50(a) on willfulness, disgorgement of profits, or false designation of origin. (Doc. No. 455 at 6–7.) Thus, SDCC is now barred from renewing its JMOL motion on these subjects. (*Id.*) Moreover, DFP asserts that if the Court is to entertain the motion, it would fail on the merits as SDCC ignores "entire bodies of evidence that amply support the jury's finding of no willfulness." (*Id.* at 6.)

A.     SDCC's Rule 50(b) Motion is Procedurally Defective

DFP asserts that SDCC only sought a Rule 50(a) motion on genericness and the likelihood of confusion. (*Id.* at 7.) Thus, SDCC's Rule 50(b) motion may not now be advanced on entirely new grounds. (*Id.*) SDCC retorts that as the test for infringement and false designation of origin under the Lanham Act are the same, its Rule 50(a) motion extends to both of its Lanham Act claims. (Doc. No. 469 at 3.) Moreover, SDCC asserts that it was not required to use the exact terms "false designation of origin," "willfulness," or "disgorgement of profits" in its initial motion. (*Id.*)

As SDCC's motion hinges on the procedural requirements of Rule 50, the Court begins its analysis with the plain language of Rule 50(b):

> **(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.**
> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal question raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as

---

[4] The Court notes that DFP's opposition brief is littered with complaints about the evidence they were prohibited from presenting at trial. (*See* Doc. No. 455 at 9, 10, 13, 14.) Further, DFP makes several statements that seem to infer that they know what the Court was thinking or took issue with. (*See id.* at 15 ("Rather, the Court took issue with a particular way of making the point."); *see also id.* ("The Court, however, knows that as DFP used the word 'brand,' it made sense to speak of a 'generic brand.'").) These arguments are not only presumptuous but are also meritless. Thus, they will not be addressed by the Court in this Order.

a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b). Thus, as explicitly stated, a Rule 50(b) motion may be considered only if a Rule 50(a) motion for JMOL has been previously made.

The advisory committee notes to Rule 50 only further emphasize this requirement: "A motion for judgment notwithstanding the verdict *will not lie unless it was preceded by a motion for a directed verdict* made at the close of all the evidence." Fed. R. Civ. P. 50 advisory committee's note on 1963 amendment (emphasis added). In the notes to the 1991 amendments, it was again reiterated that: "[Rule 50(b)] retains the concept of the former rule that the post-verdict motion is a renewal of an earlier motion made at the close of the evidence . . . A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion." Fed. R. Civ. P. 50 advisory committee's note on 1991 amendment.

Turning to the relevant portions of the record, it demonstrates that SDCC only sought a Rule 50(a) motion on genericness and the likelihood of confusion.

> **The Court:** Okay. Well, I don't know if there is anything to add, Ms. Herrera, but I think I am prepared to rule on this . . . So I would deny the motion for judgment as a matter of law on likelihood of confusion
> . . .
> That leads us to -- and I don't know which order you want to take them--but the Plaintiff, I think, made an oral motion for judgment as a matter of law, on genericness.
> . . .
> **Ms. Herrera:** Right. Just to back up, before I forget. We also have a motion for judgment as a matter of law, on likelihood of confusion. So as to be linear, can I stick with the genericness?

(Doc. No. 403 at 97:1–98:17; 100:1–101:4.) Thus, in strictly construing the procedural requirements of filing a Rule 50(a) motion before filing a Rule 50(b) motion as required by the Ninth Circuit, *Janes v. Wal-Mart Stores Inc.*, 279 F.3d 883, 887 (9th Cir. 2002), SDCC's motion for JMOL on willfulness, disgorgement of fees, and false designation of origin is procedurally barred.

SDCC vehemently asserts that a Rule 50(b) motion may be satisfied by an ambiguous or inartfully made motion under Rule 50(a). (Doc. No. 469 at 3.) According to SDCC, this is especially prevalent "where the context of the motion is clear and the court recognizes the movant's position or does not allow the movant to entirely articulate his or her position." (*Id.* at 3–4.) The Court disagrees with SDCC and finds the shortcomings of its arguments is twofold.

First, it is clear from the record that SDCC was given multiple opportunities to articulate its position. Most notably, after presenting her arguments to the Court, Ms. Herrera stated:

> **Ms. Herrera:** Well, thank you for allowing me to preserve the record on likelihood of confusion and genericness.
> **The Court:** This is your time to make the record as you see fit for others to ponder, so please do.
> **Ms. Herrera:** I understand the Court's ruling on the likelihood of confusion motion . . . However, we still believe that the other two marks--the Comic Con International Mark and the San Diego Comic Con International with eye logo mark--we think that Plaintiffs are entitled to judgment as a matter of law, that those two marks are not generic.

(Doc. No. 403 at 108:3–15.) Additionally, at the end of the hearing, the Court clearly stated: "So are all the issues presented? Are there any other issues? Let me ask you that question. And the next question I'm going to ask is is there anything else anybody wants to say for record purposes on any issues?" (*Id.* at 114:22–25.) To which Ms. Herrera stated: "Mr. Hahn wanted me to clarify that our Rule 50(a) motion on failure to establish genericness goes to all three marks--Comic-Con, Comic Con International, and San Diego Comic Convention." (*Id.* at 115:3–6.) Based on the foregoing and as far as the Court can tell, there is no evidence in the record that demonstrates that SDCC was not allowed to fully articulate its position. To the contrary, the Court held a hearing where SDCC had every opportunity to communicate to the Court every single one of the arguments it sought JMOL for, but it failed to do so.

SDCC employs *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989), to argue that its Rule 50(b) motion may be "inartfully" made. (Doc. No. 469 at 3–4.) *Reeves* is however unpersuasive when compared to the instant matter. In *Reeves*, the party attempted to move for a directed verdict after all the evidence was in, however, the court interrupted and told them to renew their motion after the verdict. 881 F.2d at 1498. The parties did so. *Id.* In these circumstances, the court found that the party's motion was timely and procedurally proper. *Id.* In contrast to *Reeves*, in this case, the Court did not delay SDCC's Rule 50(a) motion. Instead, the Court held a hearing after the close of all the evidence and spent an hour with both parties reviewing their pre-verdict JMOL motions. (Doc. No. 403 at 83, 118.) Thus, SDCC's complete failure to move for a directed verdict on three different claims cannot be considered an "inartfully" made Rule 50(a) motion.

Similarly, SDCC's use of *Anhing Corp. v. Thuan Phong Co. Ltd.*, No. CV 13-05167 BRO (MANx), 2015 WL 4517846, at *15 (C.D. Cal. July 24, 2015) is unpersuasive. (Doc. No. 469 at 4.) In *Anhing*, the court had to decide whether the defendant had properly identified all five of the issues it raised in its Rule 50(b) motion. *Id.* The court found that the defendant had, as at the close of evidence, the court heard the defendant's response to the plaintiff's Rule 50(a) motion, but "declined to hear oral argument" on the defendant's Rule 50(a) motion. *Id.* The court then "denied both parties' motions in their entirety based on the finding that the parties presented conflicting evidence and that the case [came] down to credibility." *Id.* (internal quotation marks omitted). Thus, the court "understood the bases for Defendant's Rule 50(a) motion and did not hear oral argument . . . because of its conclusion that all of the issues were contested and properly submitted to the jury." *Id.* It is clear that the situation in *Anhing* is not present here.

Accordingly, SDCC's argument that its Rule 50(a) motion was "inartfully made" and thus its JMOL motion for willfulness is not procedurally barred is erroneous.[5]

---

[5] SDCC also argues that a Rule 50(a) motion is not required where it is based on an inconsistent jury verdict. (Doc. No. 469 at 3.) In the case cited to by SDCC, *Pierce v. S.*

Second, SDCC argues that willfulness and disgorgement of profits are "logical extensions" of its likelihood of confusion JMOL motion. (Doc. No. 469 at 4.) Specifically, the core of SDCC's argument is that its Rule 50(a) motion for trademark infringement should be extended to incorporate its false designation of origin claim as they both utilize the same test under the Lanham Act—likelihood of confusion. (*Id.* at 3.) Thus, according to SDCC these matters were adequately preserved for its Rule 50(b) motion. (*Id.*) The Court disagrees.

The Court does not quarrel with SDCC's citation to Ninth Circuit authority that states that "[t]he 'ultimate test' for unfair competition is exactly the same as for trademark infringement: whether the public is likely to be deceived or confused by the similarity of the marks." (Doc. No. 509 at 7 (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988); *see also New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical is there a likelihood of confusion?") (internal quotation marks omitted)).)

However, though the underlying test for all three causes of action may be identical and as a result trademark infringement and false designation of origin require "substantially the same proof," *Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, CIV. NO. 2:16-201 WBS DB, 2016 WL 6696061, at *3 (E.D. Cal. Nov. 15, 2016), the statutes still contain several dissimilarities.

Looking to the plain language of 15 U.S.C. § 1125, false designation of origin requires the following:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or

---

*Pac. Transp. Co.*, 823 F.2d 1366, 1369 (9th Cir. 1987), the court stated that an exception to the Rule 50(b) requirement exists when the "jury's special verdict does not support the judgment" or when the "jury's answers are irreconcilably inconsistent." As there has been no finding that the verdict is inconsistent, *Pierce* is inapplicable.

misleading description of fact, or false or misleading representation of fact, which --
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Thus, in order to succeed on a false designation of origin claim, the plaintiff must demonstrate that the defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007).

In comparison, the Ninth Circuit has made clear that to assert a trademark infringement claim, a plaintiff need only show "(1) it has a valid, protectable trademark, and (2) that [defendant's] use of the mark is likely to cause confusion." *Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Explicitly, § 1114 states that:

(1) Any person who shall, without the consent of the registrant--
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction . . . intended to be used in commerce . . . with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

11

By analyzing the two statutes side-by-side, the Court is able to pinpoint several dissimilarities. For instance, pursuant to § 1125(a)(1)'s phrasing, it is not necessary that the mark used by the defendant be an exact copy of the plaintiff's trademark. Another key distinction between trademark infringement and false designation of origin is that the "former applies to federally registered marks while the latter applies to both registered and unregistered trademarks." *Nat'l Grange of the Order of Patrons*, 2016 WL 6696061, at *3 n.3 (citation and internal quotation marks omitted). Additionally, due to the nature of the claim, in some instances, Federal Rule of Civil Procedure 9(b)'s heightened pleading standard may apply to false designation of origin claims. *See Julian Bakery, Inc. v. Healthsource Int'l, Inc.*, No. 16cv2594-JAH (KSC), 2018 WL 1524499, at *4 (S.D. Cal. Mar. 28, 2018).

In sum, the Court finds that the differences between the two statutes though minute, make it possible for a defendant to be liable for trademark infringement, but not false designation of origin and vice versa. Thus, the Court is not persuaded by SDCC's arguments and declines to extend SDCC's JMOL motion for likelihood of confusion to incorporate false designation of origin and willfulness. Doing so and ultimately giving SDCC an exception to Rule 50's strict procedural requirements would evade the Rule and its notes' clear and plain language.

This case's jury instructions only further advance the Court's conclusion:

> SDCC contends that Defendants have <u>infringed its trademarks</u> by using the "Comic Con" mark without SDCC's permission in connection with their comics and popular arts conventions. SDCC further contends that Defendants' use of "Comic Con" <u>falsely suggests an affiliation</u> between SDCC and DFP. SDCC also contends that Defendants' use of "ComicCon" in connection with the marketing, advertising, promotion, offering for sale and sale of their comic convention services incorrectly suggests that Defendants' services are connected with, sponsored by, endorsed by, affiliated with or related to SDCC's services, constituting a false designation of origin.

(Doc. No. 394 at 3 (emphasis added).)

14-cv-1865-AJB-JMA

SDCC attempts to argue that it presented its pre-verdict motion for willfulness when it talked about "Defendants' intent in the likelihood of confusion analysis." (Doc. No. 469 at 3.) The relevant portion of the record is as follows:

> **Ms. Herrera:** And then we get to intent. The intent to trade off the Comic-Con marks is well documented in the evidence at trial through the defendants' emails referencing highjacking the Comic-Con brand, leveraging the event, trying to capitalize on the mark. It's just--I'm not going to repeat it. I think the Court has heard plenty of that.
> **The Court:** Sure.
> **Ms. Herrera:** Evidence of the car, bringing it down to San Diego in the middle of our event in 2014. If that isn't intent, I don't know what is. Ms. Follett's testimony, Defendant Dan Farr Production's prior employee, shows the intent behind the Defendants' conduct.

(Doc. No. 403 at 89:8–20.)

The Court notes that though the evidence in support of "intent" would have also supported SDCC's motion for JMOL as to willfulness, the record still patently demonstrates that no Rule 50(a) motion for willfulness was sought. Accordingly, the Court is still unpersuaded that it can bypass Rule 50's strict procedural requirements. *See Janes*, 279 F.3d at 887.

Further, the Court finds the case law cited to by SDCC inapplicable. In *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 962 (9th Cir. 2009), the court was analyzing an Equal Employment Opportunity Commission suit brought against an employer who allegedly unlawfully terminated an employee in retaliation for internal complaints about discrimination. *Id*. at 954. In analyzing one of the parties' Rule 50(b) motions, the Court stated:

> Go Daddy's second argument in its Rule 50(b) motion is that even if there were sufficient evidence that Bouamama engaged in protected activity, there was insufficient evidence that Go Daddy terminated him because of this activity. There are two parts to this argument. First, Go Daddy argues that there was insufficient evidence that Slezak told Franklin and Villeneuve about Bouamama's reports to her. The *logical extension* of this argument is that if Slezak did not tell them of Bouamama's reports to her, those reports could not

have motivated Franklin to terminate Bouamama. Read fairly, Go Daddy made this argument, and its logical extension, in its Rule 50(a) motion.

*Id.* at 962 (emphasis added).

Thus, in *Go Daddy*, the court was presented with a situation where a "Rule 50(a) motion had been made, but did not present the grounds offered in support of the later Rule 50(b) motion." *Williams v. Bridgeport Music, Inc.*, No. LA CV 13-06004 JAK (AGRx), 2015 WL 4479500, at *4 n.6 (C.D. Cal. July 14, 2015). In the instant matter, SDCC is not arguing that it did not clearly articulate the reasons behind its genericness and likelihood of confusion Rule 50(a) motions. Instead, SDCC is attempting to utilize its likelihood of confusion motion as a vehicle to bring three other distinct claims. It cannot do so.

In sum, this circuit is clear that the Court must "strictly adhere to the requirements of Rule 50(b), which prohibit a party from moving for a judgment as a matter of law after the jury's verdict unless that motion was first presented at the close of evidence." *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir. 1997). Consequently, as SDCC failed to move for JMOL on willfulness, disgorgement of profits, and false designation of origin pursuant to Rule 50(a), it has waived these arguments under Rule 50(b).[6] *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009) ("Failing to make a Rule 50(a) motion before the case is submitted to the jury forecloses the possibility of considering a Rule 50(b) motion."); *see also Pabban Dev. Inc. v. Sarl*, No. SA CV 10-00533 BRO (RNBx), 2014 WL 12585802, at *4 (C.D. Cal. Aug. 8,

---

[6] At the motion hearing, SDCC argued that where a Rule 50(b) motion is brought on grounds not previously made in a Rule 50(a) motion, the jury's verdict is reviewed for "plain error," and is reversible only "if such plain error would result in a manifest miscarriage of justice." *Williams*, 2015 WL 4479500, at *3 (citation omitted). However, the Court notes that the decision in *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006), may have changed the requirements for such a review. *See id.* at 405–06 (holding that appellate courts lack jurisdiction to review a verdict for sufficiency of the evidence, including presence of plain error, if the Rule 50(b) motion is not properly brought). Thus, the Court declines to do a plain error review.

2014) ("Plaintiff never brought a Rule 50(a) motion with regard to its breach of contract claim against Medtronic. And Plaintiff's contention that the requirements of Rule 50 should be construed 'liberally' contravenes Ninth Circuit precedent[.]"); *Janes*, 279 F.3d at 887 (holding that "substantial compliance [with Rule 50] is not enough.").

## B.    SDCC's Motion for JMOL on Willfulness

Nevertheless, the Court illustrates that even if SDCC's motion were not procedurally barred, its motion for JMOL on willfulness would fail on the merits.

"Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with an aura of indifference to plaintiff's rights[.]" *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007) (internal quotation marks omitted). In other words, willfullness is when a "defendant willfully blind[s] himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it." *Id.*; *see also Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) ("[I]t is enough . . . that the defendant failed to inquire further because he was afraid of what the inquiry would yield."). "To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate." *Hard Rock Cafe Lic. Corp. v. Concession Servs. Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992).

At trial, Mr. Brandenburg admitted that through his research he was aware of all of SDCC's trademarks asserted in this case, (Doc. No. 383 at 28:15–19, 76:2–23), and that DFP did not consult an attorney before selecting their event name "Salt Lake Comic Con," (*Id.* at 77:8–16; Doc. No. 377 at 110:5–18). Moreover, one of SDCC's most elucidating pieces of evidence is an email where Mr. Brandenburg stated: "Obviously, hijacking the Comic Con Brand, having major media companies as partners and having $100,000-plus worth of celebrity guests is part of the magic formula." (Doc. No. 383 at 87:19–25; Tr. Ex. 24.) Additionally, DFP made statements about wishing to "leverage" SDCC's brand to get "exposure" for their SLCC event. (Tr. Ex. 109.)

SDCC also introduced one of its most ostentatious pieces of evidence—the Audi R8 purchased by Mr. Farr in June of 2014 that was used as a Salt Lake Comic Con mobile

billboard and driven around SDCC's convention. (Doc. No. 397 at 70:17–25, 72:1–20, 73:1–17.) Specifically, DFP admitted to wrapping the car quickly, finding "strategic" parking spots in front of the convention center, and filming guests scheduled to appear at SLCC in front of the vehicle while at SDCC's convention. (Tr. Ex. 52.) Finally, the record also demonstrates that DFP received a cease and desist letter from SDCC on July 25, 2014. (Tr. Ex. 127.) However, DFP did not contact SDCC after receiving the letter, nor did they cease using SDCC's marks. (Doc. No. 377 at 6:20–25; Doc. No. 383 at 92:9–93:20.)

There is no denying that all of the evidence produced by SDCC presents a strong case for JMOL as to willfulness. However, in reviewing the record as a whole, the Court is unable to conclude that "the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Oregon Health Sciences Univ.*, 327 F.3d 876, 881 (9th Cir. 2003.)

Turning to the record, it demonstrates that Mr. Brandenburg testified to the following points:

1) Mr. Brandenburg told his creative director to avoid using Comic Con with the hyphen because he "understood that [the hyphen] was unique to San Diego and that [they] should use comic con with a space." (Doc. No. 383 at 55:19–56:14)[7];

2) Mr. Brandenburg chose to name his convention Salt Lake Comic Con because "[b]ased on [his] observations in the industry, the most notable comic

---

[7] DFP argues that its hyphenation evidence alone is enough to defeat SDCC's motion. (Doc. No. 455 at 8.) DFP then ludicrously argues that the Court should consider all of the evidence DFP offered, "even evidence it did not allow the jury to see." (*Id*. at 9.) DFP makes this argument without any citation to Ninth Circuit case law or even cases from other districts. This failure to support their position is not surprising as it goes against all precedent. *See McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1037 (9th Cir. 2003) ("The jury cannot be said to have reached an erroneous verdict because of evidence that was not before it at trial."). Accordingly, the Court declines to review evidence not presented before the jury.

16

conventions were called comic con, and [he] wanted to be notable." (*Id*. at 58:10–12);

3) Mr. Brandenburg did not want to call his convention comic convention because "comic con is short for comic convention, and it's easier to say, and it was the practice of over one hundred events to call themselves just comic con." (*Id*. at 58:15–18);

4) In response to the question: "Was it important for [Mr. Brandenburg] to use the name Comic Con to connect [his] events to other names that also use the term Comic Con?" Mr. Brandenburg testified that it was important to him as "[i]t was [his] observation that there was a national comic con circuit, and [he] wanted to be part of it." (*Id*. at 59:10–20); and

5) Mr. Brandenburg thought that it was ok to use "Comic Con" as other comic conventions were using it. (*Id*. at 92:1–8.)

In addition to the foregoing, the most salient piece of evidence produced by DFP is the one-hundred other comic conventions that use "Comic Con" in their event name. (Tr. Exs. 1291, 1351, 1378; Doc. No. 382 at 48:19–50:7.)

In sum, without weighing the credibility of Mr. Brandenburg's testimony, there is evidence that demonstrates that DFP did not intend to deceive the public. Rather, the record illustrates that over a hundred "Comic Con" events are held across the United States. Based on this, DFP believed that it was not improper for them to follow the lead of these other conventions and hold a "Comic Con" event in Salt Lake City. Consequently, viewing the evidence in the light most favorable to DFP and drawing all reasonable inferences in their favor, there is substantial evidence to support the jury's verdict and thus SDCC's motion for JMOL as to willfulness is **DENIED**. *See Johnson*, 251 F.3d at 1227 (citation omitted); *see also Lucent Techs., Inc. v. Microsoft Corp.*, 837 F. Supp. 2d 1107, 1111 (S.D. Cal. 2011) ("A jury verdict can be overturned and a post-trial motion for judgment as a matter of law granted only if . . . there is no legally sufficient basis for a reasonable jury to find for that party on that issue.") (citation and internal quotations marks omitted); *Costa v.*

*Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002) (noting that the standard on a motion for JMOL is "very high.").

Consequently, the Court need not reach SDCC's argument that it is entitled to JMOL in the form of disgorgement of DFP's profits. *See* 15 U.S.C. § 1117(a) (explaining that where willful infringement is found, the plaintiff is entitled to recover the defendant's profits). Additionally, the Court notes that SDCC's arguments pertaining to DFP's trial misconduct that supposedly tainted the jury's assessment of willfulness, (Doc. No. 509 at 19–22), is wholly irrelevant. SDCC's burden and the Court's limited review process in the instant matter focuses solely on determining if there is substantial evidence to uphold the jury's verdict. *See Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007).

C.    SDCC's Motion for JMOL as to False Designation of Origin

Though the Court need not reach this point, the Court notes that if SDCC's motion for JMOL on false designation of origin were not procedurally barred, it would also fail on the merits. SDCC argues that as the factual predicates underlying its trademark infringement claim is the same as its false designation of origin claim, no reasonable jury could have found for it as to likelihood of confusion, but found in favor of DFP for false designation of origin. (Doc. No. 509 at 24–27.) DFP retorts that the jury instruction employed by SDCC does not support its arguments and that the two statutes have various distinctions. (Doc. No. 455 at 28–29.) The Court agrees with DFP.

As already discussed in great detail *supra* pp. 10–11, the Court has pinpointed several places where the statutes for trademark infringement and false designation diverge. Thus, the Court finds that it was feasible for the jury to have found that DFP infringed on SDCC's trademarks, yet at the same time concluded that DFP did not falsely designate the origin of their services. If SDCC is correct that false designation of origin and trademark infringement are identical, the Court speculates why the Lanham Act created two distinct causes of action.

Thus, returning to the Court's responsibility at this stage, which is not to weigh the evidence, *see Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th

Cir. 2001), but instead is to "simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion," *Wallace*, 479 F.3d at 624, the Court finds that there is adequate evidence in the record to support the jury's verdict.

As already enumerated in great detail, DFP produced evidence that illustrated that over one hundred other comic conventions use the phrase "Comic Con" in their event name. (Tr. Exs. 1291, 1351, 1378; Doc. No. 382 at 48:19–50:7.) Based upon this, Mr. Brandenburg testified that he believed that it was acceptable that he also use the "Comic Con" phrase in his comic arts event in Salt Lake City. (Doc. No. 383 at 92:1–8.) In that same vein, Mr. Brandenburg testified that through his review of over one hundred media articles, he was able to infer from the media's usage of the phrase "Comic Con" that he could use the phrase to name his comic convention. (*Id*. at 14:20–15:4.) Finally, Mr. Brandenburg's testimony was replete with his state of mind beliefs that at the time he chose the "Salt Lake Comic Con" event name, he wanted to be a part of the national comic con circuit, (*Id*. at 59:19–20), and that "Comic Con" is just short for comic convention, (*Id*. at 89:12–15).

Accordingly, disregarding "all evidence favorable to the moving party that the jury is not required to believe[,]" *Reeves*, 530 U.S. at 151, and refraining from substituting its view of the evidence for that of the jury, *see Krechman v. Cty. of Riverside*, 723 F.3d 1104, 1110 (9th Cir. 2013), the Court finds that there is substantial evidence to support the jury's verdict and **DENIES** SDCC's motion for JMOL as to false designation of origin.

D.    SDCC's Motion for New Trial

In the alternative, SDCC moves for a new trial on willfulness and on damages in the form of the disgorgement of DFP's profits. (Doc. No. 509 at 27–30.) DFP fails to address SDCC's various arguments in their opposition brief. (*See generally* Doc. No. 455.) Instead, DFP only broadly concludes that "there is no just cause for ordering a new trial on

willfulness" as "the jury was presented with ample evidence to support its finding of no willfulness."[8] (*Id.* at 30.)

A motion for new trial employs a different standard than a motion for JMOL. A new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal courts[.]" Fed. R. Civ. P. 59(a). As this circuit has noted, "Rule 59 does not specify the grounds on which a motion for new trial may be granted[.]" *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Instead, the court is "bound by those grounds that have been historically recognized[,]" *Id.*, which include that "the verdict is against the weight of the evidence . . . [or] the trial was not fair to the party moving[.]" *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

The Court's review process is to "weigh the evidence . . . and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the Court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence[.]" *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (citation omitted). Moreover, in a motion for new trial, "[t]he district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of witnesses." *United States v. Capati*, 980 F. Supp. 1114, 1132 (S.D. Cal. 1997).

As already discussed, "[w]illfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with an aura of indifference to plaintiff's rights–in other words, that the defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it."

---

[8] Failure to respond in an opposition brief to a claim challenged in a motion is an "abandonment of those claims." *Qureshi v. Countrywide Home Loans, Inc.*, No. C 09-4198 SBA, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010); *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citation omitted).

*Philip Morris USA*, 489 F. Supp. 2d at 1123. Thus, "[w]illful infringement carries a connotation of deliberate intent to deceive." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015) (citation omitted). Moreover, willful trademark infringement occurs when the defendant's actions are "willfully calculated to exploit the advantage of an established mark." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993) (citation and internal quotation marks omitted), *abrogated on other grounds by Sun Earth, Inc., v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016).

SDCC provides the following key pieces of evidence to demonstrate that the jury's verdict finding that DFP's trademark infringement was not willful is against the clear weight of the evidence.

1) Mr. Farr and Mr. Brandenburg's testimony that they knew that SDCC was using the mark "Comic-Con," (Doc. No. 383 at 76:2–23);

2) Mr. Brandenburg's statement that he reviewed the records of the USPTO and saw SDCC's trademark registrations, (*Id.* at 76:1–16);

3) the emails from Mr. Brandenburg that admitted to wanting to hijack and leverage the Comic Con brand, (*Id.* at 87:18–25);

4) DFP's failure to discontinue use of "Comic Con" after they received the cease and desist letter from SDCC, (*Id.* at 92:9–23); and

5) Mr. Farr's emails that stated that he wanted to "leverage the San Diego Comic Con to help people relate to [his] event" and that he wanted to leverage "San Diego to boost [their] brand . . . ." (Doc. No. 377 at 22:1–18.)

Taking into consideration that the Court may now weigh the credibility of the witnesses and does not need to make any inferences in favor of DFP or the verdict, SDCC presents an impressively credible and persuasive case in favor of granting a new trial as to willfulness. In the Court's analysis, one of the most integral pieces of evidence is DFP's continued use of SDCC's trademarks after it received SDCC's cease and desist letter. (Doc. No. 383 at 92:8–20 (*see Herman Miller Inc. v. Alphaville Design Inc.*, No. C 08-03437

21

WHA, 2009 WL 3429739, at *9 (N.D. Cal. Oct. 22, 2009) ("Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark.").) Further significant evidence of willfulness is that DFP failed to consult an attorney after receiving the cease and desist letter. (Doc. No. 383 at 93:10–14 (*see E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 472, 476 (N.D. Cal. 1992) ("The failure to consult trademark counsel prior to engaging in infringing conduct, where such consultation would be reasonable, supports a finding of willful infringement.")).)

However, in light of all the evidence presented at trial, the Court cannot in its good conscience grant a new trial as to willfulness as the verdict is not "so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice." *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) (stating that a new trial may be granted "only if the verdict is against the great weight of the evidence or it is quite clear that the jury has reached a seriously erroneous result.") (citation and internal quotation marks omitted).

The bane to SDCC's motion again rests in the evidence of over one hundred comic conventions that use "Comic Con" in their event name. (Tr. Exs. 1291, 1351, 1378; Doc. No. 382 at 48:19–50:7.) Based on this fact, Mr. Brandenburg testified that he researched several of these conventions, including SDCC's event, and came to the conclusion that it would be okay for him to name his convention "Salt Lake Comic Con." (Doc. No. 383 at 92:1–8, 96:17–22.)

Further, Mr. Brandenburg testified that he saw other conventions with the name "Comic Con" and he wanted to be a part of those notable comic conventions, (*Id.* at 58:10–12), and that Comic Con is short for comic convention, (*Id.* at 58:15–18). Thus, there is evidence that demonstrates that DFP's utilization of SDCC's trademarks was not willful. *See Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012) ("Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing."); *see also Int'l Olympic Comm. v. San Francisco Arts & Athletics*, 781 F.2d 733, 738–39 (9th Cir. 1986) (holding that

infringement is not willful if the party reasonably believes its usage of a trademark is not barred by law).

Based on the foregoing, the Court finds that the jury's verdict as to willfulness is not against the clear weight of the evidence. *Pierce*, 823 F.2d at 1370.

SDCC also contends that DFP's counsel's misconduct further buttresses the fact that it is entitled to a new trial on the issue of willfulness. (Doc. No. 509 at 28.) For instance, SDCC points to DFP's counsel's references to the parties' respective financial positions and DFP's certain bankruptcy if the jury were to award damages, references to Comic-Con being a "circuit" or "national brand," and their blatant violation of the Golden Rule during closing statements. (Doc. No. 509 at 29.)

It is without question that DFP's counsel engaged in improper behavior. However, at this stage, the only question is whether these purportedly prejudicial statements affected the outcome of the case. SDCC fails to provide any evidence that the jury was so provoked. *See Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (9th Cir. 1985) ("There has been no showing that exposure to inadmissible evidence, if it occurred, affected the outcome of this case."); *see also McKinley v. City of Eloy*, 705 F.2d 1110, 1117 (9th Cir. 1983) (holding that a court may grant a new trial because of attorney misconduct, however "the flavor of the misconduct must [have] sufficiently permeate[d] [the] entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.") (citation and internal quotation marks omitted); *Clanahan v. McFarland Unified Sch. Dist.*, No. CV F 05-0796 LJO DLB, 2007 WL 2253597, at *5 (E.D. Cal. Aug. 3, 2007) ("To evaluate prejudice from attorney misconduct, courts consider 'the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and verdict itself.'") (citation omitted).

Moreover, the Court provided curative instructions and reprimanded DFP's counsel for their conduct on several instances. For example, after Mr. Katz said "so we are just asking you to think critically about the evidence. Think about what it means. And what it

would mean to you if you were personally involved in this" during closing statements, the Court immediately said "Golden Rule. Jury is not--you are not to put the jury in the place of either party. The jury will disregard the last comment." (Doc. No. 403 at 71:6–11.)

Additionally, the Court notes that the case law SDCC cites to support this argument is unpersuasive. (Doc. No. 509 at 29.) In *Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-00094-LGB MCX, 2000 WL 709149, at *30–32 (C.D. Cal. May 24, 2000), the attorney misconduct that justified a new trial included counsel ignoring court rulings more than a handful of times, improperly arguing to the jury that Pfizer's lawyers should be punished, and attempting to elicit information after being specifically told not to. *Id*. In total, the defendant had to raise 778 objections to prevent the introduction of improper evidence and the court had to raise an additional 67 more objections for conduct "which [were] so blatantly in violation of the Federal Rules of Evidence that not to do so would have been clear error." *Id*. at *33. It is clear that the situation in *Trovan* is not present here.

Moreover, in *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1144–45 (9th Cir. 2001), the court was addressing whether the defendant's closing argument violated due process. *Id*. at 1144. Specifically, the closing argument made broad racial statements, inferred bias among the defendant's managers to "raise prejudice and inflame the jury," and counsel "presented the jury with an imagined thought-process of the racist white Co-op management," and attributed disparaging terms to Co-op's managers that were never produced in evidence. *Id*. at 1151. This type of closing argument is not present in this case nor comes close to *Bird*.

In sum, SDCC's motion for new trial on willfulness is **DENIED**. *See United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) ("A motion for a new trial is directed to the discretion of the district judge. It should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict.") (citation and internal quotation marks omitted); *see also Kehr v. Smith Barney, Harris Upham & Co. Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (explaining that a trial court is in a far better position to gauge the prejudicial

effect of improper comments). Based on this, the Court need not reach SDCC's motion for new trial on disgorgement of fees.

## **CONCLUSION**

As explained in great detail above, SDCC's motion for judgment as a matter of law is **DENIED** based on its procedural deficiencies and its motion for new trial is **DENIED** as the verdict is not against the clear weight of the evidence.

**IT IS SO ORDERED**.

Dated:  August 23, 2018

Hon. Anthony J. Battaglia
United States District Judge

25