# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COMIC CONVENTION, a California non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAN FARR PRODUCTIONS, a Utah limited liability company, DANIEL FARR, an individual, BRYAN BRANDENBURG, an individual,<br><br>Defendants. | Case No.: 14-cv-1865-AJB-JMA<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANTS' MOTION FOR RULING ON ESTOPPEL DEFENSE; AND**<br><br>**(2) DENYING DEFENDANTS' MOTION FOR RULING ON UNCLEAN HANDS DEFENSE**<br><br>(Doc. Nos. 508, 510) |

Defendants Dan Farr Productions, Daniel Farr, and Bryan Brandenburg (collectively referred to as "DFP") move this Court for a ruling on two issues post-trial: on their estoppel and unclean hands defenses. (Doc. Nos. 508, 510.) Plaintiff San Diego Comic Convention ("SDCC") opposes both of the motions. (Doc. Nos. 511, 519.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the matters suitable for determination on the papers and without oral argument. As will be explained in greater detail below, after re-examining DFP's collective arguments, the Court **DENIES** both DFP's motion for ruling on estoppel defense

and their motion for ruling on unclean hands defense.

## BACKGROUND

The Court is already well-versed as to the events leading up to the institution of this action. Thus, for the purposes of this Order, the Court will only provide a narrow review of this lawsuit's factual and procedural background.

On August 7, 2014, SDCC filed a lawsuit against DFP alleging two causes of action: (1) Federal Trademark Infringement, 15 U.S.C. § 1114; and (2) False Designation of Origin, 15 U.S.C. § 1125(a). (*See generally* Doc. No. 1.) SDCC is a non-profit corporation, formed in 1975, that is dedicated to the awareness and appreciation of comics and related popular art forms. (Doc. No. 1 ¶ 10.) Every year since 1970, SDCC has produced and held the convention known as the "Comic-Con convention" in San Diego, California. (*Id*. ¶ 11; Doc. No. 97 at 9.)[1] The convention spans several days in length and showcases several hundred events, workshops, educational and academic programs, games, award shows, costume contests, as well as hosts panels of special guests that include science fiction and fantasy authors, film and television actors, directors, producers, and writers. (Doc. No. 1 ¶ 12; Doc. No. 97 at 9.) In 2016, attendance to San Diego Comic-Con exceeded over 135,000 attendees. (Doc. No. 97 at 9.)

The Comic-Con family of trademarks at issue in this case are:

    1. Comic-Con;

    2. Comic Con International;

    3. Anaheim Comic-Con; and

    4. 

---

[1] Page numbers refer to the CM/ECF number and not the number listed on the original document.

(Doc. No. 1 ¶ 13; Doc. No. 244 at 11.) Each of these registered trademarks is incontestable. (Doc. No. 381 at 25:15–25.) Additionally, SDCC states that it has used these marks extensively and continuously in interstate commerce and thus the marks have become valuable assets as well as symbols of its goodwill and positive industry reputation. (Doc. No. 1 ¶ 15.)

In early 2013, Defendant Dan Farr Productions, a limited liability company, began to advertise and promote its own popular arts convention named "Salt Lake Comic Con" ("SLCC"). (Doc. No. 234-2 at 7; Herrera Decl. Ex. 5 ("Farr Depo." 11:4–9, Doc. No. 95-7).) Similar to SDCC's convention, SLCC is a three-day fan event featuring the best in movies, television shows, gaming, sci-fi, fantasy, and comic books. (Doc. No. 244 at 12.) Since 2013, SLCC has been held every year and in the beginning of 2014, Dan Farr Productions created their Salt Lake Comic Con FanXperience event, which has also been held every year since its inception. (Farr Depo. at 11:10–15; Doc. No. 97 at 11.)

Thus, the marrow of this case is whether DFP's comic arts and popular fiction event named "Salt Lake Comic Con" infringed on SDCC's three incontestable trademarks.[2] On December 8, 2017, after an eight-day jury trial, the jury found that DFP had indeed infringed on SDCC's family of trademarks. (Doc. No. 395 at 2–5.) As to unfair competition and false designation of origin however, the jury found in favor of DFP. (*Id*. at 6.) In total, the jury awarded corrective advertising damages to SDCC in the amount of $20,000.00. (*Id*. at 8.)

Post-trial, DFP filed four motions: (1) their motion for judgment as a matter of law, (Doc. No. 429); (2) their motion for new trial of validity and infringement, (Doc. No. 436); and (3) the instant motions, their motions for ruling on estoppel and unclean hands defenses, (Doc. Nos. 508, 510).

///

---

[2] The Court notes that after the trial, DFP changed the name of their event to "FanX Salt Lake Comic Convention." (Doc. No. 513 at 7–8.)

# DISCUSSION

A. DFP's Estoppel Defense is Legally Baseless[3]

DFP emphasizes four main points to support their belief that SDCC is estopped from asserting its rights in its incontestable trademark "Comic-Con": (1) that SDCC abandoned its "Comic Con" trademark; (2) SDCC acquiesced to the use of "Comic Con" by infringers for decades; (3) SDCC's failure to enforce its mark has put "Comic Con" in the public domain; and (4) that DFP relied on public information in coming to the conclusion that they could use "Comic Con." (*See generally* Doc. No. 508-1.) SDCC retorts that as equitable estoppel is a personal defense, only the party to whom the representations were made or for whom the representations were intended can assert an equitable estoppel defense. (*See generally* Doc. No. 519.) In the present matter, according to SDCC, there is no evidence that SDCC made any representations to DFP in regards to its trademarks. (*Id.*) Additionally, SDCC argues that it did not abandon the mark "Comic Con," there was no reasonable reliance, and that DFP's arguments as a whole make unsubstantiated claims. (*Id.*) The Court agrees with SDCC.

To prevail on an equitable estoppel defense, a defendant must prove:

(1) the plaintiff knew the defendant was selling a potentially infringing product; (2) the plaintiff's actions or failure to act led the defendant to reasonably believe that the plaintiff did not intend to enforce its trademark right against the defendant; (3) the defendant did not know that the plaintiff actually objected to the sale of its potentially infringing product; and (4) due to its reliance on the plaintiff's actions, defendant will be materially prejudiced if the plaintiff is allowed to proceed with its claim.

---

[3] The Court notes that it has already analyzed this defense once before. During summary judgment, DFP asserted that SDCC's longstanding tolerance of other companies using the unhyphenated form of its trademark "Comic-Con" estopped it from contending that DFP's use of "Comic Con" without the dash infringed on its trademark. (Doc. No. 263-1 at 25–30.) Ultimately, the Court denied DFP's summary judgment motion on this issue. (Doc. No. 263 at 29–31.)

*3M Co. v. Rollit, LLC*, No. C 06-01225 JW, 2008 WL 8820473, at *5 (N.D. Cal. May 14, 2008) (citing *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998)). "Where any one of the elements of equitable estoppel is absent, the claim must fail." *Am. Casualty Co. v. Baker*, 22 F.3d 880, 892 (9th Cir. 1994).

The overarching theme of SDCC's opposition brief is that equitable estoppel is a personal defense. (Doc. No. 519 at 6.) ███████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
████████████████████████████████████

In their Reply brief, DFP all but affirms that their motion is meritless. DFP states that the crux of their motion "is that conduct directed indiscriminately to the public at large, instead of to a specific person, can also work an estoppel." (Doc. No. 516 at 3.) DFP then argues that real property cases support the theory "that there is no reason an estoppel could not similarly arise in favor of the general public in trademark cases." (*Id.*) (internal quotation marks omitted).

The Court declines to follow the reasoning of the 1921 Missouri case cited by DFP to support the abovementioned assertion. (*Id.* (*see St. Louis v. Clegg*, 233 S.W. 1, 3 (Mo. 1921) (discussing estoppel in a case related to appropriating certain property for street purposes)).) It is without question that *St. Louis* is irrelevant, especially in light of cases from this district that explicate that equitable estoppel requires affirmative actions towards the party claiming estoppel. *See U.S. Jaycees v. San Francisco Jr. Chamber of Commerce*, 354 F. Supp. 61, 73 (N.D. Cal. 1972) (holding that a party "cannot invoke the doctrine of estoppel on the ground that the plaintiff has knowingly permitted the use and registration of the disputed mark by third parties not in privity with defendant."); *see also Gibson Brands, Inc. v. John Hornby Skewes & Co. Ltd.*, No. CV 14-00609 DDP (SSx), 2014 WL 5419512, at *3–4 (C.D. Cal. Oct. 23, 2014) (finding sufficient facts to sustain a defense of estoppel because the defendant alleged that the plaintiff told it that "its designs were not substantially similar to Plaintiff's mark" and this tended to show the defendant "had good

reason to believe that Plaintiff did not object to its use of the design.") (internal quotation marks omitted).

Notwithstanding this fact, even if estoppel could be based on actions directed to the general public, DFP's motion would still fail. Here, DFP falls short of establishing the second and third elements of estoppel. In their motion, DFP produces no evidence to support the claim that they did not know that SDCC objected to their use of the marks or that SDCC's actions would lead DFP to reasonably believe that SDCC did not intend to enforce its trademark rights. *Lehman*, 154 F.3d at 1016. In fact, the record demonstrates the opposite. Specifically, less than one year after DFP's first convention, they received SDCC's cease and desist letter dated July 25, 2014. (Doc. No. 383 at 92:9–20; Tr. Ex. 127.) On its face, this letter illustrates that DFP knew that SDCC intended to enforce its trademark rights and that SDCC objected to DFP's use of "comic con" in their event name. *See Novell, Inc. v. Weird Stuff, Inc.*, No. C92-20467 JW/EAI, 1993 WL 13767335, at *13 (N.D. Cal. Aug. 2, 1993) ("Estoppel arises only when a party's conduct misleads another to believe that a right will not be enforced and causes him to act to his detriment in reliance upon this belief.").

Second, DFP has not established that they will be prejudiced if SDCC is allowed to enforce its trademark rights. Instead, DFP's motion makes baseless claims arguing that they have developed substantial goodwill, including a following of over 80,000 fans tied to their Salt Lake Comic Con Facebook page. (Doc. No. 508-1 at 11.) Thus, according to DFP, they will be substantially prejudiced if SDCC is allowed to enforce its claims and if DFP has to rebrand their event. (*Id.*) These arguments are largely moot. DFP has already renamed their event "FanX Salt Lake Comic Convention" and there is no evidence of harm or prejudice as a result of this re-branding. (Doc. No. 513 at 7–8.) Accordingly, DFP has also failed to satisfy the fourth element of an equitable estoppel defense.

Consequently, as DFP has produced no evidence to sufficiently establish the second, third, and fourth elements delineated *supra* p. 4, DFP's "affirmative defense of estoppel fails." *AirWair Int'l Ltd. v. Schultz,* 84 F. Supp. 3d 943, 959 (N.D. Cal. 2015).

The Court notes that DFP also argues that SDCC acquiesced to the use of "Comic Con" by infringers for decades. (Doc. No. 508-1 at 5–7.) However, DFP advantageously glosses over the fact that acquiescence is a distinct defense, separate from equitable estoppel. Explicitly, "[e]stoppel by acquiescence includes the two elements of laches—(1) plaintiff's unreasonable and inexcusable delay, (2) inducing the belief that it has abandoned its claim against the alleged infringer—and adds (3) affirmative conduct inducing the belief that it has abandoned its claim against the infringer, and (4) detrimental reliance by infringer." *E & J Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994).

Without citing to the abovementioned elements, DFP instead directs the Court to the 103 different events with "comic con" in their name to demonstrate acquiescence. (Doc. No. 508 at 5–7.) This evidence is altogether completely unhelpful. Beyond this basic issue, DFP's claim also suffers from several glaring oversights. The most significant of those being that there is no evidence of an affirmative act by SDCC that would have led DFP to believe that SDCC abandoned its claim against them. *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1075 (D.Or. 2008) ("The distinguishing feature of the acquiescence defense is the element of *active* or *explicit* consent to the use of an allegedly infringing mark.") (emphasis in the original).

In sum, the Court **DENIES** DFP's motion for ruling on estoppel defense.[4]

---

[4] Though the Court need not reach this issue, the Court finds that it must again correct DFP and their mistaken understanding of how a trademark is abandoned under the Lanham Act. DFP repeatedly asserts that SDCC "abandoned" its trademark "comic con" after it withdrew its application for "comic con" with the United States Patent and Trademark Office ("USPTO"). (Doc. No. 508-1 at 4–5.) However, abandonment of trademarks occurs through nonuse. *See* 15 U.S.C. § 1127. Specifically, to show abandonment through nonuse, the party claiming abandonment must prove both the trademark owner's (1) "discontinuance of trademark use" and (2) "intent not to resume such use[.]" *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 935 (9th Cir. 2006) (citation omitted). DFP does not produce evidence to establish either of the foregoing elements.

B.  DFP's Unclean Hands Defense is Meritless

DFP asserts that SDCC cannot enforce its trademark rights because it engaged in deceitful and fraudulent conduct when it procured its trademark registration for "Comic-con" with the USPTO. (*See generally* Doc. No. 510.) In opposition, SDCC contends that DFP has again failed to satisfy the requisite elements to sustain an unclean hands defense. (*See generally* Doc. No. 511.)

"Unclean hands is a defense to a Lanham Act infringement suit." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987). The hallmark of an unclean hands defense is that "it is essential that the plaintiff should not in his trade-mark . . . be himself guilty of any false or misleading representation[.]" *Worden & Co. v. Cal. Fig Syrup Co.*, 187 U.S. 516, 528 (1903). Moreover, unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). Accordingly, to prevail on a defense of unclean hands, "the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 (9th Cir. 2003) (citation omitted), *implied overruling on other grounds by Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010).

Before reaching the merits, the Court highlights that it agrees with SDCC in that DFP's unclean hands defense is simply another attempt to litigate their fraud on the USPTO claim. (Doc. No. 511 at 2.) DFP admitted as much during the pre-trial conference.

> **The Court:** Okay, we've got an unclean hands defense that is challenged by the Plaintiff, in essence, with regard to whether or not inequitable conduct goes to the Judge or Jury.
> **Ms. Bjurstrom:** The other concern I have with this, your honor, is the only unclean hands I've ever heard is this fraud on the trademark office that you

---

Instead, DFP clings to the legally erroneous belief that withdrawal of a trademark application equals abandonment of a trademark.

| | |
|---|---|
| 1 | have struck from the pleadings, and that is not an issue in this case. |
| 2 | . . . |
| 3 | **Mr. Sears**: So the predicates--the factual predicates are essentially what was put forward as a fraudulent procurement of the trademark registration claim. However, there wasn't such a claim that was stricken. |
| 4 | . . . |
| 5 | **Ms. Bjurstrom:** Your honor, you've denied leave to amend in this case, based on futility. And it's very clear there was no fraud on the trademark office. And unclean hands--the only equitable assertion here by the Plaintiff will be in connection with the request for injunctive relief. |

(Doc. No. 265 at 12:5–14:1.)

DFP then filed a motion in limine to allow them to introduce their unclean hands evidence, (Doc. No. 319-1), which was denied, (Doc. No. 340). Consequently, DFP's purported evidence of fraud has worn two different hats: (1) under a theory of fraud on the USPTO; and (2) pursuant to an unclean hands theory of defense. Presently, DFP seeks to use the evidence to support their unclean hands defense. However, the defense still fails.

First, the Court corrects DFP and their mistaken belief that an unclean hands defense can be established by a preponderance of the evidence. (Doc. No. 517 at 5.) Case law makes clear that an unclean hands defense must be established with clear and convincing evidence. *See e.g., Pom Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 833 (9th Cir. 2011); *FLIR Sys., Inc. v. Sierra Media, Inc.*, 965 F. Supp. 2d 1184, 1193 (D. Or. 2013); *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004). Thus, DFP's use of *Vuitton Et Fils S.A. v. J. Young Enter., Inc.*, 644 F.2d 769, 775–76 (9th Cir. 1981), is unconstructive. (Doc. No. 517 at 5.)

The Court now turns to the merits of DFP's motion. To support their motion, DFP highlights that when SDCC initially filed an application to federally register "Comic-Con" on September 15, 2005, the USPTO refused to register the mark stating that it was descriptive. (Doc. No. 510-1 at 5.) Thereafter, to defeat the rejection, DFP asserts that SDCC falsely stated to the USPTO that the rejection of "Comic-Con" for mere descriptiveness was overcome based on SDCC's long and <u>exclusive</u> use of Comic-Con.

(*Id.* at 6 (emphasis added).) However, DFP alleges that at the time SDCC filed its response to the USPTO, it knew that several other comic events used "comic con" in their event name. (*Id.* at 7.) Thus, according to DFP, SDCC lied to the USPTO to procure its trademark "Comic-Con." (*Id.* at 5–7.) DFP's smoking gun is the declaration of Ms. Desmond where she stated that SDCC was the first to use the "Comic-Con" mark in interstate commerce and that their use of the mark was continuous and exclusive for over 36 years. (*Id.* at 6.)

Presently, all the Court is presented with is a declaration and DFP's specific perspective on the statements expressed by Ms. Desmond. This evidence falls quite short of the clear and convincing standard of evidence DFP must produce to establish an unclean hands defense. *See Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982) ("[O]nly a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands.").

Moreover, and most notably, the Court still finds no evidence of fraud. DFP asserts that Ms. Desmond's declaration declared under penalty of perjury that the "Comic-Con" mark was used exclusively for over thirty-six years. (Doc. No. 510-1 at 6.) However, DFP mischaracterizes Ms. Desmond's statements. For clarity, the relevant portions of the declaration are as follows:

> 4. The COMIC-CON mark ("the Mark") has been used by the Applicant with respect to the services of the Applicant for over 36 years. The Mark was first used in interstate commerce with respect to the services of the Applicant at least as early as 1970.
> 5. The Mark has been used continuously and exclusively in interstate commerce <u>in connection with the services</u> listed in the within application by the Applicant for over 36 years.

(Doc. No. 439-1 at 8 (emphasis added).)

Thus, looking at the entire statement in context, Ms. Desmond stated that the mark was used exclusively "in connection" with SDCC's specific services. Not that SDCC used the mark exclusively as DFP infers. Moreover, Ms. Desmond testified that what she meant by "continuously" and "exclusively" was that SDCC has always used the "Comic-Con"

mark "for everything [it] do[es]." (Doc. No. 511-1 at 8:7–11.) Thus, Ms. Desmond stated that she was not trying to declare that SDCC was the only company to use the mark. (*Id.* at 8:12–17.)

In sum, DFP's unclean hands defense hinges on the unfounded assertions that Ms. Desmond made her declaration to the USPTO deceitfully and with bad faith. However, there is simply no evidence to support this theory other than DFP's own interpretation of the statements made in the declaration—statements DFP mischaracterizes. Based on this, the Court **DENIES** DFP's request that the Court enter judgment in their favor pursuant to their defense of unclean hands. *See Dollar Sys., Inc.*, 890 F.2d at 173 (explaining that the doctrine of unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted."); *see also Citizens Fin. Grp. Inc.*, 383 F.3d at 129 ("Because a central concern in an unfair competition case is protection of the public from confusion, courts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands.") (citation omitted); *Kearney & Trecker Corp. v. Cincinnati Milacron Inc.*, 562 F.2d 365, 371 (6th Cir. 1977) (highlighting that "[f]raud or unclean hands are not to be lightly inferred. They must be established by clear, unequivocal and convincing evidence.") (citation and internal quotation marks omitted).

## CONCLUSION

For the reasons explained above, both DFP's motion for ruling on estoppel defense and their motion for ruling on unclean hands defense are **DENIED**.

**IT IS SO ORDERED**.

Dated: August 23, 2018

Hon. Anthony J. Battaglia
United States District Judge