# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COMIC CONVENTION, a California non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAN FARR PRODUCTIONS, a Utah limited liability company, DANIEL FARR, an individual, BRYAN BRANDENBURG, an individual,<br><br>Defendants. | Case No.: 14-cv-1865-AJB-JMA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**<br><br>(Doc. No. 419) |

Trademarks function as roadmaps for consumers. In essence, whether they are symbols, slogans, designs, words, or a combination of elements, their vital function is to help companies distinguish their goods and services from others. In 2014, in an attempt to protect its three incontestable trademarks filed with the United States Patent and Trademark Office, Plaintiff San Diego Comic Convention ("SDCC") filed a complaint against Defendants Dan Farr Productions, Daniel Farr, and Bryan Brandenburg (collectively referred to as "DFP") alleging trademark infringement and false designation of origin. Three years of litigation later, and after an eight-day jury trial, a jury concluded that SDCC has three valid protectable trademarks and that DFP had infringed on each. As a result,

1

SDCC now moves for a permanent injunction. (Doc. No. 419.) DFP opposes the motion. (Doc. No. 513.) On May 31, 2018, the Court held a hearing on the matter and then took the motion under submission. (Doc. No. 504.) As will be explained in greater detail below, SDCC's request for a permanent injunction is **GRANTED IN PART AND DENIED IN PART**.

## DISCUSSION

Based on the trademark infringement verdict in its favor, SDCC requests that this Court issue an injunction on the following matters[1]:

1. An Order enjoining Defendants from any use of SDCC's three trademarks asserted in this case, or any marks confusingly similar thereto including, but not limited to, any mark that consists of or incorporates the specific word combinations "Comic Con," "Comic-Con," "Comicon," or "Comic Convention" or the phonetic equivalents of such specific word combinations, in the name of any comic or popular arts convention or in connection with the promotion or for the purposes of promoting, advertising or marketing any comic or popular arts convention;
2. An Order directing Defendants to immediately destroy all merchandise and all marketing materials bearing the specific word combinations "Comic Con," "Comic-Con," "Comicon," or "Comic Convention" or the phonetic equivalents of such specific word combinations in the name of any comic or popular arts convention;
3. An Order enjoining Defendants from the use or operation of any website domain name or URL that consists of or incorporates the specific word combinations "Comic Con," "Comic-Con," "Comicon," or "Comic Convention" or the phonetic equivalents of such specific word combinations; and
4. An Order enjoining Defendants from the use or operation of any social media site that consists of or incorporates the specific word combinations "Comic Con," "Comic-con," "Comicon," or "Comic Convention" or the phonetic equivalents of such specific word combinations in the name of any comic or popular arts convention.

---

[1] The three incontestable trademarks at issue in this case are: (1) Comic-Con; (2) Comic Con International; and (3) the Comic Con International mark with the eye logo design. (Doc. No. 392 at 6.)

(Doc. No. 419-1 at 10–11.)

In opposition, DFP asserts that an injunction would serve no purpose in this matter as they have already rebranded their event "FanX Salt Lake Comic Convention" and they do not intend to use "Salt Lake Comic Con" in the future. (Doc. No. 513 at 5.) Moreover, DFP argues that SDCC's proposed injunction is altogether too broad. (*Id.*)

Under the Lanham Act, "the district court [has] the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116(a)). In fact, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

In order for the Court to grant a permanent injunction, SDCC must demonstrate "(1) actual success on the merits; (2) a likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships favoring Plaintiff; and (4) that an injunction will advance the public interest." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012).

As an initial matter, the Court wishes to address four particular arguments made by DFP in their opposition brief: (1) that there is currently no threat of harm for an injunction to prevent; (2) their discontinuance of "Salt Lake Comic Con" is effective; (3) that DFP has a good faith intent not to resume use of "Salt Lake Comic Con;" and (4) no injunction should be entered because no proper scope can be fixed. (Doc. No. 513 at 6–10.)

As to the first three arguments, the Court finds them wholly unpersuasive. DFP cites to various Supreme Court cases to support their belief that an injunction should not be issued as there is no future threat of trademark infringement due to their decision to change the name of their event. (*Id.* at 6.) However, the two cases DFP cites to are factually inapplicable. In *Dombrowsi v. Pfister*, 380 U.S. 479, 481 (1965), the Supreme Court was

3

14-cv-1865-AJB-JMA

analyzing the applicability of an injunction related to the Civil Rights Act. Similarly, in *United States v. W.T. Grant Co.*, 345 U.S. 629, 630–31 (1953), the Supreme Court was presented with a civil action brought by the government to enjoin violations of the Clayton Act prohibitions against interlocking corporate directories. Neither of the two cases cited by DFP dealt with permanent injunctions in the context of trademark infringement.

Moreover, DFP provides no case law from this circuit or from other circuits that demonstrates that their "good faith intent" not to use SDCC's trademarks is a factor the Court should take into consideration in determining whether an injunction is warranted. The Court reiterates that injunctions are the primary and most favored form of relief for trademark infringement cases and this circuit has delineated four very specific factors, listed *supra* p. 3, courts must analyze in these contexts. *Wecosign, Inc.*, 845 F. Supp. 2d at 1083 (citation omitted). Thus, the majority of the Court's analysis will focus on these four elements.

Finally, DFP's contention that no "proper scope can be fixed" and thus no injunction can be issued is meritless. (Doc. No. 513 at 9–10.) DFP injects into this section their own beliefs about how SDCC "pursued a mishmash of infringement theories" and as a result "it is impossible to tell what the jury thought DFP had done wrong." (*Id*.) However, DFP's personal opinions on how SDCC prosecuted this matter does not convince this Court that an injunction is unjustified.

Now, turning to the merits of SDCC's motion, the Court finds that SDCC's proposed injunction may be classified into three broad classes: (1) an injunction to bar DFP from use of the phrases "Comic Con" or "Comic-Con"; (2) an injunction to prevent DFP's use of Comic-Con's phonetic equivalents or any confusingly similar phrases; and (3) an injunction to block DFP from use of the phrase "Comic Convention." (Doc. No. 419-1 at 10–11.) This Order will thus proceed by analyzing each of the following categories individually to determine if an injunction should issue.

///

///

A. A Permanent Injunction as to the Phrases "Comic Con" or "Comic-Con"

All four of the abovementioned factors weigh in favor of enjoining DFP from use of "Comic-Con" and "Comic Con" in the name of any comic or popular arts event.

As to the first element, as already discussed, a jury found that all three of SDCC's trademarks were valid and that DFP had infringed on all of them. (Doc. No. 395 at 2–5.) This jury verdict could not be a clearer indicator of SDCC's likelihood of success on the merits of its trademark infringement claim.

Second, SDCC has demonstrated that it will suffer "actual irreparable harm" if DFP chooses to use "Comic-Con" or "Comic Con" in the name of any present or future comic arts or popular fiction events. *See Herb Reed Enter., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (detailing that following two Supreme Court cases—*eBay* and *Winter*—the Ninth Circuit has held that "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action."); *see also Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) (explaining that the standard for a preliminary injunction is essentially the same as a permanent injunction except that "likelihood of" is replaced with "actual").

At trial, SDCC produced evidence that demonstrated that DFP's use of "Comic Con" in their event name had resulted in SDCC suffering from loss of goodwill and a potential inability to control its reputation. (Doc. No. 419-1 at 4.) This was supported by testimony from consumers who thought that DFP's convention was related to SDCC's event, that consumers voiced complaints about DFP's convention to SDCC, and that DFP was aware of 30 to 50 instances of confusion. (*Id.*; Doc. No. 383 at 118:12–119:1; Tr. Exs. 3, 64, 65, 73A, 73B, 73C.) Moreover, the jury's trademark infringement verdict in favor of SDCC further supports a finding of irreparable harm. *See Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993), *abrogated on other grounds by Roe v. Anderson*, 134 F.3d 1400 (1998) ("Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted."). Thus, this second factor is satisfied.

Third, the balance of hardships tips in SDCC's favor as there will be no harm to DFP as an "injunction would merely require [DFP] to comply with the law." *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1113 (S.D. Cal. 2012); *see also Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135–36 (9th Cir. 1986) ("If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [the trademark holder] substantial protection of its trademark.").

Moreover, DFP's event only began in 2013, whereas SDCC has been using the mark for over forty-five years. (Doc. No. 96 ¶ 8; Doc. No. 99-1 ¶¶ 4–5.) Consequently, an injunction asking DFP to change the name of their event would be easier and less injurious than requiring SDCC to do so. In fact, as DFP persistently highlights, after the jury trial, they started the process of changing their event name and as far as the Court can see, the process has been completed.[2] *See Amoco Prod. Co.*, 480 U.S. at 542 (explaining that before issuing an injunction order, courts must weigh "the competing claims of injury and [] consider the effect on each party of the granting or withholding of the requested relief."). Accordingly, the balance of hardships does not just tip, but nosedives in favor of SDCC.

Fourth, an injunction is in the public interest because "[t]he public has an interest in avoiding confusion between two companies' products." *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009); *see also State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005) ("Trademarks protect the public from confusion by accurately indicating the source of a product."); *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1178 (C.D. Cal. 2017) (noting that as there were "serious questions as to whether consumers [were] likely [to] be confused between the products, the public interest factor weigh[ed] in favor of issuing an injunction.").

---

[2] The Court takes judicial notice of DFP's FanX Salt Lake Comic Convention website. FANX SALT LAKE COMIC CONVENTION, http://www.fanxsaltlake.com (last visited July 9, 2018).

Consequently, as to the phrases "Comic-Con" and "Comic Con," the Court without hesitation concludes that DFP should be enjoined from using these phrases in the name of any comic arts or popular fiction events they produce.

B.  <u>A Permanent Injunction as to the Phonetic Equivalents of Comic-Con and Any Confusingly Similar Marks</u>

Through the use of the "safe distance rule," SDCC argues that DFP should be enjoined from using the phonetic equivalents of its trademarks. (Doc. No. 419-1 at 10–11.) DFP makes no explicit argument against this request, but in general argues that the proposed injunction is too broad. (Doc. No. 513 at 10.)

"[A]n infringer must keep a fair distance from the 'margin line[]'" of a trademark. *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1323 (9th Cir. 1997). Specifically,

> [A trademark infringer] should have its conduct carefully scrutinized in future use and should not be allowed to claim the same leniency accorded a good faith user who starts use of the mark which the enjoined defendant has shifted to. Otherwise, the enjoined defendant could simply make a tiny change and start a new trademark contest all over again in the context of the contempt hearing as to the use of the "new" format.

*Id.* (citing *McCarthy on Trademarks* § 30.13[1] (1996)). Utilizing this standard, the Court finds that a permanent injunction enjoining DFP from using any phonetic equivalents of "Comic-Con" such as "Comicon" or "ComiKon" or any confusingly similar phrase is warranted.

As already noted, an injunction in a trademark infringement case is meant to prevent irreparable harm to the plaintiff. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014). Here, if DFP were allowed to produce a new comic or popular arts event named "ComiKon" or "ComicKon," as the pronunciation of the phrases remain identical to SDCC's trademarks, a high likelihood of consumer confusion would still exist. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011) (holding that the similarity of two marks can be tested on three levels: "sight, sound,

and meaning.");[3] *see also Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1126–27 (S.D. Cal. 2014) (finding the marks HANGINOUT and HANGOUTS slightly similar); *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 491–92 (2d Cir. 1988) (finding a likelihood of confusion between B WEAR and BEE WEAR for women's clothing); *Baker v. Simmons Co.*, 307 F.2d 458, 464–65 (1st Cir. 1962) (finding SIMMONS and SIMMONDS essentially identical in sound). Thus, injury to SDCC could still occur.

Consequently, as DFP was found by the jury to be infringers of SDCC's trademarks, they are required to "keep a safe distance away from the margin line." *Plough, Inc. v. Kreis Laboratories*, 314 F.2d 635, 639 (9th Cir. 1963) (citation omitted). Thus, DFP is enjoined from use of any phonetic equivalent of SDCC's trademarks or any confusingly similar marks in a comic or popular arts event or convention name. *See Wolfard Glassblowing Co.*, 118 F.3d at 1322 ("When enforcing injunctions that enjoin use of any mark confusingly similar to the protected mark, courts should . . . simply evaluate whether or not the new mark is confusingly similar to the protected mark . . . ."); *see also Serv. Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1124 (7th Cir. 1988) (explaining that a district court has "substantial discretion to determine how close [is] 'too close . . . .'").

C.   An Injunction as to the Phrase "Comic Convention"

SDCC also requests that the Court dictate that DFP be prohibited from using "Comic Convention" in their event name or any related comic or popular arts convention. (Doc. No. 419-1 at 10–11.) In opposition, DFP argues that SDCC cannot credibly deny that comic "convention" is generic. (Doc. No. 513 at 10.) Moreover, DFP contends that restraining them from using the phrase "comic convention" would make the injunction overbroad as well as prohibit them from engaging in legal conduct. (*Id.* at 11.) The Court agrees with DFP.

---

[3] The Court notes that the jury instructions in this case repeated this standard—"Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar." (Doc. No. 394 at 23–24.)

8

14-cv-1865-AJB-JMA

Turning to the four criterion delineated *supra* p. 3, SDCC has not demonstrated the likelihood that it can succeed on a claim of trademark infringement against DFP for the use of "comic convention" in their event name. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) ("[M]ore precisely, because we are at the preliminary injunction stage, [a plaintiff] must establish that it is likely to be able to show… a likelihood of confusion.") (citation omitted). Nor has SDCC produced evidence that it has suffered "actual harm" by DFP's use of "Comic Convention." Further, the Court is not persuaded that the balance of hardships tips in SDCC's favor or that an injunction will advance the public interest. SDCC does not own the trademark to "Comic Convention" and competitors in this industry should be allowed to use the word "convention." *See Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 538 (4th Cir. 2004), *abrogated on other grounds by Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481 (2018) ("From a policy standpoint . . . if a business were permitted to appropriate a generic word as its trademark, it would be difficult for competitors to market their own brands of the same product. Imagine being forbidden to describe a Chevrolet as a 'car' or an 'automobile' . . . .") (citation and internal quotation marks omitted).

On a final note, the Court highlights that during opening statements at trial, SDCC stated that it had suggested that DFP just name their convention "Salt Lake Comic Convention." (Doc. No. 381 at 24:23–25.) Post-trial and post-verdict, DFP did exactly what SDCC asked. However, paradoxically, SDCC now requests this Court enjoin them from use of "convention" in any event name. The Court refrains from doing so.

In sum, SDCC has produced no evidence to suggest that a permanent injunction enjoining DFP from use of "comic convention" in their event name is justified. Furthermore, the Court is not persuaded that prohibiting DFP from using "convention" in their event name would be a fair application of the "safe distance rule." *See Forever 21, Inc. v. Ultimate Offprice, Inc.*, No. 2:10-cv-05485-ODW (JCGx), 2013 WL 4718366, at *3 (C.D. Cal. Sept. 3, 2013) (explaining that the margin line requirement "exists to protect the plaintiff from the scenario where the enjoined infringer makes an insignificant change[,]"

however "the infringer is not required to stay so far away from the margin line that it is put out of business."). Thus, this request is **DENIED**.

D.     Remaining Issues

   *i.     Destruction Order*

SDCC's proposed injunction also requests that DFP destroy all of their merchandise and all marketing materials bearing the specific word combinations "Comic Con," "Comic-Con," or any phonetic equivalents. (Doc. No. 419-1 at 11.) DFP argues that they should not be required to destroy their "historical archive" that includes "archival materials" from their past nine shows. (Doc. No. 513 at 15.) Moreover, DFP contends that if an injunction is to be issued, any order requiring destruction of merchandise or advertising materials would be punitive. (*Id.*) The Court partially agrees with DFP, but only under a narrow set of circumstances.

First, DFP is correct that "[i]t has been held that where an injunction is issued under the Lanham Act enjoining an infringer from further infringement, the rights of the plaintiff are adequately protected and an order requiring destruction of infringing articles, though permitted may be unnecessary." *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 293 (C.D. Cal. 1992). Here, DFP's decision to change the name of their event indicates to the Court that SDCC will not suffer any future harm as a result of DFP retaining their "historical archive" of T-shirts and marketing materials. However, this finding is based on the idea that DFP is not planning on selling infringing goods at any future FanX events or employing archival materials in their advertisements, products or marketing brochures and flyers. Consequently, so long as DFP simply wishes to maintain their "historical archive," but not sell, distribute, reproduce, republish, or make any commercial use of any of these "archival materials," the Court finds a destruction order is unnecessary. If, on the other hand, there is any plan or potential future sale, distribution, reproduction, republication, or commercial use, then they must be destroyed consistent with this Order.

///

///

### ii. DFP's Forwarding Address

Additionally, SDCC asks that DFP cease use or operation of any website domain name or URL that consists of or incorporates "Comic Con" or its phonetic equivalents. (Doc. No. 419-1 at 11.) DFP asserts that they should not be deprived of their forwarding address, www.saltlakecomiccon.com. (Doc. No. 513 at 12.) The Court notes that as of the date of this Order, DFP's website domain name is www.fanxsaltlake.com. FANX SALT LAKE COMIC CONVENTION, http://www.fanxsaltlake.com (last visited July 6, 2018). There is no issue with this domain name, but the forwarding address is problematic.

Registration of a domain name without more does not constitute service mark or trademark infringement. *See Brookfield Commc'ns, Inc.*, 174 F.3d at 1052. Thus, domain names present a unique problem under the Lanham Act as they "are used for both a non-trademark technical purpose, to designate a set of computers on the Internet, and for trademark purposes, to identify an Internet user who offers goods or services on the Internet." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 956 (C.D. Cal. 1997). When a domain name is used only to indicate an address on the Internet, the domain name is not functioning as a trademark. *See Walt-West Enters., Inc. v. Gannett Co., Inc.*, 695 F.2d 1050, 1059–60 (7th Cir. 1982). On the other hand, under certain circumstances, domain names can function as trademarks, and therefore can be used to infringe trademark rights. *See Lockheed Martin Corp.*, 985 F. Supp. at 956.

To guide its analysis, the Court turns to *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1035 (9th Cir. 2011). In *GoPets*, the Ninth Circuit dictated that a defendant must do something more than simply register the domain name for the domain name to violate the Lanham Act. *Id*. at 1035. Thus, in this case, when the defendant's website falsely indicated that it was "GoPets.com the official online website," the court found that the district court had properly held that "in so doing the [defendants] violated the Lanham Act." *Id*.

Thus, at issue here is whether DFP's use of www.saltlakecomiccon.com as a forwarding address is an action that constitutes something more than registration. In this instance, while recognizing that mere registration of a domain name is not sufficient to

constitute a Lanham Act violation, the Court finds that DFP's use of SDCC's trademark "comic con," in its forwarding address, infringes SDCC's trademark rights.

First, DFP has not simply registered a domain name. Here, the infringing domain name acts beyond the registration and instead directs, steers, and points a consumer to DFP's comic arts and popular fiction event—FanX Salt Lake Comic Convention. It is without a doubt that a side effect of this forwarding address, especially in this case where SDCC and DFP's events are nearly identical, is consumer confusion.

DFP vehemently argues that by stripping them of their forwarding address, the Court will impair the public interest by making it more difficult for their fan base to locate their website. (Doc. No. 513 at 13.) Unfortunately, DFP must be mistaken as to what constitutes "public interest." As far as the Court is concerned, there is no public interest in making it easier for a fan to find a business and even if there was, SDCC's public interest in diffusing consumer confusion would outweigh the public interest DFP asserts here. Moreover, the Court finds this argument bizarre considering the capability and capacity of the internet and search engines such as Google.com.

Furthermore, the Court disagrees that just because there is no affiliation with SDCC on DFP's new FanX website that consumer confusion will not occur. In contrast, the Court can hypothesize a scenario where a consumer, unaware about this litigation, types www.saltlakecomiccon.com into the search bar, gets re-directed to www.fanxsaltlake.com, and due to the automatic action of the forwarding address, believes that FanX is associated with SDCC.

On a final note, the Court finds that DFP has mischaracterized *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1179 (9th Cir. 2010). DFP employs *Tabari* to argue that their forwarding address should be treated as a registration. (Doc. No. 513 at 12–13.) However, DFP fails to recognize or chooses to ignore that the portion of *Tabari* they cite to involves an analysis of the nominative fair use defense. This is not the task before the Court nor has DFP explicitly brought or argued this defense.

In light of all of these factors, the Court enjoins DFP from the use of their forwarding address www.saltlakecomiccon.com. Moreover, DFP is further enjoined from using, creating, or operating a website domain name or URL that feigns a relationship with SDCC through the use of SDCC's three trademarks asserted in this case, "Comic Con," its phonetic equivalents, or any confusingly similar mark. *See Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97 Civ. 0629 (KNW), 1997 WL 133313, at *6 (S.D.N.Y. 1997) (holding that the defendant did "more than merely register a domain name; he created a home page that uses plaintiff's mark as its address, conveying the impression to Internet users that plaintiff is the sponsor of defendant's web site.").

### iii. Use of the "Formerly Known As" Reference

Finally, DFP requests that if an injunction is to be issued, they should be allowed to identify their event as "Formerly Salt Lake Comic Con" for up to two years. (Doc. No. 513 at 13–14.) SDCC asserts that the "formerly known" reference presents the same dangers as infringement. (Doc. No. 470 at 6.)

To support their demand, DFP resorts to philosophical arguments that try to shine light on the fact that SDCC did not sue DFP for using "Comic Con" in reference to other conventions and that DFP principals visit and interact with other conventions. (Doc. No. 513 at 13–14.) These arguments not only miss the mark, but are also altogether confusing.

Looking to prevalent and applicable case law from this district, it has been held that "[p]recluding defendant from referencing its past affiliation with plaintiff in a manner that causes consumers to be misled or confused about the origin of defendant's services or its association with plaintiff serves the key objective of the Lanham Act." *See Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, 182 F. Supp. 3d 1065, 1081 (E.D. Cal. 2016). In the present matter, at trial, SDCC presented an abundant amount of evidence of actual confusion. As already discussed, Mr. Brandenburg himself admitted that he was aware of around 30 to 50 instances of consumer confusion. (Doc. No. 383 at 118:12–119:1.)

Bearing this in mind, the Court believes that the threat of confusion will linger if DFP is allowed to state on their websites, advertisements, social media sites, and marketing materials "formerly known as Salt Lake Comic Con." This is especially critical for future consumers who visit DFP's website, attend their event, or receive their advertising materials and are not acquainted with this litigation. Thus, the Court finds an injunction order enjoining DFP from employing the "formerly known as" reference justified.

The Court notes that this foregoing conclusion is in fact supported by a case cited to by DFP. DFP utilizes *Golden Door, Inc. v. Odisho*, 437 F. Supp. 956, 968 (N.D. Cal. 1977), to argue that they should be allowed to use the "formerly known as" reference for up to two years. (Doc. No. 513 at 14.) However, *Golden Door* involved a case where there was no evidence in the record of actual confusion between the plaintiff and defendant's businesses or actual competition between them. *Id.* at 961. This is unquestionably not the case here. Accordingly, seeking to preserve the vital objective of the Lanham Act, the Court enjoins DFP from using the "formerly known as" reference on their websites, social media accounts, or advertising materials.

## **CONCLUSION**

Within the structure of the present matter, the Court **ISSUES** the following narrowly tailored **INJUNCTION** in its considerable discretion. *See Church of Holy Light of Queen v. Holder*, 443 F. App'x 302, 303 (9th Cir. 2011) (emphasizing that courts enjoy "considerable discretion in fashioning suitable relief and defining the terms of an injunction[.]") (citation omitted); *see also Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990) (holding that "[t]here are limitations on this discretion; an injunction must be narrowly tailored to give only the relief to which plaintiffs are entitled.").

   1) DFP is enjoined from use of SDCC's three trademarks asserted in this case, any confusingly similar marks (i.e. Comicon or Comiccon), or any phonetic equivalents, (i.e. ComiKon or ComicKon), in the name of any comic or popular arts convention or event or in connection with the promotion,

advertising, products or marketing of any comic or popular arts convention or event. This does not include referencing San Diego Comic Con or other comic conventions that use "Comic Con" in their name in advertising or marketing materials.

2) DFP is enjoined from the use or operation of any social media site (i.e. Facebook, Twitter, Instagram, Pinterest, or Snapchat) that incorporates into the name of any comic arts, popular fiction, or subject related event, any of SDCC's three trademarks asserted in this case, any confusingly similar marks (i.e. Comicon or Comiccon), or any phonetic equivalents, (i.e. ComiKon or ComicKon).

3) DFP is enjoined from using a "formerly known as Salt Lake Comic Con" reference on any website, social media site, publicity documents, and/or advertising or marketing materials that are connected to any comic arts or popular fiction events or subject related conventions they produce.

4) DFP is enjoined from registering or using a domain name that incorporates any of SDCC's three trademarks asserted in this case, any confusingly similar mark (i.e. Comicon or Comiccon) or any phonetic equivalents (i.e. ComiKon or ComicKon) in relation to any comic arts or popular fiction conventions or subject related events or in such a way that would lead consumers to believe that DFP is sponsored by or related to SDCC.

5) Finally, DFP is prohibited from utilizing www.saltlakecomiccon.com as a forwarding address to their www.fanxsaltlake.com website or to any subject related website.

6) DFP is not required to destroy all of their merchandise and all marketing materials bearing the specific word combinations "Comic Con," "Comic-Con," or any phonetic equivalents, so long as DFP simply wishes to maintain their "historical archive," but not sell, distribute, donate, give away, reproduce, republish, display, depict or make any commercial use of any of

15

14-cv-1865-AJB-JMA

these "archival materials." If, on the other hand, there is any plan or potential future sale, distribution, donation, reproduction, republication, display, depiction or commercial use, of said materials exceeding the archival needs of DFP, then they must be destroyed consistent with this Order.

The Court retains jurisdiction to enforce the terms of this Order, injunction, and its compliance. Within **thirty (30) days** from the date of this Order, DFP must be in compliance with this injunction Order and file with the Court and serve on SDCC a report in writing under oath, setting forth the manner and form in which DFP has complied with the injunction order.

Thus, in sum, the Court **GRANTS IN PART AND DENIES IN PART** SDCC's motion for permanent injunction. The Clerk is ordered to state the injunction terms in the judgment in this case, verbatim.

**IT IS SO ORDERED**.

Dated: August 23, 2018

Hon. Anthony J. Battaglia
United States District Judge