UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COMIC CONVENTION, a California non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAN FARR PRODUCTIONS, a Utah limited liability company; DANIEL FARR, an individual; and BRYAN BRANDENBURG, an individual,<br><br>Defendants. | Case No.: 14-CV-1865 AJB (JMA)<br><br>**ORDER DENYING DEFENDANTS' EX PARTE APPLICATION TO STAY ENFORCEMENT OF JUDGMENT**<br><br>(Doc. No. 553.) |

Presently before the Court is Defendants' ex parte application to stay enforcement of judgment. (Doc. No. 553.) Plaintiff opposes the motion. (Doc. No. 560.) As explained more fully below, the Court **DENIES** Defendants' ex parte application to stay enforcement of judgment.

## **BACKGROUND**

The Court is already well-versed as to the events leading up to the institution of this action. Thus, for the purposes of this Order, the Court will only provide a narrow review of this lawsuit's factual and procedural background.

On August 7, 2014, Plaintiff San Diego Comic Convention ("SDCC") filed a lawsuit

1

against Defendants Dan Farr Productions, LLC ("DFP"), Daniel Farr, and Bryan Brandenburg (collectively, "Defendants") alleging two causes of action: (1) Federal Trademark Infringement, 15 U.S.C. § 1114; and (2) False Designation of Origin, 15 U.S.C. § 1125(a). (*See generally* Doc. No. 1.) On August 23, 2018, this Court entered final judgment, awarding SDCC both monetary and injunctive relief. (Doc. No. 553-1 at 2; *see generally* Doc. Nos. 538, 543.) In relevant part, the injunction enjoined Defendants from the following:

> 1. The use of SDCC's three trademarks asserted in this case, any confusingly similar marks, or any phonetic equivalents, in the name of any comic or popular arts convention or event or in connection with the promotion, advertising, products or marketing of any comic or popular arts convention or event.
>
> 2. The use or operation of any social media site (i.e. Facebook, Twitter, Instagram, Pinterest, or Snapchat) that incorporates into the name of any comic arts, popular fiction, or subject related event, any of SDCC's three trademarks asserted in this case, any confusingly similar marks, or any phonetic equivalents.
>
> 3. Registering or using a domain name that incorporates any of SDCC's three trademarks asserted in their case, any confusingly similar mark or any phonetic equivalents in relation to any comic arts or popular fiction conventions or subject related events or in such a way that would lead consumers to believe that DFP is sponsored by or related to SDCC.

(Doc. No. 538 at 14–15.) The final judgment was in the amount of $3,982,486.84. (Doc. No. 543.) On September 14, 2018, Defendants appealed the judgment to the Ninth Circuit. (*See generally* Doc. No. 549.)

On September 18, 2018, Defendants filed the present matter, their ex parte motion to stay enforcement of judgment. (Doc. No. 553.) This Order follows.

/ / /

2

## **LEGAL STANDARD**

A. <u>Modification or Waiver of the Bond Requirement</u>

Federal Rule of Civil Procedure 62(d) permits a stay of the execution of a final judgment pending appeal if the moving party obtains a supersedeas bond. "The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond." Fed. R. Civ. P. 62(d). The Court does have "inherent discretionary authority in setting supersedeas bonds," *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987), and may even "waive the bond requirement if it sees fit." *Townsend v. Holman Consulting Corp.*, 881 F.2d 788, 796-97 (9th Cir. 1989), *vacated en banc on other grounds*, 929 F.2d 1358 (9th Cir. 1990).

"When a party wishes a court to depart from the usual requirement of a full security supersedeas bond, the burden is on the moving party to show reasons for the departure from the normal practice." *Salameh v. Tarsadia Hotel*, No. 09-CV-2739-GPC (BLM), 2015 WL 13158486, at *2 (S.D. Cal. May 19, 2015) (internal citations omitted). "Although the Ninth Circuit has not articulated what factors should be considered when determining whether to waive the bond requirements, courts within the circuit have often considered those laid out in *Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988)." *Schutza v. City of San Diego*, 13-CV-2992-CAB (KSC), 2018 WL 2018041, at *2 (S.D. Cal. Apr. 30, 2018) (citing *ThermoLife Int'l, LLC v. Myogenix*, Case No.: 13-CV-651-JLS (MDD), 2018 WL 1001095, at *1 (S.D. Cal. Feb. 21, 2018) ("In determining whether to waive the posting of a bond, the Court considers what is known as the *Dillon* factors"); *Salameh*, 2015 WL 13158486, at *2 (citing *Dillon* factors); *Kranson v. Fed. Express Corp.*, No. 11-CV-5826-YGR, 2013 WL 6872495, at *1 (N.D. Cal. Dec. 31, 2013) ("Courts in the Ninth Circuit regularly use the *Dillon* factors in determining whether to waive the bond requirement"). The *Dillon* factors are as follows:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court had in the availability of funds to pay the judgment; (4) whether the

> defendant's ability to pay the judgment is so plain that the costs of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Dillon*, 866 F.2d at 904–07.

B. <u>Modification or Stay of the Injunction</u>

Federal Rule of Civil Procedure 62(c) permits a court to "suspend, modify, restore, or grant an injunction," while an appeal is pending from a final judgment that grants an injunction. To determine whether a stay pending appeal under Rule 62(c) should be granted, the court must evaluate the following four *Hilton* factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

# **DISCUSSION**

Defendants' ex parte application requests that the Court reduce the amount of the bond or waive the bond requirement as well as modify or stay the injunction. (Doc. No. 553.)

A. <u>Modification or Waiver of the Bond Requirement</u>

Defendants request that the Court set the bond amount sufficient to secure only the jury's $20,000 damages award, waive the bond requirement as to the fee award, and stay execution of the fee award pending appeal without a supersedeas bond. (*See generally* Doc. No. 553-1.) Defendants contend that "DFP's representatives have made efforts to obtain a supersedeas bond covering the entire amount of the judgment, including the fee awards, but without success." (*Id.* at 7.) SDCC asserts that if the Court reduces the bond amount or stays enforcement of the judgment, it will be unprotected and likely will never be able to collect the full judgment amount from Defendants if Defendants are unsuccessful on appeal. (Doc. No. 560 at 3.)

First, the Court notes that Defendants have not provided the Court with any evidence regarding their contention that sureties will not accept DFP's "going-concern value" as collateral. (Doc. No. 553-1 at 7.) Defendants' affidavits provided in support simply state that sureties will not accept the going-concern value of DFP as collateral. (Doc. No. 553-4 at 3; Doc. No. 553-5 at 4.) Defendants have made no indication of their efforts nor have they provided any support from a bond broker or any objective third party as to whether DFP's going-concern value is sufficient collateral. Therefore, the Court declines to set bond in an amount sufficient to secure only the jury's $20,000 damages award.

Second, the Court finds that the *Dillon* factors do not weigh in favor of waiving the bond requirement. Based on Defendants' ex parte application, the Court is not confident in Defendants' ability to pay the judgment if they are unsuccessful on appeal, and further, Defendants' ability to pay the judgment is not so plain that the costs of a bond would be a waste of money. *See Dillon*, 866 F.2d at 904–07. Defendants plainly admit that "[n]et proceeds from this year's event are healthy but not enough to pay (or bond) the attorney-fees award." (Doc. No. 553-1 at 7.) Further, Defendants do not offer real evidence to establish that they are in such a precarious financial situation that the requirement to post a bond would place other creditors of Defendants in an insecure position. *See Dillon*, 866 F.2d at 904–07. Rather, Defendants claim that the net proceeds are needed from this year's event to fund next year's event. (Doc. No. 553-1 at 7.) Defendants also assert that DFP will be deprived of the resources necessary to prosecute its appeal. (*Id.* at 8.) Again, Defendants do not provide the Court with financial statements or any evidence to support their conclusory statements. Further, Defendants have been able to conduct their business and plan events during the course of this present litigation. Indeed, Defendants recently proposed to add two major law firms (Horvitz & Levy LLP and Procopio, Cory, Hargreaves & Savitch LLP) as attorneys as reflected in the Joint Motion to Amend the Protective Order in this case. (Doc. No. 572) Thus, the Court finds Defendants' arguments for waiving the bond requirement unconvincing.

Third, Defendants assert that SDCC will not be prejudiced by staying enforcement

of the judgment because SDCC "does not need the money." (Doc. No. 533-1 at 10–11.) However, "the issue is not whether they will be harmed," but whether SDCC "will be protected from any loss resulting from being forced to halt execution on the judgment." *See Salameh*, 2015 WL 13158486, at *3. Again based on Defendants' own admissions, SDCC will not be protected from the loss of its judgment if affirmed on appeal since Defendants cannot afford to bond around the fee award. (*See* Doc. No. 533-1 at 7.)

Lastly, Defendants have not offered an alternative plan to a supersedeas bond that would secure SDCC's interests in recovering the *full* amount of the judgment. *See Salameh*, 2015 WL 13158486, at * 2 (citing *Bolt v. Merrimack Pharms, Inc.*, No. S-04-893-WBS DAD, 2005 WL 2298423, at *4 (E.D. Cal. Sept. 20, 2005)). Defendants requesting that the Court set bond in an amount sufficient to secure only the jury's $20,000 damages award is not a sufficient alternative. This does not secure the full amount of the judgment that SDCC was awarded.

Therefore, the Court **DENIES** Defendants' ex parte application for an order reducing the bond amount and staying enforcement of the judgment without posting a supersedeas bond.

B.  Modification or Stay of the Injunction

Defendants seek to exempt the following from the injunction:

1. Maintain and continue operation of social media sites (i.e. Facebook and YouTube) that contain "comiccon" in the URL.

2. Continue to receive emails at domain names "saltlakecomiccon.com" and "slcomiccon.com."

3. Leave intact references to "Salt Lake Comic Con" appearing in legacy content on their website and social media sites.

(Doc. No. 553-1 at 2; Doc. No. 560 at 9.) Defendants contend that they will be irreparably harmed if these items are not exempt from the injunction. However, Defendants have failed

to satisfy the four *Hilton* factors.

First, Defendants have not made a strong showing that they are likely to succeed on the merits. Defendants contend that their post-verdict motions, that this Court denied, raised "serious questions going to the merits." (Doc. No. 553-1 at 7.) This conclusory statement does not establish that Defendants are likely to succeed on the merits.

Second, Defendants have not established they will be irreparably harmed without a stay or modification. Defendants contend that if forced to delete this content, Defendants will lose followers, disrupt existing relationships, and lose legacy content. However, Defendants attracted those followers and established those relationships based on operating social media sties and websites that infringe on SDCC's trademarks. *See The Mytee Prod., Inc. v. Harris Research, Inc.*, No. 06-CV-1854-CAB, 2010 WL 11509027, at *2 (S.D. Cal. June 25, 2010) ("The loss of sales dependent on the continued use of an infringing product does not constitute irreparable harm from which the infringer should be shielded. One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.")

Third, Defendants contend that SDCC will not be harmed by a stay or modification, but again provide no support for this baldly-asserted contention. (Doc. No. 553-1 at 11.) This Court has previously determined that SDCC will likely suffer irreparable harm if Defendants are allowed to continue to infringe on SDCC's trademarks when the Court ordered the injunction. (*See generally* Doc. No. 538.)

Finally, Defendants' argument that the public interest lies in staying the injunction is two-fold. Defendants contend first, that other conventions have an interest in Defendants' appeal being litigated to conclusion and second, DFP has a beneficial impact on the culture and economy of Utah. (Doc. No. 553-1 at 12.) The Court agrees with SDCC that this is simply not the type of "public interest" that would support staying an injunction.

Therefore, the Court **DENIES** Defendants' ex parte application for an order modifying or staying the injunction.

///

## CONCLUSION

As explained more thoroughly above, the Court **DENIES** Defendants' ex parte application to stay enforcement of judgment. (Doc. No. 553.) Further, **no later than October 22, 2019,** Defendants must be in compliance with the injunction order, (Doc. No. 538), and file with the Court and serve on SDCC a report in writing under oath, setting forth the manner and form in which Defendants have complied with the injunction order.

**IT IS SO ORDERED**.

Dated: October 5, 2018

Hon. Anthony J. Battaglia
United States District Judge