UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COMIC CONVENTION, a California non-profit corporation,<br><br>                                          Plaintiff,<br><br>v.<br><br>DAN FARR PRODUCTIONS, a Utah limited liability company, DANIEL FARR, an individual, BRYAN BRANDENBURG, an individual,<br><br>                                          Defendants. | Case No.:  14-cv-1865-AJB-JMA<br><br>**AMENDED ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 15 U.S.C. § 1117(a)**<br><br>(Doc. No. 425) |

Pursuant to 15 U.S.C. § 1117(a), a court may in "exceptional cases" award reasonable attorneys' fees and costs to the prevailing party in a trademark infringement lawsuit. Plaintiff San Diego Comic Convention ("SDCC") moves this Court to find that the instant case is "exceptional." (Doc. No. 425.) Defendants Dan Farr Productions, Daniel Farr, and Bryan Brandenburg (collectively referred to as "DFP") oppose SDCC's request. (Doc. No. 512.) On May 31, 2018, the Court held a hearing on the motion and then submitted the matter. (Doc. No. 504.) Finding that this case is in fact "exceptional," the Court awards SDCC reasonable attorneys' fees and costs subject to certain deductions.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** SDCC's motion. (Doc. No. 425.)

**BACKGROUND**

The Court is already well-versed as to the events leading up to the institution of this action. Thus, for the purposes of this Order, the Court will only provide a narrow review of this lawsuit's factual and procedural background.

On August 7, 2014, SDCC filed a lawsuit against DFP alleging two causes of action: (1) Federal Trademark Infringement, 15 U.S.C. § 1114; and (2) False Designation of Origin, 15 U.S.C. § 1125(a). (*See generally* Doc. No. 1.) SDCC is a non-profit corporation, formed in 1975, that is dedicated to the awareness and appreciation of comics and related popular art forms. (Doc. No. 1 ¶ 10.) Every year since 1970, SDCC has produced and held its convention known as the "Comic-Con convention" in San Diego, California. (*Id*. ¶ 11; Doc. No. 97 at 9.)[1] The convention spans several days in length and showcases several hundred events, workshops, educational and academic programs, games, award shows, costume contests, as well as hosts panels of special guests that include science fiction and fantasy authors, film and television actors, directors, producers, and writers. (Doc. No. 1 ¶ 12; Doc. No. 97 at 9.) In 2016, attendance to San Diego Comic-Con exceeded over 135,000 attendees. (Doc. No. 97 at 9.)

SDCC's family of trademarks at issue in this case are:

1. Comic-Con;
2. Comic Con International;
3. Anaheim Comic-Con; and

---

[1] Page numbers refer to the CM/ECF number and not the number listed on the original document.





4.

(Doc. No. 1 ¶ 13; Doc. No. 244 at 11.) Each of these registered trademarks is incontestable. (Doc. No. 381 at 25:15–25.) Additionally, SDCC states that it has used these marks extensively and continuously in interstate commerce and thus the marks have become valuable assets as well as symbols of its goodwill and positive industry reputation. (Doc. No. 1 ¶ 15.)

In early 2013, Defendant Dan Farr Productions, a limited liability company, began to advertise and promote its own popular arts convention named "Salt Lake Comic Con" ("SLCC"). (Doc. No. 234-2 at 7; Herrera Decl. Ex. 5 ("Farr Depo." 11:4–9, Doc. No. 95-7).) Similar to SDCC's convention, SLCC is a three-day fan event featuring the best in movies, television shows, gaming, sci-fi, fantasy, and comic books. (Doc. No. 244 at 12.) Since 2013, SLCC has been held every year and in the beginning of 2014, Dan Farr Productions created its Salt Lake Comic Con FanXperience event, which has also been held every year since its inception. (Farr Depo. at 11:10–15; Doc. No. 97 at 11.)

Thus, the marrow of this case is whether DFP's comic arts and popular fiction event named "Salt Lake Comic Con" infringed on SDCC's three incontestable trademarks.[2] On December 8, 2017, after an eight-day jury trial, the jury found that DFP had indeed infringed on SDCC's family of trademarks. (Doc. No. 395 at 2–5.) As to unfair competition and false designation of origin however, the jury found in favor of DFP. (*Id*. at 6.) In total, the jury awarded corrective advertising damages to SDCC in the amount of $20,000.00. (*Id*. at 8.)

---

[2] The Court notes that after the trial, DFP changed the name of their event to "FanX Salt Lake Comic Convention." (Doc. No. 513 at 7–8.)

Post-trial, SDCC filed three motions: (1) its motion for permanent injunction, (Doc. No. 419); (2) the instant motion, its motion for attorneys' fees and costs, (Doc. No. 425); and (3) its motion for judgment as a matter of law or in the alternative motion for new trial, (Doc. No. 433). Thereafter, on August 8, 2018, the Court ordered SDCC to file a supplemental brief breaking down the total amount of fees it requested. (Doc. No. 523.) DFP then asked for the opportunity to respond to SDCC's supplemental brief. (Doc. No. 531.) The Court granted this request, and DFP's response was filed on August 22, 2018. (*Id.*; Doc. No. 532.)

## DISCUSSION

A.    This Case is Exceptional Pursuant to 15 U.S.C. § 1117(a)

SDCC's motion provides an exhaustive and detailed account of the actions it believes makes this case exceptional. (*See generally* Doc. No. 425-1.) In opposition, DFP asserts that SDCC's motion is based on distortions, is unpersuasive, and relies on critiques that are hyperbolic and hypocritical. (*See generally* Doc. No. 512.)

The Lanham Act permits an award of reasonable attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). Originally, "[w]hile the term 'exceptional' [was] not defined in the statute, generally a trademark case [was] exceptional for purposes of an award of attorneys' fees when the infringement [was] malicious, fraudulent, deliberate or willful." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993).

In 2016, the Ninth Circuit in *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016), relied on the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), to abrogate *Lindy Pen Co.* and modify the standard definition of "exceptional" in attorney fee recovery Lanham Act cases. *SunEarth, Inc.*, 839 F.3d at 1180. Ultimately, the Ninth Circuit held that "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case [is] exceptional, exercising equitable discretion

in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard." *Id*. at 1181 (internal citation omitted).

The Ninth Circuit also defined an exceptional case as one that simply "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 1180 (citation omitted). The nonexclusive factors in determining if a case is "exceptional" include: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1181 (citation omitted).[3] Additionally, despite the Ninth Circuit's decision to alter the definition of "exceptional," the Federal Circuit held that *Octane Fitness* "gave no indication that [the Federal Circuit] should rethink [its] litigation misconduct line of § 285 cases" and stated that "district courts can turn to [] pre-*Octane Fitness* case law for guidance" regarding such arguments. *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015).

In sum, litigation brought in bad faith or with objectively baseless claims may be considered exceptional, as may litigation demonstrating inequitable conduct or willful infringement. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 525 n.12 (1994); *see also Octane Fitness*, 134 S. Ct. at 1757 ("[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."). Similarly, courts "have awarded attorneys' fees . . . where a party advances arguments that are particularly weak and lack support in the record or seek only to re-litigate issues the court has already decided." *Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.C. Cir. 2015). Thus, the determination of "exceptional"

---

[3] "*Octane Fitness* lowered the bar for an exceptional case finding[.]" *Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 102 (D. Mass. 2015).

falls squarely within the discretion of the trial court. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014).

Here, the jury found that DFP infringed on all three of SDCC's trademarks, yet also found that DFP did not willfully infringe the marks. (*See generally* Doc. No. 395.) Thus, under the original definition of "exceptional," SDCC's request for attorneys' fees would have been difficult to advance successfully. *See Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) ("Here the jury explicitly found that [the defendant] engaged in 'willful' infringement . . .The district court's decision to make a fee award to [the plaintiff] thus flows quite naturally from the jury's finding of willful infringement . . ."). However, after *SunEarth*, examining the totality of the circumstances, the Court finds that this case is not a dime a dozen. Instead, it is a trademark infringement lawsuit that stands out from others based on the unreasonable manner it was litigated and thus an award of attorneys' fees and costs to SDCC is justified.

### i. SDCC is the Prevailing Party

As an initial matter, the Court addresses DFP's assertion that the "split verdict" in this case illustrates that there is no clear winner. (Doc. No. 512 at 8–9.) Accordingly, as the Lanham Act only authorizes an award of fees "to the prevailing party," DFP contends that SDCC's motion is flawed. (*Id.*) DFP's argument is both unpersuasive and legally unsound.

Had DFP researched this issue thoroughly, DFP would have discovered that the jury verdict in favor of SDCC for trademark infringement renders SDCC the prevailing party. *See Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992) (illustrating that a party prevails "when actual relief on the merits of [the plaintiff's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (holding that a prevailing party is one that "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.") (citation omitted); *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929, 942 (C.D. Cal. 2010) ("A plaintiff is deemed

6

the 'prevailing party' if, as a result of a judgment or consent decree entered in the legal action he or she brought, there is a 'material alteration of the legal relationship of the parties.'") (citation omitted). Based on the foregoing, in the instant matter, SDCC is the prevailing party for § 1117(a) purposes.

Next, the Court identifies the various circumstances of this case that warrant an award of attorneys' fees and costs under § 1117(a).

### ii. *DFP's Failure to Comply with Court Rules*

The Court highlights three incidents that occurred prior to trial. First, in contravention to this Court's Local Rules, DFP filed two summary judgment motions that totaled over forty pages in length. (Doc. Nos. 216, 218, 244, 245.) The local rules clearly explicate that when filing a motion, all the arguments should be contained in one brief, not exceeding a total of twenty-five (25) pages. CivLR 7.1.h.

DFP advances two arguments to explain their actions, both of which are nonsensical and only further support this Order's final conclusion. DFP asserts that they had leave to make their filings because the Clerk gave out a single hearing date for all dispositive motions and that SDCC also broke the rules as it filed both a motion for summary judgment and a motion to exclude on the same day, which totaled over forty-three pages. (Doc. No. 512 at 20–21.) DFP's reasoning is disconcerting. Logically, all arguments relating to a specific motion need to be contained in a single motion. Under DFP's theory of motion practice, a party could file a separate brief for every cause of action it sought to dismiss under Federal Rule of Civil Procedure 12(b)(6), thereby violating the page limits set by this Court. This is erroneous. Thus, in contrast to DFP's belief that SDCC broke the rules, it did not.

The Court also highlights that DFP did not file a timely Daubert challenge to SDCC's expert Patrick Kennedy. The Court then denied DFP's motion to file a late challenge, however despite this, DFP utilized a motion in limine to revisit the issue. (Doc. Nos. 321, 345, 340; Transcript of Motion in Limine Hearing at 169:14–16, November 14, 2017.) In the same vein, after DFP lost a Daubert challenge to SDCC's expert Mr. Ezell,

(Doc. No. 263 at 10), DFP attempted to re-introduce their argument that Mr. Ezell and his Teflon Survey were irrelevant both during motion in limine, (Doc. No. 314-1 at 7), and in their motion for judgment as a matter of law, (Doc. No. 429-1 at 14).

Finally, the most prominent example of DFP's disregard for this Court's rules and procedures occurred on June 23, 2017, when DFP filed a motion for leave to amend their pleading that expressly referenced testimony that had been designated "Confidential—Attorneys' Eyes Only" by SDCC and the Protective Order in this case. (Doc. No. 129-1 at 3.) In spite of the highly confidential information contained in the document, Defendant Bryan Brandenburg also disseminated the information on the Internet through his social media accounts and SLCC's Twitter Page. (*Id.*)

In sum, DFP's indifference to this Court's rulings and the Local Rules are actions that should be deterred by compensation furnished to SDCC.

### iii. *DFP's Unreasonable Manner of Litigation*

#### a. DFP's Persistent Desire to Re-Litigate Issues Already Decided

At every opportunity, DFP has repeated, re-argued, and recycled arguments already briefed by both parties and analyzed and ruled on by the Court. This type of wasteful litigation tactic forced SDCC to expend extra, unnecessary legal fees and drove this Court to squander already limited judicial resources.

The Court first focuses on DFP's naked licensing defense. This defense was first produced at summary judgment. (Doc. No. 263-1 at 20–25.) However, finding insufficient evidence to support the theory, the Court denied DFP's motion on the matter. (Doc. No. 263 at 26–29.) Thereafter, during the pre-trial conference, after the Court expressed its concern that there was not enough evidence to bring this defense to trial, DFP offered to prepare a formal proffer document on the issue and submit that in advance of the motion in limine hearing. (Doc. No. 265 at 9:11–11:19.)

DFP's formal proffer document provided the Court relatively the same evidence supplied at summary judgment. (Doc. Nos. 315, 344.) Accordingly, still finding the evidence inadequate, the Court denied the motion. (Doc. No. 340.) Post-trial, DFP's motion

for new trial inexplicably argues that they are "entitled to a proper adjudication of its naked licensing defense." (Doc. No. 436-1 at 7.) Thus, in total, DFP has attempted to re-argue this defense three times, blatantly ignoring the record and this Court's previous rulings.

DFP's repetitive motion practice also manifested itself in their "generic ab initio" defense. Initially, when this theory was first presented to the Court during summary judgment, DFP argued that this case "is not a genericide case." (Doc. No. 244 at 23.) Instead, DFP argued that "Comic-Con" was generic "before it was applied as a trademark to the products in question." (*Id.* at 24 (citing *Horizon Mills Corp. v. QVC, Inc.*, 161 F. Supp. 2d 208, 220 n.16 (S.D.N.Y. 2001)).)

After carefully considering the evidence outlined by DFP, the Court denied DFP's summary judgment motion arguing that SDCC's trademarks are generic ab intio. (Doc. No. 263 at 18.) Notwithstanding this fact, DFP brought a motion in limine "regarding genericness evidence." (Doc. No. 314-1.) Finding the in limine motion improper, the Court stated during the hearing:

> **The Court:** Well, it could be that I ruled out generic ab initio, already. And re-arguing it again is questionable to whether it's in conformity to what motion in limine is about.
> . . .
> This is a motion in limine. We're talking about a time line and you've tried to reargue the summary judgment.

(Doc. No. 425-7 at 4:21–10:12.) This motion was then denied. (Doc. No. 340.)

In spite of the summary judgment order and the in limine ruling, DFP's motion for new trial devotes several pages to arguing that they should have been "allowed to show *Genericness Ab Initio*." (Doc. No. 436-1 at 17–27.) DFP supported this argument with more or less the same evidence produced at summary judgment. Altogether, "Generic ab intio" has been discussed, analyzed, and denied by this Court three times.[4]

---

[4] Generic ab initio was not only repeatedly discussed, but it is also a defense that DFP strategically used and then disposed of depending on the evidence they sought to exclude.

Though not referenced by SDCC, DFP's use of the Oxford Dictionary definition of "Con" is another blatant example of DFP's "head in the sand" litigation strategies that has resulted in this Court repeatedly re-analyzing the same arguments. At summary judgment, to support their "generic ab intio" theory of defense, DFP argued that one may look to the individual parts of a mark. (Doc. No. 244 at 16, 19.) DFP then referenced the Oxford Dictionary definition of "con." (*Id.*) In its order denying DFP's summary judgment motion on "generic ab intio," the Court clearly explained that courts have not only held that dictionary definitions are weak evidence of genericness, but that courts have routinely rejected the breaking down of phrases into their individual and often generic parts. (Doc. No. 263 at 17.)

Astonishingly, ignoring the case law provided to them, DFP's motion for new trial again points to the same Oxford dictionary definition. (Doc. No. 436-1 at 25.) As a result, this argument has been recycled by DFP twice in complete disregard of this Court's previous rulings and Ninth Circuit precedent. *See Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974, 978 (9th Cir. 2010) (concluding that in determining similarity of marks "we look to the mark as a whole and that the combination of generic terms may, in some instances, result in a distinctive mark.").

DFP also repeatedly sought to compel this Court to revisit their fraud defense. First, DFP unsuccessfully requested leave to add fraud as an affirmative defense. (Doc. No. 202 at 6–10.) Thereafter, at the pretrial conference, DFP again referenced this defense. (Doc. No. 265 at 12:8–20.) DFP then filed a motion in limine to be able to put forward evidence

---

The Court notes that at the outset DFP plainly asserted that this was not a genericide case. (Doc. No. 244 at 23.) DFP's summary judgment motion then asserted that as SDCC's trademarks were "generic ab initio," SDCC's Teflon survey was irrelevant. (*Id.* at 23–24.) In contrast to the above, DFP's expert Jeffrey Kaplan stated in his report that he was hired to "offer linguistic evidence supporting [his] opinion that the expression 'comic con' was generic at the <u>time the above-captioned law suit was filed, and is currently generic</u>[.]" (Doc. No. 91-2 at 3 (emphasis added).) This discrepancy was noted by the Court in its summary judgment order. (Doc. No. 263 at 12.)

of SDCC's alleged fraud on the USPTO to the jury. (Doc. No. 319.) The Court ultimately denied the motion after reminding DFP that it had already gotten rid of the fraud claim. (Transcript of Motion in Limine hearing at 141:20–22, November 14, 2017.) In sum, fraud was re-argued two times.

Ultimately, resembling a broken record, DFP has repetitively restated and rehashed several contentions that they were unable to advance successfully prior to trial. This type of cyclical motion practice is objectively unreasonable and has justified attorneys' fees under the Lanham Act. *See Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-cv-00946, 2017 WL 3534993, at *1 (E.D. Pa. Aug. 17, 2017) (holding that the hallmark of a case that has been litigated in an unreasonable manner is one that involves "wasteful procedural maneuvers or dilatory tactics") (citation and internal quotation marks omitted); *see also Cognex Corp. v. Microscan Sys., Inc.*, No. 13- CV-2027 JSR, 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) (criticizing the plaintiff for post-trial motions that simply sought to relitigate issues decided during trial and awarding fees at least as to those motions); *Precision Links Inc. v. USA Prods. Grp., Inc.*, No. 3:08-cv-00576-MR, 2014 WL 2861759, at *3 (W.D.N.C. June 24, 2014) (criticizing the plaintiff for seeking a preliminary injunction based in large part on a previously rejected theory of liability and for filing frivolous post dismissal motions).

### b. DFP's Objectively Unreasonable Legal Arguments

DFP's efforts to formulate legal arguments based on factually and legally irrelevant case law also help bolster this Court's conclusion that the instant matter is not a middle-of-the-road trademark case. The Court notes that at certain points, DFP's zealous advocacy has turned into gamesmanship.

To begin with, the Court focuses on DFP's motion to amend their pleading. DFP sought to amend so that they could allege that SDCC committed fraud on the USPTO. (*See generally* Doc. No. 204-1.) However, DFP's motion failed to cite to the correct legal standard to support such a claim. Instead, DFP pointed the Court to a list of inapplicable patent cases. (*Id.* at 5.)

Further, DFP requested amendment so as to add a defense of inequitable conduct. (*Id.* at 16.) However, as the Court pointed out in its order, inequitable conduct is a defense raised in patent infringement cases. (Doc. No. 202 at 11 (*see Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1109 (C.D. Cal. 2008) (holding that inequitable conduct consists of several elements including "the failure to disclose known material information during the prosecution of a patent, coupled with the intent to deceive the PTO.")).)

DFP's motion in limine proffering evidence of a naked license is yet another example of DFP's faulty, hodgepodge legal reasoning. (Doc. No. 344.) DFP states:

> Second, "where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent": SDCC's silence, on the heels of its "threatened immediate or vigorous enforcement," was "intentionally misleading"—and gave SDCC "a duty to speak," especially when coupled with Reed's communicated reliance on its remedial measures' sufficiency and years of friendly intercourse. Third, "implied license may arise by … acquiescence"; "permission or lack of objection is … equivalent to … license ▮▮▮▮▮▮

(*Id.* at 6 (internal footnotes omitted).) The Court illustrates that in total, DFP selectively chose and blended together specific phrases from five different cases. Specifically, DFP quotes from: *Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal. App. 2d 650, 655 (1960); *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1574 (Fed. Cir. 1987); *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469, 1472 (Fed. Cir. 1998); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996); and *Winbond Elec. Corp. v. ITC*, 262 F.3d 1363, 1374 (Fed. Cir. 2001). (*Id.*) However, DFP's reliance on the foregoing cases is misplaced—both *Hottel Corp.* and *Scholle Corp.*, analyze equitable estoppel defenses in the patent infringement context, 833 F.2d at 1574; 133 F.3d at 1472, *Shaver*, examined how a copyright owner could transfer to another person any exclusive rights an owner has in a copyright, 74 F.3d at 774–75, and *Winbond* examined an implied license/waiver in a patent infringement case, 262 F.3d 1374.

A final example of DFP's groundless legal reasoning comes from their opposition brief to SDCC's instant motion. DFP's brief cites to *Kellogg Co.*, to demonstrate that Mr. Brandenburg did not admit that Comic Con is a brand. (Doc. No. 512 at 10–11.) Instead, DFP claims that what Mr. Brandenburg meant when he said "brand" was the "goodwill" of SDCC's events, not that he meant "brand" in a legal trademark sense. (*Id*. at 11.) The portion of *Kellogg* DFP employs is:

> Kellogg Company is undoubtedly sharing in the goodwill of the article known as "Shredded Wheat"; and thus is sharing in a market which was created by the skill and judgment of plaintiff's predecessor and has been widely extended by vast expenditures in advertising persistently made. But that is not unfair. Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested.

*Id*. (citing *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 122 (1938)).

It is plainly clear to the Court and should be evidently unmistakable to DFP that *Kellogg* is factually immaterial. In *Kellogg*, the plaintiff did not have an exclusive right to the use of the term "Shredded Wheat" as a <u>trade name</u> as it was determined that the term was generic of the article it described. *Id*. at 116 (emphasis added). In fact, "Shredded Wheat" was never used as a trademark. *Id*. at 117. Additionally, the patent for the product and the process of making the item was "dedicated to the public" as the patent had expired on October 15, 1912. *Id*. The present matter involves three incontestable trademarks—trademarks DFP knew were registered with the USPTO—and there is no patent in play.[5] (Doc. No. 394 at 21.)

The above-mentioned examples are simply a small collection of DFP's unreasonable manner of litigation and do not encompass every instance they misrepresented a case for their own benefit. This type of frivolous motion practice should be deterred. *See Monolithic*

---

[5] The Court notes that *Kellogg* is also a recycled argument, having already determined its inapplicability during motion in limine. (*See generally* Doc. No. 314; Transcript of Motion in Limine Hearing at 29:5–19, November 14, 2017.)

14-cv-1865-AJB-JMA

*Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013) ("[L]itigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional . . . .").

Beyond gamesmanship, there has been inappropriate citation to as well as incomplete or inaccurate references to purported case authority throughout this litigation by DFP. In each order on every post-trial matter, DFP has been called out in this regard.

<u>c. DFP's Objectively Unreasonable Responses to this Litigation</u>

More convincing evidence of this case's exceptional nature materializes itself in DFP's unreasonable responses to this litigation. DFP admits to receiving SDCC's cease and desist letter. (Doc. No. 383 at 92:9–20; Tr. Ex. 127.) However, instead of consulting an attorney or trying to reach out to SDCC's legal team, DFP continued to use "Comic Con" in their event name. (*Id.* at 92:13–23.) Moreover, within a week of receiving the cease and desist letter and with full knowledge of SDCC's trademark registrations, DFP sought and successfully registered their Salt Lake Comic Con mark with the USPTO. (Doc. No. 304-1 at 2.) The Court finds DFP's foregoing reactions to be both factually and legally unreasonable.

DFP asserts that since the jury sided with them on willfulness, the Court may not reach a different result by applying the same stipulated definition of willfulness to the same body of evidence and return a different result. (Doc. No. 512 at 13.) DFP then asserts that willfulness in the trademark infringement context is the same as "motivation" under § 1117(a). (*Id.* at 12–13.) The Court disagrees.

First, DFP's assertion that the definition of "willfulness" mirrors "motivation" is completely unsupported. This is simply a legal theory conjured up by DFP. Second, a finding of exceptionality pursuant to § 1117(a) includes examining the totality of the circumstances, which includes factors such as objective unreasonableness, frivolousness, compensation, deterrence, and motivation. *SunEarth, Inc.*, 839 F.3d at 1181. Thus, the Court is not altering the jury's willfulness verdict as DFP suggests. Instead, the Court is

reviewing the circumstances of this case under the lens of § 1117(a), a review process that is distinct from a willfulness analysis.

Accordingly, the Court finds DFP's various reactions listed above objectively unreasonable pursuant to § 1117(a). *See Decus, Inc. v. Heenan*, No. 16-5849, 2018 WL 1082842, at *3 (E.D. Pa. Feb. 27, 2018) ("Cases finding exceptionality based on litigation in an 'unreasonable manner' include a defendant's continued trademark infringement after it knew, through the [USPTO] and plaintiff's cease and desist letters, its mark 'was confusingly similar' to plaintiff's mark[.]"); *see also Mountz, Inc. v. Northeast Indus. Bolting and Torque, LLC*, No. 15-cv-04538-JD (MEJ), 2017 WL 780585, at *2 (N.D. Cal. Jan. 27, 2017) ("Defendant's response to the litigation, including the threats to Plaintiff's business, the attempt to register the offending mark with the PTO, and the failure to respond to the Complaint, was objectively unreasonable.").

### d. Objectively Unreasonable Litigation Conduct

An additional component to the Court's analysis is DFP's misconduct during trial. SDCC places a great emphasis on this conduct, (Doc. No. 425-1 at 22–26), while DFP's opposition brief focuses the Court's attention on SDCC's misconduct during trial, (Doc. No. 512 at 27–30). The Court finds SDCC's assertions more persuasive.

At the outset, DFP's opening statement included the following comment:

The fact is Comic Con is thriving. Okay. They made more money each year since Salt Lake Comic Con came on the scene. They haven't lost a single customer to us . . . We're small potatoes. They also have $15 million in cash sitting in their bank. They own a downtown office building they paid $5 million cash for. They're not for-profit, but they're the deep pocket.
. . .
So Defendants, if they have to pay even a fraction of what CCI asks would be put out of business and the people of Utah would be paying for it. But they're also suing them individually. So they would be pushing them to bankruptcy.

(Doc. No. 381 at 52:12–53:24.) Referencing a party's wealth to play off the bias of the jury is clear misconduct. *See Hoffman v. Brandt*, 65 Cal. 2d 549, 552–53 (1966) ("The argument was clearly error . . . a deliberate attempt by counsel to appeal to social or economic

prejudices of the jury, including the wealth or poverty of the litigants, is misconduct where the asserted wealth or poverty is not relevant to the issues of the case."); *see also Martinez v. Dep't of Transp.*, 238 Cal. App. 4th 559, 566 (2015) ("The law, like boxing, prohibits hitting below the belt. The basic rule forbids an attorney to pander to the prejudice, passion or sympathy of the jury. In more concrete terms, attorneys cannot make appeals based on irrelevant financial aspects of the case such as the hardship that would be visited on a defendant from a plaintiff's verdict.") (internal citation omitted).

During trial, DFP also introduced different concepts that played off of their "generic ab initio" theory of defense—a defense that this Order clearly delineates was excluded at summary judgment, the pre-trial conference, and motion in limine. For instance, DFP made references to a "generic brand." (Doc. No. 381 at 35:19–20.) SDCC objected to such classification and the Court sustained the objection stating that it was a "mischaracterization" and asked the jury to disregard the comment. (*Id.* at 35:24–36:5.)

DFP however did not stop in their quest to put this legally flawed notion before the jury. After being admonished, DFP began referring to Comic-Con as a "national brand." (*Id.* at 39:18.) For example, during Mr. Brandenburg's testimony, the Court had to censure DFP.

> Q. And when you said, but we are hijacking the brand, were you referring to San Diego's brand?
> A. No, I was not.
> Q. Whose brand were you referring to?
> A. As you can see in the next sentence, I clarify what I was referring to was the national Comic Con brand.
> Ms. Bjurstrom: Objection, your honor.
> The Court: Sustained. Jury will disregard the last comment.
> Mr. Katz: I'm not sure why.
> The Court: There is no evidence of a national comic brand, sir.

(Doc. No. 383 at 123:23–124:9.) Then during closing arguments, despite the Court's previous rulings, DFP continued to use the phrases "Comic Con circuit" and "Comic Con Brand." (Doc. No. 403 at 40:9–43:5.)

Further, DFP misstated the law. For instance, DFP argued a "substantial confusion" standard instead of the likelihood of confusion test utilized by the Ninth Circuit. (*Id.* at 46:9–14.) Moreover, DFP constantly and repeatedly referred to SDCC's trademark as "Comic dash Con." (Doc. No. 381 at 37:2–4 ("And you saw on the screen that Plaintiff's showed you, Comic-Dash-Con as she described each era of Comic Con."); *Id.* at 39:11–16 ("In fact, in 1998, there were 30 events that called themselves Comic Con, and that's ten years before San Diego Comic Convention, or SDCC, ever applied for their mark in Comic-Dash-Con alone.").)

The Ninth Circuit has repeatedly emphasized that similarity of two marks is first "considered in their entirety[.]" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Second, "similarity is adjudged in terms of appearance, sound, and meaning, and third, similarities are weighed more heavily than differences." *Id.* (internal citations omitted). Under this standard, cases from this district as well as others have held that a dash or hyphen is inconsequential in determining the similarity of two marks. *See Maxim Integrated Prods., Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1031–32 (N.D. Cal. 2009) (placing little emphasis on the hyphen in the mark "My-iButton" when comparing its similarity to "i Button"); *see also Therma-Scan, Inc., v. Thermoscan, Inc.*, 295 F.3d 623, 633–34 (6th Cir. 2002) (finding the dash insignificant in the mark Therma-Scan when comparing its similarity to the mark Thermoscan).

Despite the foregoing, at trial, DFP proceeded under the belief that the dash was significant in determining the similarity of their mark and SDCC's "Comic-Con" trademark. For example, DFP stated:

> Mr. Katz: It's Comic-Dash-Con, and their position is it's enforceable as Comic Con with nothing in between, a space, a dash. You know, they use the dash when they use it alone, and they use the space when they use it with something else.
> . . .
> Ms. Bjurstrom: We have Comic Con International without a dash, and we have San Diego Comic Con International without a dash.
> . . .

The Court: But as to Comic Con with the dash, does the mark cover Comic Con without the dash in its plain and literal meaning?

Ms. Bjurstrom: Absolutely.

The Court: How?

Ms. Bjurstrom: It is. It's likely to be confusing. You don't say Comic-Hyphen-con.

Mr. Katz: That's what we're trying to establish, that it is not likely to be confusing.

Ms. Bjurstrom: It's the same mark.

The Court: So if - -

Ms. Bjurstrom: You look at how it looks, how it sounds, how it's perceived. You don't say Comic - -

Mr. Katz: We disagree.

Ms. Bjurstrom: Please. You don't say Comic-Hyphen-Con. You don't say Coca-Hyphen-Cola. You say Coca-Cola.

(Doc. No. 382 at 58:10–59:13.)

In light of the case law from this district, DFP's forceful attempts to draw the jury's attention to the dash in "Comic-Con" in analyzing <u>the similarity of the two trademarks</u> at issue is legally groundless. *See Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1032 (C.D. Cal. 2010) ("While Defendants argue that the hyphen is significant in modifying the term, this argument is contrary to the case law—and common sense.").

Finally, during closing argument, DFP doubled down and broke the "Golden Rule." DFP's counsel stated:

Even if you accept the dismissive "they're just infringers, we'll get to them." Okay. They've caused harm, too. What share of the harm did they cause to this brand erosion that we haven't seen any measure of? So we are just asking you to think critically about the evidence. Think about what it means. And what it would mean to you if you were personally involved in this.

**The Court:** Golden Rule. Jury is not--you are not to put the jury in the place of either party. The jury will disregard the last comment.

**Mr. Katz:** I apologize for that. I will state it differently.

(Doc. No. 403 at 71:2–13.) The "Golden Rule" argument, "asking the jury to put itself in the position of the party, is improper." *Reynolds v. Gerstel*, No. 1:09-cv-00680-SAB, 2013 WL 4815788, at *5 (E.D. Cal. Sept. 9, 2013); *see also Lovett v. Union Pac. R.R. Co.*, 201

F.3d 1074, 1083 (8th Cir. 2000) (explaining that the Golden Rule "argument is universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.") (citation omitted).

In sum, DFP's trial misconduct further supports the Court's conclusion that this case is "exceptional" pursuant to § 1117(a).

### iv. Remaining Issues

One additional factor in determining the exceptionality of a case under the Lanham Act is the substantive strength of a party's litigating position. *See Veracode*, 137 F. Supp. 3d at 101. SDCC points to the following pieces of evidence to demonstrate the strength of its case: (1) the incontestable status of its trademarks; (2) its trademark survey that demonstrated that 83% of consumers recognize it as a brand; (3) Mr. Brandenburg's admission that Comic-Con is a brand; and (4) the commercial strength of its marks. (Doc. No. 425-1 at 11–12.) In opposition, DFP argues that their case is equally strong. (Doc. No. 512 at 9–10.)

The Court finds that this case is not so "deeply lopsided" in regards to strength to warrant finding it exceptional under this specific factor. *See Veracode, Inc.*, 137 F. Supp. 3d at 101 (holding that a case must present the "indicia of a deeply lopsided case" for the moving party to satisfy this element). The Court explicates that though SDCC's case is compelling and heavily supported by persuasive evidence, DFP's case, including the evidence of over one hundred comic events using "comic con" in their event name, is not objectively frivolous.

Thus, this factor weighs neutrally. *See Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (explaining that although the opposing party's briefing "consisted of granular parsing of the claimed steps rather than any substantive explanation of how this differed from the underlying abstract idea[,] [i]t did not . . . descend to the level of frivolous argument or objective unreasonableness.").

Next, the Court turns to SDCC's argument that DFP's abuse of the media makes this case "exceptional." (Doc. No. 425-1 at 7, 8, 14–15.) Specifically, SDCC takes issue with

the press releases and interviews DFP gave after they received SDCC's cease and desist letter, their articles published through social media that attacked SDCC and its executives, and DFP's alleged "public bullying strategy" that persisted over three years all aimed at denigrating SDCC before the public. (*Id.*) DFP asserts that they cannot be punished for exercising their First Amendment rights. (Doc. No. 512 at 15–16.)

The Court's analysis under this factor is best explained by quoting to Defendant Brandenburg himself. In a news article, Mr. Brandenburg explained his reaction to receiving SDCC's cease and desist letter:

> "Our knee jerk reaction was that [SDCC was] trying to intimidate us" . . . "We were not going to cease and desist using the name. We decided to go public about it." After consulting with their lawyers, the team behind the Salt Lake Comic Con knew they had strong legal ground to stand on, but they didn't want to go to court, they wanted to win in the court of public opinion . . . "Everyone said that San Diego had no leg to stand on, but the only way to win this would be to outspend them on legal fees" . . . "Our strategy was, if we are going to spend legal fees vs. legal fees, we wanted to be creative. We put it out to the public, challenging the cease and desist letter publically."

(Doc. No. 126-3 at 2–3.)

Refusing to cease and desist and turning to the media to litigate a trademark infringement case in the court of "public opinion" is objectively irrational. The Court clarifies that it is not maintaining that Mr. Brandenburg was not entitled to his First Amendment rights. Instead, looking to the standard proscribed by the Ninth Circuit, objectively, DFP's reaction and actions in response to SDCC's cease and desist letter force this case to stand out from others. Nevertheless, the Court notes that this argument is but one small factor in this Order's analysis. In fact, even without this element, the circumstances discussed *supra* pp. 7–18 adequately and reasonably justify SDCC's request for attorneys' fees pursuant to § 1117(a).

Finally, DFP's opposition brief is littered with statements such as: "The jury disagreed; but in finding no willfulness, the jury accepted DFP's explanation that when the defendants used the term 'brand,' they were referring to *that* goodwill, the goodwill of the

events." (Doc. No. 512 at 11.) These blatant, unsupported statements are plainly specious—DFP has no idea what the jury believed or how they understood the evidence. Thus, the Court ignored such statements in coming to its conclusion.

### v.    Conclusion

SDCC's motion is bursting at the seams with incidents that it believes demonstrates the exceptional nature of this case. After careful consideration of the totality of the circumstances, the Court agrees with SDCC and finds that it has satisfied its burden. Accordingly, the Court **GRANTS** SDCC's motion for attorneys' fees and costs, subject to the deductions delineated below. *See Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *10–14 (N.D. Cal. Aug. 12, 2014) (concluding that the case was exceptional based on the defendant's "exceptionally meritless" claims, the unreasonable manner in which the case was litigated, the defendant's shifting theories of infringement, and conduct that amounted to gamesmanship).

### B.    SDCC's Requested Fees are Subject to Deductions

SDCC argues that its fees and the allocated time spent are reasonable. (Doc. No. 425-1 at 27–29.) DFP's opposition brief devotes the last two pages to arguing that bifurcation is proper in the instant matter as they could not "fully respond to both liability *and* the proper amount of any award" in their opposition brief. (Doc. No. 512 at 30.) DFP then requests that an additional proceeding be had on the amount. (*Id.*)

The Court declines DFP's request for bifurcation and for a further proceeding. DFP was provided the opportunity to oppose SDCC's motion. Their decision to forego the chance to rebut the rates of SDCC's attorneys and the reasonableness of their time sheets, not only fails to satisfy their burden at this stage of the litigation, but also acts as a waiver to any arguments not presented in their opposition brief. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citation omitted).

Moreover, as DFP has failed to challenge or dispute SDCC's hourly rate or provide substantial assertions opposing SDCC's hours logged, the Court's inquiry ends after it determines whether the fee request is reasonable. *See United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015) ("When … a fee target has failed to offer either countervailing evidence or persuasive argumentation in support of its position, we do not think it is the court's job either to do the target's homework or to take heroic measures aimed at salvaging the target from the predictable consequences of self-indulgent lassitude.") (citation omitted).

The Court now turns to an evaluation of the reasonableness of SDCC's fees. Courts typically determine reasonableness by conducting a lodestar analysis of the hours expended and the hourly rate charged. *See McGrath v. Cty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (explaining that in the Ninth Circuit, courts calculate an award of attorneys' fees using the lodestar method, multiplying "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.") (citation omitted). The burden is on the fee applicant to demonstrate that the number of hours spent were "reasonably expended" and that counsel made a "good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434. The district court has broad discretion in determining the reasonableness of attorney's fees. *See Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

Additionally, "[a]lthough in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). The factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount

22

involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) (citation omitted).

In total, SDCC requests **$4,994,245.20** in attorneys' fees and costs incurred by it from the inception of this case through August 10, 2018. (Doc. No. 527 ¶ 5.) In addition, SDCC also requests certain non-taxable costs, including **$243,833.06** that SDCC paid to its two expert witnesses: Matthew G. Ezell and Patrick Kennedy, along with their assistants. (Doc. No. 425-3 ¶ 24.)

### i. Reasonable Hourly Rate

The determination of reasonable hourly rates is made by examining the prevailing market rates in the relevant community charged for similar services by "lawyers of reasonably comparable skill, experience, and reputation." *Davis v. City and Cty. of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992) (citation omitted), *opinion vacated on other grounds by* 984 F.2d 345 (9th Cir. 1993). The "relevant community" for these purposes is the district in which the lawsuit proceeds. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).

The moving party has the burden to produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). Once the fee applicant has met its burden, the opposing party "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397–98.

SDCC cites to several Southern District of California cases as well as employs the declarations of Callie A. Bjurstrom and Peter K. Hahn to illustrate that its attorney rates

are reasonable. The following are the rates for the SDCC attorneys, paralegals, and litigation support team members who worked on the present matter.

1. Callie A. Bjurstrom, lead trial attorney with over twenty-nine years of experience—$675.00 to $760.00 an hour.

2. Peter K. Hahn, a partner and member of Pillsbury's Intellectual Property ("IP") Section with over twenty-eight years of experience—$675.00 to $760.00 an hour.

3. Michelle A. Herrera, an attorney with over sixteen years of litigation experience—$525.00 to $585.00 an hour.

4. Conor Civins, a partner with over fourteen years of experience—$550.00 to $685.00 an hour.

5. Kirsten Gallacher, an associate in Pillsbury's IP section—$385.00 to $545.00 an hour.

6. Nathaniel Smith, a University of San Diego School of Law 2007 graduate—$550.00 to $730.00 an hour.

7. Matthew Stephens, an associate in Pillsbury's IP Section—$545.00 an hour.

8. Tim Rawson, a 2014 Pepperdine University School of Law graduate—$545.00 an hour.

9. Lauren Wardle, an associate in Pillsbury's IP Section—$560.00 an hour.

10. David Stanton, a partner and member of Pillsbury's Litigation section—$765.00 an hour.

11. Andrew Chevalier, William Collier, Carl DiCarlo, Benton McDonough, Wilton McNair, Allison Porter, Candes Prewitt, Jennifer Romeo, Kelly Sims, Jenny Villalobos, Eboni Wooden, and Calumn Yeaman, contract attorneys who work out of Pillsbury's office in Nashville, Tennessee who assisted with eDiscovery, document review, and legal research—$110.00 an hour.

12. Sandra Edge, a senior legal analyst in Pillsbury's IP Section with over thirty years of experience—$285.00 to $315.00.

13. Cody Gartman, a trial paralegal with over seven years of experience—$245.00 an

hour.

14. Louie Perez, a senior legal analyst in Pillsbury's IP section with over five years of experience—$295.00.

15. Colin Drake, a Litigation Support Project Management Coordinator with over ten years of experience—$275.00 to $305.00 an hour.

16. Val Trinidad, a Senior Litigation Support Analyst with over nine years of experience—$295.00 to $305.00 an hour.

17. John Monarrez, a Research Specialist—$150.00 an hour.

18. Stacey Barnes, a paralegal in Pillsbury's IP section—335.00 an hour.

19. Martin Bridges, a consulting manager in Pillsbury's Corporate Securities Group whose testimony was read into the record at trial—$425.00 an hour.

20. Thomas Brooks, the Discovery Project Manager—$305.00 an hour.

21. Stacey Campbell, a paralegal in Pillsbury's IP section who provided trial preparation support—$285.00 an hour.

22. John Farahjood, a Litigation Support Specialist who assisted with review of electronically stored information—$305.00 an hour.

23. Gordon Moffat, Director of Litigation Support Services—$390.00 an hour.

24. Patrick Ng, a Litigation Support Project Manager—$305.00 an hour.

25. Anthony Vugrinecz, a Senior Litigation Support Analyst—$299.42 an hour.

(Doc. No. 425-3 ¶¶ 2–16; Doc. Nos. 527-2, 530.)

Ultimately, the Court finds that SDCC has satisfied its initial burden and guided the Court as to the reasonable hourly rate prevailing in the community for similar work performed by attorneys of comparable skill and reputation. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). First, as to the two cases provided by SDCC, the hourly rates determined to be reasonable were $607.50 for Ms. Bjurstrom, $472.50 for Ms. Herrera, (Doc. No. 425-4 at 17), and $630 an hour for a partner and $495 an hour for an associate, (*Id*. at 24). The remainder of the cases cited to by SDCC demonstrate that rates for attorneys in the intellectual property division have earned upwards of $800.00 an

hour. *See Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-CV-0541-GPC (WVG), 2014 WL 6851612, at *5–6 (S.D. Cal. Dec. 3, 2014) (finding rates reasonable where plaintiffs sought "an hourly rate of between $170 per hour and $895 per hour depending on the particular attorney or paralegal" for work by a "multi-state/national law firm"). Thus, based off the cases delineated above, the Court finds SDCC's unopposed attorneys' rates listed *supra* pp. 23–24 reasonable.

The Court notes that DFP's response to SDCC's supplemental fee brief argues that SDCC has not justified its lawyers' hefty year-over-year rate increases. (Doc. No. 532 at 6.) DFP then requests that the Court should substantially lower rates in calculating the lodestar. (*Id.* at 7.) This argument is nonsensical. DFP produces no rational justification for why SDCC's lawyers should not receive raises each year they progress within their firm. Moreover, DFP's conclusory arguments, unsupported by evidence or case law, do not satisfy their burden of rebuttal.

Next as to the paralegal rates, SDCC fails to provide any case law to support the rates of its paralegals and litigation support team members.[6] *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services . . . ."). Nevertheless, the Court may consider SDCC's declaration in addition to similar cases and its own knowledge and familiarity with the Southern District of California legal market in setting a reasonable hourly rate. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Reasonable rates for paralegals in this district have ranged from $125 to $225. *See In re Maxwell Techs., Inc., Derivative Litig.*, No. 13CV966 BEN (RBB), 2015 WL 12791166, at *5 (S.D. Cal. July 13, 2015) (awarding $225 paralegal rate to paralegals with

---

[6] For purposes of this Order, the Court will group SDCC's paralegals, legal analysts, litigation support team members, and research specialists into one group.

"significant experience"); *see also Flowrider Surf, Ltd. v. Pac Surf Designs, Inc.*, No. 15cv1879-BEN (BLM), 2017 WL 2212029, at \*2–3 (S.D. Cal. May 18, 2017) (awarding paralegal fees of $150 per hour in a patent infringement case); *LG Corp. v. Huang Xiaowen*, No. 16-CV-1162-JLS (NLS), 2017 WL 3877741, at \*3 (S.D. Cal. Sept. 5, 2017) (finding reasonable a rate of $225 per hour for a paralegal with over twenty years of experience). At its highest, this district has approved a paralegal rate of $290.00. *See In re Maxwell Techs., Inc.*, 2015 WL 12791166, at \*5.

Pillsbury is an American Lawyer Top 100 law firm with its IP litigation practice named in the Best Lawyers in America for 2017. (Doc. No. 425-3 ¶ 17.) Thus, the Court does not dispute the quality of the work Pillsbury's paralegals provided. However, SDCC has failed to produce evidence to demonstrate that its paralegal rates of over $300.00 an hour are reasonable. Accordingly, taking into consideration Pillsbury's national and global presence, the Court will cap SDCC's paralegal, legal analysts, and litigation support team members' hourly rates at $290.00—the high end of paralegal rates provided by this district. *See Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 981 (S.D. Cal. 2014) (listing paralegal rates that ranged from $110.00 to $295.00, but concluding that as rates of $125–$150 predominated, a $150.00 per hour rate for paralegals was reasonable). The final award will be adjusted in light of the above mentioned modification.

In sum, the Court finds SDCC's attorneys' rates in this case reasonable—these rates were largely unopposed by DFP. The paralegals and litigation support team members with rates over $290.00 an hour will be capped at $290.00. The remainder of the paralegal rates that do not exceed $290.00 are considered reasonable.

### ii. Hours Reasonably Spent

"The moving party bears the burden of documenting the appropriate hours spent in the litigation and submitting evidence in support of the hours worked." *Zest IP Holdings*, 2014 WL 6851612, at \*6. After the moving party provides evidence of the hours billed, the opposing party has the burden of submitting evidence "challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its

submitted affidavits." *Gates*, 987 F.2d at 1398. "Even if the opposing party has not objected to the time billed, the district court 'may not uncritically accept a fee request,' but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case." *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1280 (N.D. Cal. 2014).

District courts have discretion to reduce the number of hours that were not reasonably expended. *Hensley*, 461 U.S. at 434. When determining whether the number of hours expended is reasonable, the following criterion may be taken into account, but each factor cannot be an independent basis to reduce hours: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained." *Cabrales v. Cty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988) (citation omitted), *judgment vacated on other grounds by* 490 U.S. 1087 (1989).

SDCC requests all hours billed from the inception of this case to August 10, 2018. (Doc. No. 527 ¶¶ 3, 4.) In analyzing reasonableness, the Court first notes that DFP requests a deduction for quarter-hour billing. (Doc. No. 512 at 30.) Courts have recognized that billing by the quarter-hour, not by the tenth is a "deficient" practice "because it does not reasonably reflect the number of hours actually worked." *See Zucker v. Occidental Petroleum Corp.*, 968 F. Supp. 1396, 1403 n.11 (C.D. Cal. 1997) (demonstrating that an attorney with a $300 hourly rate who works six minutes on a matter would charge $30 if he bills by the tenth of an hour and $75 if he bills by the quarter hour). Due to this, courts have reduced the fee award by a percentage to account for the unearned increment based on quarter-hour billing. *See Preseault v. United States*, 52 Fed. Cl. 667, 680–81 (Fed. Cl. 2002). In the present case, the Court in its discretion reduces SDCC's attorneys' fee award by twenty percent to account for the practice of billing by the quarter-hour. *See Zest IP Holdings*, 2014 WL 6851612, at *10 n.2 (taking a 20% overall reduction in fees based on quarter-hour billing).

DFP also briefly asserts that a reduction is appropriate as SDCC failed to delegate tasks to staff or colleagues with lower billing rates. (Doc. No. 512 at 30–31.) The Court

28

disagrees. As SDCC's time sheet demonstrates, the senior attorneys such as Ms. Herrera, Ms. Bjurstrom, and Mr. Hahn were mainly in charge of researching and drafting the dispositive motions in this case as well as settlement and discovery matters. (Doc. No. 507 at 23, 29.) It is only logical to have the more senior attorneys personally involved in these major parts of the litigation process. Moreover, the timesheet demonstrates that SDCC did in fact delegate other more basic legal tasks to associate attorneys with lower billing rates such as Lauren Wardle and Tim Rawson. (Doc. No. 507 at 102, 103, 105, 159, 163.)

The Court notes however that it finds that some tasks were not properly delegated amongst SDCC's paralegal and litigation support team members. For example, on June 7, 2017, John Farahjood was given the task of printing redacted PDF files. Printing files is not a reasonable use of a litigation support specialist who has a rate of $305.00 an hour. (Doc. No. 507 at 122 (*see Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 970 (N.D. Cal. Dec. 12, 2014).) Thus, a reduction in the final lodestar amount is warranted.

Finally, DFP spends a sentence broadly concluding that SDCC's task descriptions are highly general and frequently redacted and therefore warrant closer scrutiny. (Doc. No. 512 at 30.) First, as to the redactions, "[a] party seeking fees may redact certain portions of the relevant time entries when doing so is necessary to protect the attorney client privilege, so long as the unredacted portions still afford[] the Court sufficient detail to determine the reasonableness of the hours requested." *Shame on You Productions, Inc. v. Banks*, CV 14-03512-MMM (JCx), 2016 WL 5929245, at *16 (C.D. Cal. Aug. 15, 2016) (citation and internal quotation marks omitted).

The Court notes that there are certain time entries that have been so heavily redacted that the Court cannot assess the reasonableness of the time expended. For example on August 6, 2017, Michelle Herrera stated "Research regarding [REDACTED]." (Doc. No. 507 at 150.) This type of redaction has resulted in courts declining to award fees as to those heavily redacted billing entries. *See Shame on You Productions*, 2016 WL 5929245, at *16. However, in the instant matter, SDCC redacted time entries, but also made the entries available to the Court for in-camera review. (Doc. No. 425-3 ¶ 23.) Thus, DFP's attack on

SDCC's redacted time entries fails. *See Vogel v. Tulaphorn*, CV 13-464 PSG (PLAx), 2014 WL 12629679, at *10 (C.D. Cal. Jan. 30, 2014) (refusing to reject the defendant's request for fees as it willingly stated that it could provide the redacted entries for in-camera review); *see also R.M. v. Encinitas Union Sch. Dist.*, No. 08cv412-L (JMA), 2013 WL 3873069, at *3 (S.D. Cal. July 25, 2013) (conducting an in-camera review of the defendant's invoice to determine reasonableness).

Next, as to DFP's assertion that the time entries are too general, the Court agrees in part. Though, SDCC's counsel "is not required to record in great detail how each minute of his [or her] time was expended," *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004), a certain amount of specificity is required. Presently, some entries are incredibly vague. For instance, there are several entries that simply state in some form: "Assist with review project." (Doc. No. 507 at 121, 122, 124, 136.) Additionally, on October 28, 2016, the time entry states: "Call with S. Edge regarding additional documents for review and review plan," (*Id.* at 61), and on November 29, 2016, the narrative described states: "Document review," (*Id.* at 67). This is a billing deficiency that justifies a reduction.

In that same vein the Court also reduces the amount of hours SDCC requests for duplicative attorney effort. Although it has been recognized that "the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort[,] *see McGrath*, 67 F.3d at 255, the Court believes that certain hours were not reasonably expended. For example in July of 2017, Mr. Hahn, Ms. Herrera, and Mr. Smith all took turns revising a sanctions motion. (Doc. No. 507 at 136.) Similarly, in that same month, Mr. Hahn, Mr. Smith, Mr. Stephens, Ms. Bjurstrom, and Ms. Herrera all billed for reviewing the opposition brief to DFP's motion for leave to amend the pleading. (*Id.* at 140.) Thus, another reduction in the lodestar figure is appropriate. *See Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1195 (S.D. Cal. 2003) (finding a reduction of fees reasonable as both attorneys billed for reviewing the defendant's objection and two attorneys billed for reviewing the Ninth Circuit opinion in the case); *see also Hensley*, 461 U.S. at 432–34 (holding that counsel submitting fee applications must exclude hours that

are "excessive, redundant, or otherwise unnecessary[.]"); *AT&T Mobility LLC v. Yeager*, No. 2:13-cv-00007 KJM DB, 2018 WL 1567819, at *2 (E.D. Cal. Mar. 30, 2018) (highlighting that the court has broad discretion to adjust the lodestar fee downward if it concludes the attorneys performed work that was excessive or duplicative).

Finally, the Court addresses the arguments present in DFP's response to SDCC's supplemental brief. (Doc. No. 532.) Finding that most of DFP's qualms have already been addressed above, the Court focuses solely on the assertion that a reduction is justified based on overstaffing. (*Id.* at 4.) Here, the Court agrees with DFP that SDCC's decision to send three lawyers to the post-trial motion hearing is an unreasonable use of time. As Mr. Hahn did not actively participate at the hearing, the Court will not award Mr. Hahn's fees totaling $3,532.50 in relation to this matter. (Doc. No. 527-1 at 15.)

In sum, the Court reduces SDCC's fee request by 20% for quarter-hour billing. Additionally, based on the other billing deficiencies delineated above, an additional 5% reduction is warranted as well as a reduction of $3,532.50 for overstaffing. As to the remainder of the hours, after an in-camera review, the Court finds the billed hours are well within the bounds of reason and include sufficient descriptions reflecting the date, amount, and nature of the work SDCC's attorney's performed. *See LG Corp.*, 2017 WL 3877741, at *4. Thus, the Court finds no further deduction necessary based on the nature and context of the case, quality of the representation, and result obtained.

### iii. Lodestar Calculation

| Table 1: Hourly Rates 2014 | | | |
|---|---|---|---|
| **Timekeeper** | **Hourly Rate Billed** | **Hourly Rate Awarded** | **Time Billed** |
| Bjurstrom, Callie A. | $675.00 | $675.00 | 24.05 hours |
| Hahn, Peter K. | $675.00 | $675.00 | 89 hours |
| Herrera, Michelle A. | $525.00 | $525.00 | 41.20 hours |

| | Drake, Colin B. | $275.00 | $275.00 | 0.50 hours |
| Edge, Sandra V. | $285.00 | $285.00 | 19.25 hours |

| Table 2: Hourly Rates 2015 | | | |
| --- | --- | --- | --- |
| Timekeeper | Hourly Rate Billed | Hourly Rate Awarded | Time Billed |
| Bjurstrom, Callie A. | $705.00 | $705.00 | 24 hours |
| Gallacher, Kirsten F. | $385.00 | $385.00 | 10.25 hours |
| Hahn, Peter K. | $705.00 | $705.00 | 174 hours |
| Herrera, Michelle A. | $550.00 | $550.00 | 72 hours |
| Drake, Colin B. | $290.00 | $290.00 | 5.25 hours |
| Edge, Sandra V. | $295.00 | $290.00 | 21.50 hours |

| Table 3- Hourly Rates 2016 | | | |
| --- | --- | --- | --- |
| Timekeeper | Hourly Rate Billed | Hourly Rate Awarded | Time Billed |
| Bjurstrom, Callie A. | $735.00 | $735.00 | 93.25 hours |
| Gallacher, Kirsten F. | $480.00 | $480.00 | 98.75 hours |
| Hahn, Peter K. | $735.00 | $735.00 | 480.75 hours |
| Herrera, Michelle A. | $565.00 | $565.00 | 229.50 hours |
| Stanton, David | $765.00 | $765.00 | 0.25 hours |
| Drake, Colin B. | $295.00 | $290.00 | 16.50 hours |
| Edge, Sandra V. | $305.00 | $290.00 | 172.50 hours |
| Trinidad, Val | $295.00 | $290.00 | 6.25 hours |

| Table 4-Hourly Rates 2017 | | | |
|---|---|---|---|
| Timekeeper | Hourly Rate Billed | Hourly Rate Awarded | Time Billed |
| Bjurstrom, Callie A. | $760.00 | $760.00 | 1085 hours |
| Chevalier, Andrew | $110.00 | $110.00 | 85.25 |
| Civins, Conor M. | $608.16 | $608.16 | 283.75 hours |
| Collier, William E. | $110.00 | $110.0 | 167.50 hours |
| DiCarlo, Carl | $110.00 | $110.00 | 205.50 hours |
| Gallacher, Kirsten F. | $545.00 | $545.00 | 119 hours |
| Hahn, Peter K. | $760.00 | $760.00 | 1422.75 hours |
| Herrera, Michelle A. | $585.00 | $585.00 | 967.55 hours |
| McDonough, Benton | $110.00 | $110.00 | 88.25 hours |
| McNair, Wilton A. | $110.00 | $110.00 | 85.75 hours |
| Porter, Allison | $110.00 | $110.00 | 69 hours |
| Prewitt, Candes V. | $110.00 | $110.00 | 81.75 hours |
| Rawson, P.E., Tim | $485.35 | $485.35 | 50.25 hours |
| Romeo, Jennifer R. | $110.00 | $110.00 | 123.25 hours |
| Sims, Kelly J. | $110.00 | $110.00 | 184.75 hours |
| Smith, Nathaniel R. | $578.42 | $578.42 | 45.00 hours |
| Stanton, David | $790.00 | $790.00 | 12.75 hours |
| Stephens, Matthew R. | $545.00 | $545.00 | 200.75 hours |
| Villalobos, Jenny R. | $110.00 | $110.00 | 167.25 hours |
| Wardle, Lauren E. | $560.00 | $560.00 | 145.45 hours |

| | | | |
|---|---|---|---|
| Wooden, Eboni T. | $110.00 | $110.00 | 141.75 hours |
| Yeaman, Calumn J. | $110.00 | $110.00 | 98.75 hours |
| Barnes, Stacey | $335.00 | $290.00 | 5 hours |
| Bridges, Martin | $425.00 | $290.00 | 1 hour |
| Brooks, Thomas | $305.00 | $290.00 | 1 hour |
| Campbell, Stacey | $285.00 | $285.00 | 7.25 hours |
| Drake, Colin B. | $305.00 | $290.00 | 89 hours |
| Edge, Sandra V. | $315.00 | $290.00 | 1,195.75 hours |
| Farahjood, John | $305.00 | $290.00 | 17 hours |
| Gartman, Cody A. | $245.00 | $245.00 | 224.80 hours |
| Moffat, Gordon | $390.00 | $290.00 | 15.75 hours |
| Monarrez, John D. | $150.00 | $150.00 | 12.75 hours |
| Ng, Patrick | $305.00 | $290.00 | 0.50 hours |
| Perez, Louie | $295.00 | $290.00 | 120.25 hours |
| Trinidad, Val | $300.63 | $290.00 | 151 hours |
| Vugrinecz, J. Anthony | $299.42 | $290.00 | 18.75 hours |

| Table 5-Hourly Rates 2018 | | | |
|---|---|---|---|
| Timekeeper | Hourly Rate Billed | Hourly Rate Awarded | Time Billed |
| Bjurstrom, Callie A. | $795.00 | $795.00 | 221.70 hours |
| Civins, Conor M. | $675.00 | $675.00 | 14.25 hours |
| Hahn, Peter K. | $785.00 | $785.00 | 221 hours |
| Herrera, Michelle A. | $605.00 | $605.00 | 330.30 hours |
| Wardle, Lauren E. | $615.00 | $615.00 | 120.75 hours |

| | | | |
|---|---|---|---|
| Edge, Sandra V. | $325.00 | $290.00 | 143.95 hours |
| Monarrez, John D. | $300.00 | $290.00 | 0.25 hours |

SDCC requests **$4,994,245.20** in attorneys' fees and costs. (Doc. No. 527 ¶ 5.) The Court notes however, that the lodestar number based off of the declarations provided by SDCC is **$5,278,438.88**. This discrepancy is due to the fact that the lodestar number does not include courtesy discounts that occurred in March 2017 ($11,000), April 2017 ($30,000), May 2017 ($30,000), June 2017 ($50,000), July 2017 ($20,000), August 2017 ($25,000), September 2017 ($25,000), October 2017 ($30,000), November 2017 ($55,000), December 2017 ($20,000), January 2018 ($10,000), and February 2018 ($10,000). In total, SDCC provided **$316,000** in courtesy discounts. Subtracting the courtesy discounts, the new lodestar number is **4,962,438.88**. After the 20% reduction for quarter-hour billing, the 5% reduction for other billing deficiencies, and the **$3,532.50** for overstaffing, the final lodestar number is **$3,767,921.06.**

### iv.    *Expert Costs*

The Lanham Act provides that "[w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . have been established in any civil action . . . the plaintiff shall be entitled to . . . (3) the costs of the action." 15 U.S.C. § 1117(a). Under Federal Rule of Civil Procedure 54, costs other than attorney's fees may be allowed to the prevailing party unless a federal statute or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1).

SDCC seeks to recover certain non-taxable costs. Specifically, SDCC requests **$243,833.06** that SDCC paid to its two experts: Matthew G. Ezell and Patrick Kennedy, along with their assistants. (Doc. No. 425-3 ¶ 24.) DFP does not oppose this request. (*See generally* Doc. No. 512.)

Ms. Bjurstrom's declaration delineates the various benefits and advantages provided by both experts. For instance, Mr. Ezell conducted the Teflon Survey that addressed the primary significance of "Comic-Con" to the public. (Doc. No. 425-3 ¶ 25.) Additionally,

Mr. Ezell performed substantive research and helped analyze and develop a response to the report prepared by DFP's expert Jeffrey Kaplan. (*Id.*) As to Mr. Kennedy, he was hired to assess SDCC's damage remedies and also prepared and submitted a detailed expert report and supplemental report. (*Id.* ¶ 26.) Both experts' invoices were provided to the Court. (Doc. No. 425-6.)

It is clear from the record that Mr. Ezell's work was critical to SDCC's ultimate success in the action—specifically to its trademark infringement claim. Thus, given the reliance on Mr. Ezell and his survey, his fee of **$92,323.56** for his work in connection with this matter was reasonably necessary for the prosecution of SDCC's case. *See SAS v. Sawabeh Info. Servs. Co.*, No. CV 11-04147 MMM (MANx), 2015 WL 12763541, at *35 (C.D. Cal. June 22, 2015.) The Court will thus award **$92,323.56** in costs.

In comparison, Mr. Kennedy's necessity is less clear. Though he testified to various important financial matters, his corrective advertising report stating that a brand repair program would cost $9.62 million was not well-received by the jury as evidenced by the jury award of only $20,000. (Doc. No. 234-1 at 22; Doc. No. 395 at 8.) Based on the foregoing, the Court in its discretion, advances only **$120,000.00** instead of $151,509.50 as costs to cover Mr. Kennedy's expenses. (Doc. No. 423-3 ¶ 26 (*see Brighton Collectibles, LLC v. Believe Production, Inc.*, No. 2:15-cv-00579-CAS (ASx), 2018 WL 1381894, at *5 (C.D. Cal. Mar. 15, 2018)).)

Accordingly, the Court awards SDCC **$212,323.56** to cover the costs of its two experts. *See Lanyard Toys Ltd. v. Novelty, Inc.*, No. CV 05-8406-GW (JWJx), 2008 WL 11333941, at *21 (C.D. Cal. Mar. 18, 2008) (explaining that the district courts "may award otherwise non-taxable costs . . .") (citation omitted).

## CONCLUSION

The Court has exhaustively and carefully considered the totality of the circumstances in this case. Having done so, the Court finds that this case stands out when compared to run of the mill trademark infringement cases. Accordingly, in its discretion,

finding this case "exceptional" pursuant to 15 U.S.C. § 1117(a), SDCC as the prevailing party is awarded attorneys' fees and costs subject to the deductions listed above.

It is accordingly **ORDERED** that SDCC is awarded attorneys' fees and costs totaling **$3,962,486.84**.[7] This award includes **$3,767,921.06** in attorneys' fees and **$212,323.56** in expert costs. The Clerk of Court must enter judgment for SDCC and against DFP, Dan Farr an individual, and Bryan Brandenburg an individual, and each of them, in this amount, as well as the $20,000 awarded by the jury, in this case. The Clerk of Court is also directed to issue the permanent injunction. As no issues remain, the Clerk is instructed to **CLOSE** the docket of this case. Accordingly, SDCC's motion for attorneys' fees and costs is **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED**.


Dated:  April 15, 2019

Hon. Anthony J. Battaglia
United States District Judge

---

[7] The Court notes that the final award was adjusted by deducting $17,757.78 in attorneys' fees that were awarded to SDCC and paid by DFP in relation to DFP's unsuccessful motion for sanctions. (Doc. Nos. 484, 522; Doc. No. 532 at 3.) The Court disagrees with DFP that the award should be reduced by $23,238, which is the amount SDCC initially requested. (Doc. No. 532 at 3.)